## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **BERNIES BURNETT, 132146** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | )　　**Case #2:08-CV-22-WKW** |
| | ) |
| | ) |
| | ) |
| | ) |
| **ALABAMA BOARD** | ) |
| **OF PARDONS & PAROLES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## SUPPLEMENTAL SPECIAL REPORT

Come now Robert Longshore, Bill Wynne and Velinda Weatherly, and show unto the Court as follows:

1) Supplemental affidavits from Longshore and Weatherly are filed herewith, addressing the equal protection and false information claims.

2) The Board's position is that the Complaint fails to state a claim under either of those theories, as set forth in *Jones vs. Ray,* 279 F.3d 944 (11th Cir. 2001). He does not show what prisoners he

claims are situated similarly to him. The Equal Protection Clause does not forbid the State from treating people differently, according to their circumstances. Receiving allegedly false information does not violate the Due Process Clause. Plaintiff must show that the Board knowingly relied on false information in order to state a claim.

3) A copy of the Board's current (2004) Operating Procedures is attached hereto. The pertinent parts were quoted in the original Special Report. Section 15-22-24(a), Ala. Code, grants the Board total discretion to determine whether and when parole is appropriate. Section 15-22-24(e) authorizes the Board to adopt scheduling guidelines.

4) Copies of two prior Operating Procedures are also attached hereto. The 2001 Operating Procedures were amended in 2004. The 2001 Operating Procedures completely re-wrote the procedures that had been followed for nearly twenty years. These Operating Procedures were adopted in response to the litigation leading up to *Ala. Bd. of Pardons & Paroles vs. Brooks,* 802 So.2d 242 (Ala. Civ. App. 2001). After the trial court's decision, the Board recognized that its procedures needed to change in order to

comport with the trial court's construction of the parole statutes. This interpretation of the statute imposed significant additional burdens on the Board to ensure that victims and public officials had an adequate opportunity to communicate their views to the Board any time the Board reviewed a file. Most of §640-X-2-.02 conflicted with the courts' interpretation of the statutes. The 2001 and 2004 Operating Procedures were drafted to address these concerns. The change from three years to five years was drafted to specifically take into account the US Supreme Court's then-recent decision in *Garner vs. Jones,* 529 U.S. 244 (2000).

5)    The only copy counsel has of the earlier procedures is the 1986 edition. The pertinent provision was adopted at least two years earlier. Plaintiff relies on §640-X-2-.02(8) of these guidelines, which called for further consideration to be scheduled within three years after denial.

6)    The pertinent difference is that, from the early 1980s until adoption of the new Operating Procedures, the Board scheduled further consideration within three years after parole was denied; the Board now schedules further consideration within five years after parole is denied. However, as previously noted, a material change in

circumstance can lead to consideration in less than three years, even if the Board has "set off" consideration for five years.

7) The Operating Procedures that were adopted after Burnett's conviction do not materially increase the likelihood that he will endure greater punishment than he would have endured otherwise. As noted in the Board members' affidavits, Burnett has been considered for parole eight times on his life sentence for murder. His likelihood of release was probably never very good, but there is a mechanism in place to allow the Board to review his case early if there is a substantial change in circumstances bearing on his suitability for release. In any event, the Board is keeping him on a schedule for periodic review, so that the Board and its staff can look for signs of improvement that Burnett might fail to bring to their attention. Although this is a case where parole seems unlikely, the Board is not disregarding the possibility that parole might become appropriate at some point.

8) This report addresses the three issues the Court directed defendants to expand upon.

9) Defendants assert that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law.

The following exhibits are attached hereto:

A)    Affidavit of Robert Longshore;

B)    Affidavit of VeLinda Weatherly;

C)    1986 Operating Procedures;

D)    2001 Operating Procedures; and

E)    2004 Operating Procedures.


Respectfully submitted,

TROY KING.
ATTORNEY GENERAL
KIN047

GREGORY O. GRIFFIN, SR.
CHIEF COUNSEL
GRI026

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar#:  ASB-4358-D63F
Ala. Bd. Pardons and Paroles
301 South Ripley Street
P.O. Box 302405
Montgomery, Alabama 36130
Telephone: (334) 242-8700
Hugh.davis@paroles.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2008, I electronically file the foregoing with the Clerk of the Court using the CM/ECF system with will send notification of such to the following: None, and I hereby certify that I have mailed by United States Postal Service the document to the following:

**BURNIES BURNETT AIS#132146**
**LIMESTONE CORRECTIONAL FACILITY**
**28779 NICK DAVIS ROAD**
**HARVEST, ALABAMA  35749-7006**

Done this 22nd day of April, 2008.

Respectfully submitted,

s/HUGH DAVIS
DEPUTY ATTORNEY GENERAL
State Bar # ASB-4358-D63F
Alabama Board of Pardons and Paroles
Post Office Box 302405
301 S. Union Street
Montgomery, Alabama 36130
(334) 242-8700
(334) 353-4423
Hugh.Davis@paroles.alabama.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

BERNIES BURNETT, 132146 )
 )
  Plaintiff, )
 )
 )
v. )  Case #2:08-CV-22-WKW
 )
 )
 )
ALABAMA BOARD )
OF PARDONS & PAROLES, et al.,)
 )
  Defendants. )


## AFFIDAVIT OF DEFENDANT WEATHERLY

I was a member of the Board on 20 February 2007, when we considered whether to parole Bernies Burnett, AIS #132146. He is serving a sentence of life for murder. This was the eighth time he has been considered for parole.

No Member of the Board was satisfied that he was ready for release. We scheduled further consideration in five years.

I heard the views of various officials and individuals expressed in an open public meeting, and deliberated with my colleagues on the Board. I did not conspire with any person regarding Burnett. I did not rely on any

information that I knew to be false. I made a good faith effort to determine what information was reliable, bearing in mind that Alabama law requires the Board to afford certain individuals and entities the opportunity to express their views.

I am not yet persuaded that there is a reasonable likelihood that Burnett will obey the law if released, or that his release is compatible with society's welfare. If his circumstances change, we have a mechanism in place to allow his case to be reviewed again in less than three years.

We try to assess each prisoner individually. Each crime is unique, and each offender is unique. Even co-defendants in a case have different degrees of culpability, and even offenders who were reared in the same home have different personal circumstances that can bear on their likelihood of success in the future. We try to take into account the circumstances of the crime, the prior criminal history, the personal and social history, and the prisoner's adjustment in prison in order to make a reasonable prediction as to whether he is likely to be a suitable candidate for parole.

**VELINDA A. J. WEATHERLY**
**BOARD MEMBER**

**SWORN TO AND SUBSCRIBED** before me this 22nd day of
_April_ 2008.

_Dorotta Rhoden_
**NOTARY PUBLIC**
**Commission Expires:** _10/10/08_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**BERNIES BURNETT, 132146**   )
            )
   **Plaintiff,**     )
            )
            )
**v.**            )  **Case #2:08-CV-22-WKW**
            )
            )
            )
**ALABAMA BOARD**
**OF PARDONS & PAROLES, et al.,)**
            )
   **Defendants.**    )

### AFFIDAVIT OF DEFENDANT LONGSHORE

I was a member of the Board on 20 February 2007, when we considered whether to parole Bernies Burnett, AIS #132146. He is serving a sentence of life for murder. This was the eighth time he has been considered for parole.

No Member of the Board was satisfied that he was ready for release. We scheduled further consideration in five years.

I heard the views of various officials and individuals expressed in an open public meeting, and deliberated with my colleagues on the Board. I did not conspire with any person regarding Burnett.

I heard the views of various officials and individuals expressed in an open public meeting, and deliberated with my colleagues on the Board. I did not conspire with any person regarding Burnett. I did not rely on any information that I knew to be false. I made a good faith effort to determine what information was reliable, bearing in mind that Alabama law requires the Board to afford certain individuals and entities the opportunity to express their views.

I am not yet persuaded that there is a reasonable likelihood that Burnett will obey the law if released, or that his release is compatible with society's welfare. If his circumstances change, we have a mechanism in place to allow his case to be reviewed again in less than three years.

We try to assess each prisoner individually. Each crime is unique, and each offender is unique. Even co-defendants in a case have different degrees of culpability, and even offenders who were reared in the same home have different personal circumstances that can bear on their likelihood of success in the future. We try to take into account the circumstances of the crime, the prior criminal history, the personal and social history, and the prisoner's adjustment in prison in order to make a reasonable prediction as to whether he is likely to be a suitable candidate for parole.

ROBERT P. LONGSHORE
ASSOCIATE MEMBER

SWORN TO AND SUBSCRIBED before me this 22nd day of
April_____ 2008.

NOTARY PUBLIC
Commission Expires: 10/10/08

# ALABAMA BOARD OF
# PARDONS & PAROLES

## MINUTE ENTRY & BOARD ORDER

On Wednesday, 21 March 2001, the Board convened an open public meeting, with all members present. The Board and the senior staff extensively discussed the proposed procedural rules. During the course of this discussion, various changes were made and agreed upon.

It is, therefore **ORDERED** that the attached rules of procedure be and they are hereby adopted. The Executive Director shall take reasonable steps to ensure that these rules of procedure are available to the public. All previous orders governing these procedures are hereby repealed. The Executive Director shall inform the Legislative Reference Service that the rules on file with that agency are withdrawn and repealed.

**DONE this 21st day of March, 2001.**

APPROVED:                                          DISAPPROVED:

_____                   _____
Johnnie Johnson, Jr.                               Johnnie Johnson, Jr.
Chair                                              Chair

_____                   _____
Gladys Riddle                                      Gladys Riddle
Member                                             Member

_____                   _____
Nancy Conn McCreary                                Nancy Conn McCreary
Member                                             Member

## Preamble

The rules contained herein guide the Board and its staff in performing the duties imposed by law. These rules are published in order to aid the public in sharing the Board's understanding of the applicable statutes, and in order to afford notice to the public of the Board's interpretation of those statutes.

By its very terms, as noted by the Alabama Supreme Court, the Administrative Procedures Act does not apply to the Alabama Board of Pardons and Paroles (hereinafter called the Board) functions. Recognizing that fact, the Board has, from time to time, adopted orders superseding portions of the rules published with the Legislative Reference Service. Keeping track of such ad hoc revisions presents administrative difficulties for Board staff, as well as members of the public.

Adoption of these rules repealed all other procedural rules regulating the Board's operations. In order to afford notice to the public of the procedures followed by this Board, we hereby publish these rules as a guide to our procedures. These rules regulate the interaction of this department with the public, and afford notice to the public of the steps necessary to present a case to the Board for decision.

The Executive Director and the division chiefs subordinate to him are authorized to develop standard operating procedure manuals, providing more detailed guidance to employees about the performance of their duties. Such manuals shall guide the employees as they perform the various duties assigned to them.

Nothing in these Rules shall be construed to conflict with the Constitution or laws of Alabama. Nothing in these Rules shall be construed to create or recognize any liberty or property interest in a prisoner's desire to be paroled. This Board construes the statutes regulating pardons and paroles in Alabama as demonstrating a clear legislative intent not to create such an entitlement.

The provisions of these Rules should be construed as race and gender neutral. This Board intends to apply its discretion on the facts of each case, without taking into account facts that have no bearing on its assessment of society's welfare. The authority exercised by the Board's staff will likewise be based on the facts of each case.

The staff of this department is authorized to develop standard forms to document the official acts of this department, including forms for prisoners, parolees, or the public to use in seeking action by the Board. Any employee developing a form shall submit it to the Executive Director and the Chief Counsel for their approval. Any form approved by these two individuals jointly may be used, without seeking an Order from the Board approving the form.

## Article One

### Intake

1) As soon as practical after a prisoner is sentenced to prison, the Central Office staff shall prepare a file on the case. The appropriate field office(s) will be directed to forward a copy of any investigations to the Central Office. If no investigation has been done at that point, the field office shall promptly conduct its investigation and submit its report. When the appropriate investigations are in the file, the Board's designee shall study the file and schedule initial parole monthly docket. There shall be no presumption that the Board will grant parole.

2) The Board's designee shall calculate the date at which a majority of the Board may act. In doing so, the total term of the prisoner's sentences shall be taken into account. A majority of the Board may lawfully grant parole after the prisoner has served one third of his sentence, or ten years, whichever is lesser. If a prisoner is serving one or more sentences at the time he commits his crime, the designee shall also calculate one third or ten years of the new sentence, calculated from the date of the new sentence, with any applicable credits, and shall determine which of the two calculations results in the later date. The later of the two dates shall control.

3) The Board's designee shall also determine whether correctional incentive time has been applied by the Department of Corrections. If correctional incentive time is applied, that fact shall be taken into account in scheduling initial parole consideration.

4) A staff member designated by the Board shall also determine whether the investigation report is sufficient for Board action. If significant information is lacking, this designee shall request further information from the field office.

5) If a prisoner is receiving correctional incentive time, his initial parole consideration shall be scheduled as follows: (a) for terms of five years or less, set on current docket. (b) for terms of five to ten years, schedule initial parole consideration approximately twelve months prior to the minimum release date; (c) for terms of more than ten years and up to fifteen years, schedule initial parole consideration approximately twenty-four months prior to the minimum release date; (d) for total terms in excess of fifteen years, schedule initial parole consideration approximately thirty-six months prior to the minimum release date.

6) If the controlling sentence is not subject to correctional incentive time, initial parole consideration shall be scheduled as soon as practicable after the prisoner will become eligible for release by majority vote, unless the Board's designee finds other factors that indicate another docket would be more appropriate. If the designee finds mitigating circumstances, the designee may schedule initial parole consideration earlier than the majority vote eligibility date; however, reasons for departure from the standard shall be documented in the file.

7)  When an inmate is convicted of one or more of the Class A felonies Rape I, Robbery I with serious physical injury, Kidnapping I, Murder, Burglary I with serious physical injury, Attempted Murder, Sodomy I, Arson I with serious physical injury, or Sexual Torture (who are eligible for parole), the initial parole consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years, whichever is less, unless the designee finds mitigating circumstances such as the imminent death of the inmate due to medical problems, or a petition by the sentencing judge or prosecuting district attorney. Serious physical injury in this paragraph is as defined in title 13A of the Alabama Code.

8)  Any exercise of discretion by the designee scheduling initial parole consideration, so as to schedule such consideration earlier or later than the most easily calculated set date, shall be supported by a memorandum setting forth the factors considered and the reasons for the deviation. This memorandum shall be placed in the file for the consideration of the Review Committee and the Board.

9)  If the only sentence imposed on a prisoner is a split sentence, the Board will defer to the sentencing court to determine when the prisoner is ready for release. If the prisoner is serving a split sentence and one or more other sentences, the Board will exercise jurisdiction over those other sentences to determine whether parole is consistent with society's welfare.

10) If a prisoner is serving two or more sentences, and the law authorizes parole consideration on some, but not all of his sentences, then he shall be scheduled for parole consideration on those sentences over which the Board has jurisdiction, unless a grant of parole in those cases would have no effect on the time of his release from prison.

## Article Two

### Rescheduling of Consideration

1) After a prisoner has served a minimum of five years, he may initiate contact with the parole officer assigned to his institution or the Board's Central Office, who may review the prisoner's progress to determine whether it may be appropriate to schedule earlier parole consideration. Such a rescheduling may be granted only for good cause shown such as a prognosis of imminent death or a recommendation from the prosecuting attorney or the sentencing judge, and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison. If, after appropriate inquiry or investigation, the officer or agent is persuaded that earlier consideration may be proper, he may refer the matter to the Review Committee for consideration. He shall enter in the file the facts supporting his recommendation.

2) Cases involving inmates facing imminent death may be referred to the Review Committee at any time.

3) The Review Committee shall consist of no fewer than five members designated by the Board. Three members constitute a panel. The members shall be senior staff or employees having five years or more experience in the Central Office.

4) The Review Committee may review any cases referred to them for earlier parole consideration, and determine whether it appears to be consistent with society's interest to schedule earlier parole consideration. If at least three Committee members reviewing a case concur in the action, they may reschedule parole consideration earlier than the docket previously set. They shall enter into the file a written statement of the action taken and the reasons for that action, and shall indicate which members of the Committee favored or declined to favor the action. The Board shall be informed of the Review Committee's action. The Review Committee's actions shall take effect thirty days after the Board is notified, unless any individual Member of the Board orders that the case be reviewed by the Board, in which case it shall not be effective until after the Board has acted.

5) If the Board reviews a rescheduling recommendation, the case shall be docketed on a rescheduling docket. A member of the Review Committee shall attend the Board's meeting and explain the reasons underlying the recommendation to reschedule the consideration set date. The individuals listed in §§15-22-23 and 15-22-36 will be notified and afforded an opportunity to comment and to raise questions about the recommendation. The Board will not attempt to determine at such meeting whether to grant parole.

6) The Executive Director may refer any case to the Review Committee to consider whether rescheduling of consideration is appropriate.

7) The Review Committee shall not review any case after the Board has denied parole on the sentences being served, except as provided herein.

8) If the Board has denied parole, and scheduled the next consideration more than three years after denial, the Committee may consider earlier scheduling, but such review shall not begin earlier than twenty-four months after the Board has denied parole.

## Article Three

### Dockets

1) The Board will not consider or decide whether to order or grant any pardon, parole, conditional transfer or remission, except in an open public meeting. The Board will not entertain any case, unless that case is on the Board's docket for that meeting, as provided herein. Individual Board members will not meet or discuss with any person(s) other than departmental staff regarding any specific Board action outside an open public meeting.

2) The docket unit shall schedule cases in advance of the meeting, so as to permit statutory notices to be sent and received, in the normal course of business, more than thirty days prior to the meeting.

3) Before the docket unit sets a parole consideration case on a docket for consideration by the Board, a designated officer will determine whether a parole officer has interviewed the prisoner not more than three months prior to the open public meeting date. The parole officer conducting this interview shall review the institutional file to evaluate his adjustment, and shall afford the prisoner an opportunity to make a statement regarding his current situation and his proposed plans for life after prison. The parole officer shall provide a form to the prisoner, so that he may submit information about his home and job plan.

4) Four weeks in advance of each docketed meeting, a printed docket shall be available to the members of the Board, so they can know which files to study in preparation for that meeting. The printed docket shall identify the date, time and place of the meeting it refers to. The docket shall also specify whether it is a docket of parole consideration, pardon consideration, conditional transfer, or remission consideration cases. The docket shall also specify whether it is a docket of cases requiring unanimity to grant or of cases involving Class "A" felonies with injury. Each prisoner on the docket shall be identified by name and identifying number. Each week's docket shall be available to the public upon request on the preceding Friday; however, some cases may be removed for cause.

5) As the Board considers each case and takes action, their Secretary shall note on the docket whether the relief is ordered or denied. If, at the conclusion of the day's meeting, the Board has not ordered relief to any candidate or the case has not been continued, the relief is deemed denied. A completed copy of the docket, reflecting the actions taken, shall be included in the Board's minutes for the meeting. The Board's minute books are a public record. The minutes of each open public meeting shall be read and approved at the beginning of the first open public meeting in the following week.

6) When the Board denies relief without specifying when a case may be docketed, it will be rescheduled at the discretion of the Board's designee.

**Article Five**

**Preliminary Review of Docketed Cases**

1) After each consideration docket is prepared, a Board designee shall review each case on the docket and ensure that all necessary information and documents are in the file.

2) Before the docketed cases are referred to the Board for their preliminary review, the file shall contain a thorough statement of the offender's personal and social history, his criminal history, the details of offense for each sentence under consideration, an assessment of his adjustment during the sentence, a proposed home and job program, and evidence that the statutory notices have been delivered or have been sent.

3) Members of the Board shall review the file individually. Any notes that a Board member may make in such review shall be for his private reference, and shall not be included in the department's file pertaining to the case. No member of the Board will discuss any case or share his notes on the case with a colleague on the Board, prior to the meeting at which the matter is scheduled to be considered.

4) Any member of the Board may order an investigation of any matter that may bear on the Board's decision.

5) Before the date the case is docketed for consideration, the Board designee shall ensure that the proposed home and job program has been requested. If the parole plan has not been verified before or during the Board hearing, parole may be denied and rescheduled by the Board in compliance with these rules.

## Article Six

### Board Action on Pardons, Paroles, Remissions of Fines and Forfeitures and Conditional Transfers

1) On the date set for consideration, the Board will convene its open public meeting at the appointed place, at the appointed time or as soon thereafter as practicable.

2) When the Board convenes its open public meeting to consider the matters on its docket, the bailiff shall notify all persons in the waiting rooms.

3) The Board will consider each case on the docket in such order as the Board may direct.

4) All persons giving testimony before the Board shall testify under oath or affirmation.

5) The individuals asking the Board to grant relief will be afforded the first opportunity to state the reasons relief ought to be granted. The officials and individuals entitled to notice under the statute will next be afforded an opportunity to express their views. The Board may, in its discretion, permit any other person to offer information that might be helpful in making its decision. The Board may question any person appearing before them. If a member of the Board desires information from any person not present, the Board may recess while the Board seeks to contact that person.

6) After the Board has received the available information, the Chair or other member presiding shall ask whether the Board is ready to take action. If any member is not ready to take action, he shall state whether additional information is needed, and if so, what that information might be. If the needed information cannot be obtained during the meeting, the Board shall decide whether to proceed without that information or to schedule another meeting.

7) If any Board member desires, the Board may discuss the case before taking action. When the Board is prepared to take action, the members shall enter into the file their votes for or against the relief sought. Any member favoring the order of relief shall enter into the file a detailed written statement of the reasons that they believe the relief is proper.

8) If the requisite number of votes have been cast in favor of the relief that shall constitute an order for the relief, which shall become effective if not withdrawn by the Board in a timely manner.

9) If a quorum may grant relief and the Board members present are evenly divided the case shall be continued to a date certain and that date shall be announced in the open public meeting. Only one continuance shall be scheduled.

10) When each Board member has entered his vote, or declined to do so, the Secretary of the Board shall determine whether the requisite number of affirmative votes appears of record and that the record contains the detailed statements of each affirmative voting Board member's reasons for ordering the relief and that the order is accurately executed including proper dates. If so, the Secretary shall announce that the Board has ordered the relief sought. If not, the Secretary shall announce that the relief has been denied.

11) If parole has been denied, the Board shall determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years.

12) If at any time a quorum is not present, the Board shall stand in recess until a quorum is present. If a quorum is not present at the end of the day, or if it becomes apparent that a quorum probably will not be present that day, all cases that have not been decided shall be rescheduled for further consideration as early as is practicable, consistent with statutory requirements.

13) If only two members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, pending arrival of the remaining member. If the third member does not return that day, the Board may offer those present an opportunity to express their views, and the two members present may ask questions, but the two members shall not deliberate in the absence of the third member. The case shall be continued to a date certain which shall be announced in open public meeting, at which time the entire Board will take action. Only one continuance shall be scheduled.

## Article Seven

### Certification and Reconsideration

1) After the Board has entered an order of a pardon, parole, conditional transfer or remission, the Board's Secretary shall review the file to ensure that the requisite number of affirmative votes appear of record and that the record contains the detailed statements of each affirmative voting member's reasons for ordering the relief.

2) If, prior to the effect of the certificate of relief, good cause is found by Board staff that suggests the relief could be held null and void, such cause shall be documented and placed in the file and the case should be returned to the Board for rescheduling.

3) Any member of the Board may void his own vote to order relief prior to the execution of the certificate of relief. If any member of the Board voids his order for relief, the case shall be docketed for reconsideration. Each party entitled to notice pursuant to §§15-22-23 and 15-22-36 shall be afforded notice of the reconsideration meeting and afforded an opportunity to express their views. This meeting shall be scheduled as early as practicable. The order previously entered shall be stayed pending such reconsideration.

4) All official orders of the Board granting pardons, paroles, and/or restorations of civil and political rights, remissions of fines and forfeitures, and conditional transfers of prisoners shall be certified by the Executive Director.  In the absence of the Executive Director such certification shall be by his designee or by a member of the Board.  The certificate shall bear the seal of this department as evidence that it represents the official act of the Board of Pardons and Paroles.

5) If additional facts come to the attention of the Executive Director or his designee or any member of the Board, subsequent to execution of the certificate but prior to its taking effect, that could result in the grant being rescinded, such official may order, in writing, that the effective date of such certificate or the delivery of such certificate be stayed pending further review by each individual member of the Board who voted in the affirmative.  A record of such information shall be entered into the file.

6) If, after each individual member of the Board who voted in the affirmative has reviewed such information as provided in rule three (3) above, the record still contains the requisite number of votes favoring the order, the stay shall be vacated, and the certificate shall be delivered and become effective.

7) If an order to parole is withdrawn pursuant to this article, that case should be rescheduled for further consideration approximately twelve months after the order is withdrawn, unless the Board orders otherwise.

8) After the certificate is executed a letter will be sent to each person specified by §§15-22-23 and 15-22-36, advising them that the relief has been granted and informing them of the conditions applicable to the grant.

## Article Eight

### Pardons

1) Except as provided in the Alabama Code or in these rules, the procedure for deciding whether to grant a pardon shall be the same as the procedure for deciding whether to grant a parole.

2) No pardon application shall be considered, except at the request of the person whose conviction is at issue.

3) This Board will entertain petitions for pardon from convictions in the courts of the State of Alabama for violations of State law. The mayors of the respective municipalities in Alabama have jurisdiction to pardon violations of municipal ordinances. Convictions for violation of municipal ordinances are not considered to be criminal convictions. This Board will also entertain petitions for pardon from convictions in the courts of the United States or of other States, if the petitioner is, at the time of application and at the time of consideration, a resident of Alabama.

4) The procedures set out herein apply to applicants who have either completed their sentence or who have successfully served at least three years on parole for that sentence. Additional rules apply to other cases.

5) The applicant must fully cooperate with this department's investigation of his criminal history, his personal and social history, and the circumstances of the crime in question.

6) When the application and necessary investigations are complete, the case will be docketed for consideration. The general rules for docketing and notification apply.

7) If the Board grants a pardon, the Board will also decide whether to restore any or all civil and political rights lost as a result of the conviction. Civil and political rights are not restored unless the Board affirmatively votes to do so. As required by law, the members of the Board favoring the grant of relief shall enter in the file a detailed written statement of the reasons supporting that decision.

8) If the Board declines to grant a pardon, or to restore any or all civil and political rights, that applicant may not apply again until at least two years have passed from the date of the Board action, unless otherwise expressly ordered by the Board.

9) Any application for pardon based on innocence shall adhere to requirements of §15-22-36, to include written approval of the judge or district attorney

10) If the Board's designee finds that the statutory jurisdictional requirements are met, the case will be docketed for the Board's consideration. The general rules of procedure applicable to other cases apply to the meeting or meetings at which the Board considers such case. If the Board orders that the pardon be granted, the order will be made a matter of public record.

## Article Nine

### Remissions of Fines

1) The same general procedures followed for consideration of pardons or paroles shall apply to remissions of fines, except as specified herein.

2) This Board will exercise this power only in cases to which the State of Alabama is a party.

3) An individual seeking remission of a fine shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the fine imposed against him.

4) The applicant shall cooperate in this department's investigation of the matter, and shall provide information about his personal, social and criminal history, the details of the offense, and the applicant's economic status.

5) The investigating officer shall contact the sentencing judge and the district attorney or their successors and solicit their input.

6) When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the fine (and, if so, what portion), or to remit the entire fine. Unless a majority of the Board agrees to a specific grant of relief, all relief is denied. No offender shall be permitted to file a subsequent petition for remission in the same case after the Board decides his case.

7) If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the fine is remitted.

8) The Executive Director, or in his absence, his designee or a Board member shall issue a certificate, evidencing the Board's order to remit some or all of the fine. The certificate shall plainly express the terms of the Board's order. The certificate shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued.

## Article Ten

### Remissions of Forfeitures

1) The same general procedures followed for consideration of pardons or paroles shall apply to remissions of forfeitures, except as specified herein.

2) This Board will exercise this power only in cases to which the State of Alabama is a party.

3) An individual seeking a remission of forfeiture shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the forfeiture imposed against him.

4) No application will be considered unless the principal has been convicted of the underlying offense. No application will be considered unless the principal and the sureties join in the application.

5) The applicants shall cooperate in this department's investigation of the matter. In addition to the usual information about the applicant's personal, social and criminal history and the details of the offense, the investigation shall provide a clear picture of the applicants' economic status.

6) The investigating officer shall contact the sentencing judge and the district attorney or their successors and their input solicited.

7) When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the forfeiture (and, if so, what portion), or to remit the entire forfeiture. Unless a majority of the Board agrees to a specific order of relief, all relief is denied. No applicant may submit a subsequent petition for relief in the same case after the Board makes its decision.

8) If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the forfeiture is remitted.

9) The Executive Director or in his absence his designee or a Board member shall issue certificates, evidencing the Board's order to remit some or all of the forfeiture. The certificates shall plainly express the terms of the Board's order. The certificates shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued. The principal and each surety named in the forfeiture action shall each receive an original certificate, bearing the signature of the Executive Director or other designated officer and the seal of the Board of Pardons and Paroles.

## Article Eleven

## Parole Violations

1) A parole officer who has received information indicating that a parolee under his supervision may have violated a condition of parole should investigate the alleged violation in a timely manner. The thoroughness of the investigation shall be proportionate to the seriousness of the alleged violation.

2) After investigating the alleged violation and determining that the allegations are well founded, the parole officer shall submit a written report to Field Services Division. The parole officer should make a preliminary determination of the seriousness of the charges. If the parole officer believes no further action is required, he may report the investigation in the "Notice of Violation" format. If the parole officer believes further action is appropriate, he should report the investigation in the "Report of Parole Violation" format.

3) If the parole officer has reason to believe that the public would be endangered or that the parolee would abscond supervision if the parolee is left at liberty pending further action, he may issue an "authorization to arrest" writ and cause the parolee to be held in the local county jail.

4) The Executive Director or other designated officer will review notices and reports of parole violation when received by Field Services. The reviewing officer will determine whether there is reasonable cause to believe the parolee has violated the terms of his parole in an important respect. The reviewing officer shall base his decision on facts appearing in the record. If he relies on any facts outside of the delinquency report, he shall document those facts in the record. The reviewing officer shall decide whether the alleged violation is sufficiently serious to warrant referral to the Board for declaration of delinquency and/or to the Parole Court for hearing. The reviewing officer shall also determine whether the alleged violation is sufficiently serious to authorize the Department of Corrections to issue a fugitive warrant. Notice bearing the signature of the Executive Director or his designee shall be forwarded to the Department of Corrections authorizing the issuing of a fugitive warrant.

5) The charges may be referred to the Parole Court for hearing prior to the decision to refer to the Board for declaration of delinquency and/or prior to the decision to authorize the Department of Corrections to issue a fugitive warrant. In such event, the Executive Director or other designated officer shall direct the investigating parole officer to direct the parolee to appear before the Parole Court for an evidentiary hearing.

6) The decision whether to incarcerate the parolee pending Parole Court may be reconsidered at any point in the process.

7) The Board retains jurisdiction to reconsider whether to enter a declaration of delinquency at any point in the process.

8) The officer submitting the delinquency report shall coordinate with the regional Hearing Officer to schedule Parole Court. The Hearing Officer, in cooperation with Field Services, may assign a case to a designated parole officer for hearing.

9)    After the case is docketed for Parole Court, Field Services shall also docket the
      case for the Board to decide whether the parolee should be declared delinquent.
      Declarations of delinquency should be docketed on a weekly basis, unless the
      Board has no regularly scheduled meetings during a particular week. Field
      Services will notify the Department of Corrections of the date the Board declares
      a parolee delinquent.

### Article Twelve

### Parole Court Hearings

1) The Board has, pursuant to law, appointed or designated officers to hold parole court and to determine the facts pertaining to alleged parole violations. These hearing officers are authorized to determine whether the parolee is guilty, as well as to determine whether there is probable cause to detain the parolee pending final resolution of the charges.

2) The Board prefers to have a single fact-finding hearing, at which the Hearing Officer will decide whether parole violation charges are proven or not, evidence in mitigation will be heard, and the Hearing Officer will determine whether it is appropriate to continue detaining the parolee pending the Board's decision on revocation. However, the Hearing Officer may determine whether probable cause exists to detain the parolee, and continue the hearing until a later date for determination of guilt. The evidence taken at the preliminary hearing, if admissible, shall be considered in the determination of guilt. If there is no reasonable cause to detain the parolee pending further hearing, the Board shall be promptly so notified in writing.

3) The investigating parole officer shall provide the parolee with a copy of the Report or Notice containing the charges prior to or contemporaneously with notice of the date, time and place of Parole Court, whether the parolee is incarcerated or not. If the parolee is not incarcerated, the parole officer may deliver these documents by U.S. mail, addressed to the parolee's address of record (as reflected in the parole officer's supervision notes). The officer serving these papers shall return a written certificate of service to the Parole Court.

4) The Hearing Officer may accept a knowing, intelligent guilty plea to parole violation charges. Before doing so, he shall ensure that the parolee is aware of the specific charges, and understands the rights he waives by entering such plea. The Hearing Officer shall not accept a guilty plea unless the parolee does, in fact, acknowledge that he violated the conditions of parole. The Hearing Officer shall document the facts admitted by the parolee.

5) The parolee is responsible for notifying his counsel and his witnesses of the date, time and place of the Parole Court hearing. He is also responsible for forwarding a copy of the charges to his counsel. The parole officer is not forbidden from contacting counsel or witnesses as a courtesy to the parolee, nor is the parole officer prohibited from providing copies of the charges or other documents pertaining to Parole Court to the parolee's counsel. Papers will be served on the parolee, either by personal service or by mail to ensure that he has received reasonable notice of the charges and the proceedings.

6) The Parole Court hearing officer may exercise reasonable discretion if any party or witness requests a continuance of a hearing. The entire hearing may be rescheduled, or the Parole Court may hear such evidence as is available and continue the hearing for further evidence, as may best serve the ends of justice. If the parolee requests a continuance and the continuance is denied, the Parole Court should enter the request and stated grounds in the record. The Parole Court should also state the reasons for denying the request.

7)   The Hearing Officer shall preside over the hearing and govern its conduct. The Hearing Officer shall ensure that the record accurately reflects all necessary notices and that the record accurately reflects compliance with all procedural safeguards. A Probation and Parole Officer shall present the case of the alleged parole violations. The parolee shall be allowed to cross-examine witnesses accusing him, unless the Hearing Officer specifically finds good cause to believe the witness would be endangered by confrontation. If confrontation is disallowed, the Hearing Officer will make reasonable efforts to balance the parolee's need for cross-examination. The parolee shall be allowed to present evidence in his own defense, either personally or through counsel. The parolee's witnesses shall be subject to cross-examination. The Hearing Officer may question any witness, and should permit each side to ask follow-up questions.

8)   The investigating parole officer shall present the evidence supporting the parole violation charges. The parole officer shall question any witnesses other than himself. The parole officer may testify in narrative format if he is a competent witness as to any issue. The parole officer may also question witnesses testifying in the parolee's defense. All witnesses against the parolee are subject to cross-examination. The Parole Court may exercise reasonable discretion in deciding whether to question witnesses, in order to arrive at the truth. The Parole Court may exercise reasonable discretion to disallow any question that seeks to elicit information not pertinent to the issues, or which tends to be abusive. The Parole Court should include in the record any questions disallowed and the reasons for the ruling.

9)   For purposes of determining whether probable cause exists, the Hearing Officer may consider any relevant information, including hearsay. For purposes of determining guilt, the Hearing Officer shall consider any evidence that would be admissible under either the Alabama Rules of Evidence or the Federal Rules of Evidence. The Hearing Officer may also consider any other evidence that appears to be reliable and probative. Commonly accepted treatises on evidence, including Gamble's, McElroy's, Wigmore's and McCormick's, should be considered persuasive authority for admission of evidence. If the Hearing Officer relies on evidence that does not appear to be admissible under the rules of evidence, the Hearing Officer should explain the reasons that he considers it to be reliable.

10)  The Parole Court shall allow the parolee great leeway in presenting information that may be considered as mitigating circumstances. For purposes of mitigation, the Hearing Officer shall consider any information offered by the parolee. Any objections shall go to the weight of the evidence, not to its admissibility.

11)  The Hearing Officer shall take judicial notice of conditions of parole imposed by this Board or by another State pursuant to the Interstate Compact. The parolee may introduce evidence that he was not aware of a condition. The Hearing Officer shall take judicial notice of the laws of the State of Alabama. In the absence of proof to the contrary, the Hearing Officer may rely on a copy of a municipal ordinance or of a statute of another jurisdiction as evidence of the law in that jurisdiction. The Hearing Officer may presume, in the absence of proof to the contrary, that each municipality in Alabama has adopted an ordinance incorporating the penal provisions of the Alabama Code into its municipal law. The Hearing Officer may accept a certified copy of a judgment of conviction as

conclusive evidence that the parolee is guilty of violating a law, provided that, in the case of a conviction in municipal court or district court, the time for appealing to circuit court for trial de novo had run before the certification was issued.

12) The Hearing Officer may determine that a parolee is guilty of violating a law, but that the offense was less than that named in the delinquency report. The Hearing Officer may also determine that a parolee is guilty of violating a law other than that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue. The Hearing Officer may determine that a parolee is guilty of violating a condition of parole other than that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue.

## Article Thirteen

### Parole Court Reports

1)  The Hearing Officer shall file a detailed written report, detailing the evidence considered and deciding the facts. The report shall also state what evidence was relied upon in the findings of facts. The report shall clearly state whether each charge was proven or not. If the parolee is found guilty of violating the terms of his parole, the Hearing Officer shall also include in his report a detailed assessment of the mitigating circumstances. The Hearing Officer shall then recommend whether parole should be revoked or reinstated. The parolee shall be provided a copy of the Hearing Officer's Findings of Fact and Recommendation. The Hearing Officer's report shall detail the reasons supporting his recommendation. This report shall also apprise the parolee of his right to promptly submit written comments or objections for the Board's consideration.

2)  The written report is the official record of the Parole Court Hearing; however audio recordings may be used to assist in report preparation.

3)  If the Parole Court determines that no charges have been proven, but that there is probable cause to believe any charge may be proven, the case may be continued pending further hearing. The Parole Court should also determine whether it is appropriate to detain the parolee pending such further hearing. These findings are to be reduced to writing, and a copy is to be served on the parolee.

4)  Except as provided in the preceding section, if no charges are proven to the reasonable satisfaction of the Hearing Officer, the Hearing Officer shall forthwith prepare a draft order, for the Board's signature, directing withdrawal of any warrant issued by authority of this department. That draft order and the Hearing Officer's report shall be filed with the Board, and copies forwarded to the Executive Director (or designated officer) and members of the Board, by the most expeditious means. The Clerk of the Hearing Office shall prepare a monthly docket of acquittals for the Board's review. A copy of that docket shall be forwarded to the Executive Director or designated officer. A parolee who has been accused of a specific parole violation, after the charge is found "not proven," shall not have his parole revoked for that violation unless the charge is subsequently proven in a new evidentiary hearing or unless he is convicted of an underlying criminal charge. The Board's review of acquittals is for the purpose of ensuring that Hearing Officers are properly evaluating the evidence presented to them. The Board will also review the files pertaining to proven charges as they determine whether parole should be revoked.

5)  If the parolee is found guilty of any charge, the Hearing Officer's report shall be filed with the Clerk of the Hearing Office. The Clerk shall prepare two separate dockets. The cases in which Hearing Officers recommend reinstatement shall be presented to the Board separately from those cases in which the Hearing Officers recommend revocation. The cases in which Hearing Officers recommend revocation shall be presented to the Board no earlier than three weeks after Parole Court, so as to allow the parolee an opportunity to submit any written comments or objections to the Board.

6)  If the parolee believes the Parole Court's written report misstates the facts adduced at the hearing, he or his counsel shall submit to the Board a written objection to that report within fourteen days of receipt of the report. Any objections not raised are deemed waived.

7)  If the parolee has not been incarcerated pending the Parole Court hearing, the Parole Court shall determine whether he should be incarcerated pending the Board's final decision.

8)  If the Parole Court recommends reinstatement, the written report should be submitted to the Board at the earliest practicable time.

9)  If the Parole Court recommends revocation, the written report should be submitted to the Board within a reasonable time after the time has run for the parolee to file his objections to the report.

## Article Fourteen

### Board Action Subsequent to Parole Court

1) The Clerk of the Hearing Office shall keep any original tape recordings of hearings. If any member of the Board so desires, they may review the tapes prior to the final decision on revocation or reinstatement. The Parole Court dockets shall be presented to the Board during regularly scheduled meetings. The Board orders on revocations or reinstatements shall be published in the Board's minutes.

2) Any tape recording shall be maintained for not less than twelve months after the Board enters a final order revoking parole or returning the parolee to supervision. Before any recording is erased, the Clerk shall ensure that the charges are not still pending and that the parolee has not filed a petition for judicial review. If Field Services or the Chief Counsel see reason to retain a recording, it shall be retained as long as necessary.

3) The records of Parole Court proceedings shall be maintained in the department's file pertaining to the affected parolee. These records shall remain under the statutory privilege, except as provided herein. The Chief Counsel, or his designated assistant counsel, is authorized to waive the privilege as to Parole Court records, when the interest of justice will be served thereby. In the event that the Chief Counsel elects to waive the privilege, he shall take care not to provide any advantage to either side in any case or controversy. To that end, he shall require any party seeking production of such records to state with particularity and specificity the grounds for releasing such records. The applicant shall identify any other parties who would be affected by the release, and provide sufficient information to enable the Chief Counsel to afford those parties notice and an opportunity to be heard. The Chief Counsel shall require any party receiving a copy of such records to reimburse the department for the cost of producing and copying such records.

4) The Board shall take up its parole court dockets during regularly scheduled open public meetings. After consideration of the parole court report and any written objections submitted by the parolee, the Board shall decide whether to revoke parole.

5) Any Board order, revoking parole shall state the reasons for revocation and shall refer to the evidence relied on in determining that revocation is appropriate.

6) If the Board is inclined to reinstate to parole supervision any parolee found guilty of parole violation, the case may be continued to a later meeting, pending verification of his home and job plan.

7) If the Board is of the opinion that the interests of justice will be served by remanding a case for further hearing, either to ensure that the parolee has had due process or to ensure that society is properly served by a more thorough fact-finding process, such proceedings shall be conducted as promptly as may be practicable and just.

8) The Clerk shall notify the Department of Corrections of any order revoking parole or returning the parolee to parole supervision.

9) The Clerk shall ensure that the Executive Director receives copies of any dockets, orders, or records he may need.

10)   The Board shall consider the record of proceedings and vote to revoke or reinstate parole, as they deem proper. The Board will only consider revocation on charges proven to the reasonable satisfaction of the Parole Court. However, the Board may remand any charge for further hearing.

11)   The Board retains jurisdiction to reconsider any revocation that they may later determine to have been improvidently ordered.

## Article Fifteen

### Records

1) The records of the Board pertaining to each prisoner are confidential. Prior to enactment of the statutory privilege in 1951, the Legislature regarded these files as privileged by common law. The Legislative history of Act 599 of 1951 indicates that the Legislature was concerned about the risks of abuse if individuals, including public officials, had access to the sensitive information in these files. Act 83-750 of 1983 increased the likelihood that the Board would receive useful, but sensitive, information from crime victims and public officials. The context of this act indicates that the Legislature intended for communications from these individuals to be kept confidential.

2) The records maintained in the Board's Minute Books are public records. As provided herein, copies of the Board's dockets, including a record of the action taken, will be filed in the Board's Minutes for public inspection.

3) Board Orders granting pardons, with or without restoration of civil and political rights, paroles, or remissions of fines or forfeitures are public records. The statement of reasons filed by each member voting in favor of such grant are public records.

## STATE BOARD OF PARDONS AND PAROLES

### BOARD ORDER

On Monday, 23 February 2004, the Board, convened an open public meeting, with all regular members present. The Board and the senior staff discussed proposed changes to the current rules. During the course of this discussion, various changes were made and agreed upon.

It is, therefore, **ORDERED** that the attached rules of procedure be and they are hereby adopted. The Executive Director shall take reasonable steps to ensure that these rules of procedure are available to the public. All previous orders governing these procedures are hereby repealed.

Done this the 23rd day of February, 2004.

**APPROVED**                                           **DISAPPROVED**

**SIDNEY T. WILLIAMS**                          **SIDNEY T. WILLIAMS**
**CHAIRMAN**                                         **CHAIRMAN**

**NANCY CONN McCREARY**                    **NANCY CONN McCREARY**
**ASSOCIATE MEMBER**                           **ASSOCIATE MEMBER**

**VELINDA A. J. WEATHERLY**                **VELINDA A. J. WEATHERLY**
**ASSOCIATE MEMBER**                           **ASSOCIATE MEMBER**

# ALABAMA BOARD OF PARDONS AND PAROLES
# RULES, REGULATIONS, AND PROCEDURES

**Preamble**

**Article One** Intake

**Article Two** Rescheduling of Consideration

**Article Three** Dockets

**Article Four** Notice of Hearings

**Article Five** Preliminary Review of Docketed Cases

**Article Six** Board Action on Pardons, Paroles, Remissions of Fines and Forfeitures and  Conditional Transfers

**Article Seven** Certification and Reconsideration

**Article Eight** Pardons

**Article Nine** Remissions of Fines

**Article Ten** Remissions of Forfeitures

**Article Eleven** Parole Violations

**Article Twelve** Parole Court Hearings

**Article Thirteen** Parole Court Reports

**Article Fourteen** Board Action Subsequent to Parole Court

**Article Fifteen** Records

**Article Sixteen** Flexibility in Responding to Crises

**Article Seventeen** Organizatin of Panels

**Board Order**

**Preamble**

These Operating Procedures guide the Board and its staff in performing the duties imposed by law.  These Procedures are published in order to aid the public in sharing the Board's understanding of the applicable statutes, and in order to afford notice to the public of the Board's interpretation of those statutes.

Adoption of these Procedures repealed all other procedural rules regulating the Board's operations. In order to afford notice to the public of the procedures followed by this Board, we hereby publish these Procedures for the information of interested individuals. These procedures afford notice to the public of the steps necessary to present a case to the Board for decision.

These Operating Procedures are not intended to, and do not, create any substantive legal rights for any person. These Operating Procedures are designed to guide the Board's staff in preparing cases for the Board's consideration. To the extent that the Board may lawfully delegate discretion to its staff, these Operating Procedures guide the staff in exercising their discretion. The Board's staff will exercise that discretion to benefit the public in general, but these Operating Procedures do not create a duty owed to any individual. The staff is accountable to the Board, rather than to any individual.

The Executive Director and the division chiefs subordinate to him are authorized to develop standard operating procedure manuals, providing more detailed guidance to employees about the performance of their duties. Such manuals shall guide the employees as they perform the various duties assigned to them.

Nothing in these Procedures shall be construed to conflict with the Constitution or laws of Alabama. Nothing in these Procedures shall be construed to create or recognize any liberty or property interest in a prisoner's desire to be paroled. This Board construes the statutes regulating pardons and paroles in Alabama as demonstrating a clear legislative intent not to create such an entitlement.

The provisions of these Procedures should be construed as race and gender neutral. This Board intends to apply its discretion on the facts of each case, without taking into account facts that have no bearing on its assessment of

society's welfare. The authority exercised by the Board's staff will likewise be based on the facts of each case.

The staff of this department is authorized to develop standard forms to document the official acts of this department, including forms for prisoners, parolees, or the public to use in seeking action by the Board. Any employee developing a form shall submit it to the Executive Director and the Chief Counsel for their approval. Any form approved by these two individuals jointly may be used, without seeking an Order from the Board approving the form.

The Board is open for business from 8:00 a.m. until 5:00 p.m. on regular business days of State government. It normally meets in the Central Office Board Room. During any period that Special Members may serve, the Board may convene in panels, with one panel meeting at the Central Office and the second meeting at the alternate site leased by the Board. The three Regular Members of the Board, who are responsible for administering the agency, convene at 8:00 a.m. daily, or as soon thereafter as a quorum may be assembled, for the purpose of setting policy, serving as appointing authority, approving contracts and performing other administrative duties. The Regular Board may recess from time to time through the day in order for its members to serve on panels for consideration of clemency matters.



**Article One**

**Intake**

1.  As soon as practical after a prisoner is sentenced to prison, the Central Office staff shall prepare a file on the case. The appropriate field office(s) will be directed to forward a copy of any investigations to the Central Office. If no investigation has been done at that point, the field office shall promptly conduct its investigation and submit its report. When the appropriate investigations are in the file, the Board's

designee shall study the file and schedule initial parole monthly docket. There shall be no presumption that the Board will grant parole.

2.  The Board's designee shall calculate the date at which a majority of the Board may act. In doing so, the total term of the prisoner's sentences shall be taken into account. A majority of the Board may lawfully grant parole after the prisoner has served one third of his sentence, or ten years, whichever is lesser. If a prisoner is serving one or more sentences at the time he commits his crime, the designee shall also calculate one third or ten years of the new sentence, calculated from the date of the new sentence, with any applicable credits, and shall determine which of the two calculations results in the later date. The later of the two dates shall control.

3.  The Board's designee shall also determine whether correctional incentive time has been applied by the Department of Corrections. If correctional incentive time is applied, that fact shall be taken into account in scheduling initial parole consideration.

4.  A staff member designated by the Board shall also determine whether the investigation report is sufficient for Board action. If significant information is lacking, this designee shall direct the field office to provide further information.

5.  If a prisoner is receiving correctional incentive time, his initial parole consideration shall be scheduled as follows: (a) for terms of five years or less, set on current docket. (b) for terms of five to ten years, schedule initial parole consideration approximately twelve months prior to the minimum release date; (c) for terms of more than ten years and up to fifteen years, schedule initial parole consideration approximately twenty-four months prior to the minimum release date; (d) for total terms in excess of fifteen years, schedule initial parole consideration approximately thirty-six months prior to the minimum release date. The Board recognizes that most prisoners convicted of particularly violent or severe offenses, or with extensive criminal histories, or displaying a great propensity for future violence, or with significant community opposition are unlikely to receive a sentence subject to this provision.

6.  If the controlling sentence is not subject to correctional incentive time, initial parole consideration shall be scheduled as soon as practicable after the prisoner will become eligible for release by majority vote, unless the Board's designee finds other factors that indicate another docket would be more appropriate. In assessing the suitability of the majority vote set, the designee will examine the offender's prior record, the nature and severity of the present offense, the potential for future violence, and any information available regarding community attitude toward the offender. If the designee finds mitigating circumstances, the designee may recommend scheduling initial parole consideration earlier than the majority vote eligibility date; however, reasons for departure from the standard shall be documented in the file, and any such recommendation will be referred to the Review Committee for action.

7.  When an inmate is convicted of one or more of the Class A felonies Rape I, Robbery I with serious physical injury, Kidnapping I, Murder, Burglary I with serious physical injury, Attempted Murder, Sodomy I, Arson I with serious physical injury, or Sexual Torture (who are eligible for parole), the initial parole consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen)  years, whichever is less, unless the designee finds mitigating circumstances. Serious physical injury in this paragraph is as defined in title 13A of the Alabama Code.

8.  If the designee finds mitigating circumstances that appear to warrant a deviation from the guidelines, the designee shall document those circumstances, together with a recommendation for scheduling of consideration. In assessing the suitability of the standard set, the designee will examine the offender's prior record, the nature and severity of the present offense, the potential for future violence, and any information available regarding community attitude toward the offender.  Any recommendation by the designee scheduling initial parole consideration, so as to schedule such consideration earlier or later than the most easily calculated set date, shall be supported by a memorandum setting forth the factors considered and the reasons for the deviation.   This memorandum shall be placed in the file for the consideration of the Review Committee and the Board.  The Review

Committee shall schedule initial parole consideration in cases where the designee has recommended a deviation from the guidelines.

9.  If the only sentence imposed on a prisoner is a split sentence, the Board will defer to the sentencing court to determine when the prisoner is ready for release. If the prisoner is serving a split sentence and one or more other sentences, the Board will exercise jurisdiction only over those other sentences to determine whether parole is consistent with society's welfare.

10. If a prisoner is serving two or more sentences, and the law authorizes parole consideration on some, but not all of his sentences, then he shall be scheduled for parole consideration on those sentences over which the Board has jurisdiction.



**Article Two**

**Rescheduling of Consideration**

1.  After a prisoner has served a minimum of five years, he may initiate contact with designated officers in the Board's Central Office, who may review the prisoner's progress to determine whether it may be appropriate to schedule earlier parole consideration. Such a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison. If, after appropriate inquiry or investigation, the officer or agent is persuaded that earlier consideration may be proper, he may refer the matter to the Review Committee for consideration. He shall enter in the file the facts supporting his recommendation.

2.  Cases involving inmates facing imminent death may be referred to the Review Committee at any time.

3.  The Review Committee shall consist of no fewer than five members designated by the Board. Three members constitute a panel. The members shall be senior staff or employees having five years or more experience in the Central Office.

4.  The Review Committee may review any cases referred to them for earlier parole consideration, and determine whether it appears to be consistent with society's interest to schedule earlier parole consideration. If at least three Committee members reviewing a case concur in the action, they may reschedule parole consideration earlier than the docket previously set. They shall enter into the file a written statement of the action taken and the reasons for that action, and shall indicate which members of the Committee favored or declined to favor the action. The Review Committee's actions shall take effect immediately.

5.  The Executive Director or the Chief Counsel may refer any case to the Review Committee to consider whether rescheduling of consideration is appropriate, notwithstanding any other provision in these Operating Procedures.

6.  The Review Committee shall not review any case after the Board has denied or revoked parole on the sentences being served, except as provided herein.

7.  If the Board has denied or revoked parole, and scheduled the next consideration three years or more after denial or revocation, the Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole.



**Article Three**

**Dockets**

1.  The Board will not consider or decide whether to order or grant any pardon, parole, conditional transfer or remission, except in an open

public meeting. The Board will not entertain any case, unless that case is on the Board's docket for that meeting, as provided herein. Individual Board members will not meet or discuss with any person(s) other than departmental staff regarding any specific Board action outside an open public meeting.

2.  The docket unit shall schedule cases in advance of the meeting, so as to permit statutory notices to be sent and received, in the normal course of business, more than thirty days prior to the meeting.

3.  Before the docket unit sets a parole consideration case on a docket for consideration by the Board, a designated officer will determine whether a parole officer has interviewed the prisoner not more than three months prior to the open public meeting date. If there is no current interview in the file, this designee will direct an institutional parole officer to conduct the interview. The parole officer conducting this interview shall review the institutional file to evaluate his adjustment, and shall afford the prisoner an opportunity to make a statement regarding his current situation and his proposed plans for life after prison. The parole officer shall provide a form to the prisoner, so that he may submit information about his home and job plan.

4.  Four weeks in advance of each docketed meeting, a printed docket shall be available to the members of the Board, so they can know which files to study in preparation for that meeting. The printed docket shall identify the date, time and place of the meeting it refers to. The docket shall also specify whether it is a docket of parole consideration, pardon consideration, conditional transfer, or remission consideration cases. The docket shall also specify whether it is a docket of cases requiring unanimity to grant or of cases involving Class "A" felonies with injury. Each prisoner on the docket shall be identified by name and identifying number. Each week's docket shall be available to the public upon request.

5.  As the Board considers each case and takes action, their Secretary shall note on the Docket whether the relief is ordered or denied.  If, at the conclusion of the day's meeting, the Board has not ordered relief to any candidate or the case has not been continued, the relief is deemed denied.  A completed copy of the Docket, reflecting the

actions taken, shall be included in the Board's Minutes for the meeting. The Minutes of each open public meeting shall be read and approved by the sitting Board members at the conclusion of that meeting. Each member in attendance and the Secretary for the meeting shall sign the Minute Entries, reflecting the actions taken in that meeting. The Board's Minute Books are a public record.

6. When the Board denies relief without specifying when a case may be docketed, it will be rescheduled at the discretion of the Board's designee.



**Article Four**

**Notice of Hearings**

1. The Alabama Code specifies the public officials and individuals who are entitled to notice of meetings at which the Board considers and takes action to grant pardons, paroles, conditional transfer or remissions. The Alabama Code, §§ 15-22-23 and 15-22-36, requires that notice be sent on any felonies involving violence, death, or any physical injury to the person of another.

2. If the victim entitled to notice is a minor, unless some other person or entity (including a State or public agency) is the legal guardian, the notice shall be directed to the minor in care of the custodial parent. If some other person is the legal guardian, the notice shall be directed to the minor in care of the guardian.

3. If the victim was a minor at the time of the offense, but has attained majority by the time notice is to be sent, the notice should be directed to the victim.

4. If the victim is deceased, the law provides that notice shall be sent to the victim's immediate family. The members of the "immediate family" shall be identified as of the time of the victim's death.

5.  If the victim is a minor at the time of death, his parents and his siblings are in his immediate family.

6.  If the victim is married at the time of death, the surviving spouse is in his immediate family, to the exclusion of his parents and siblings.

7.  If minor children survive the victim, they are in his immediate family.

8.  If the victim is an adult at the time of his death, but is not married and leaves no children, and is survived by his parents, they are regarded as his immediate family.

9.  In any other case, a relative of the victim shall be notified of the action being considered. Reasonable steps should be taken to identify a relative reasonably close to the definition of immediate family.

10. The victim service office of this department shall have primary responsibility for identifying and locating the individuals who should receive notice. The victim service office will inform victims of the importance the Board places on their concerns as well as public safety.

11. Any employee of this department assigned to identify and locate an individual entitled to notice shall document the steps taken to accomplish that goal. If unable to identify or locate a victim, or if it is not otherwise possible to notify a person entitled to receive notice, a certificate of due diligence shall be executed by an employee of the department certifying that the victim can not be located and detailing the steps taken to locate the victim. This certificate of due diligence form will become a part of the Board file and the Board will proceed with the hearing.

12. Victims who decline to be notified through certified mail will be certified as a due diligence case.



**Article Five**

**Preliminary Review of Docketed Cases**

1. After each consideration docket is prepared, a Board designee shall review each case on the docket and ensure that all necessary information and documents are in the file.

2. Before the docketed cases are referred to the Board for their preliminary review, the file shall contain a thorough statement of the offender's personal and social history, his criminal history, the details of offense for each sentence under consideration, an assessment of his adjustment during the sentence, a proposed home and job program, and evidence that the statutory notices have been delivered or have been sent.

3. Members of the Board shall review the file individually. Any notes that a Board member may make in such review shall be for his private reference, and shall not be included in the department's file pertaining to the case. No member of the Board will discuss any case or share his notes on the case with a colleague on the Board, prior to the meeting at which the matter is scheduled to be considered.

4. Any member of the Board may order an investigation of any matter that may bear on the Board's decision.

5. Before the date the case is docketed for consideration, the Board designee shall ensure that the proposed home and job program has been requested. If the parole plan has not been verified before or during the Board hearing, parole may be denied and rescheduled by the Board in compliance with these rules.



**Article Six**

**Board Action on Pardons, Paroles, Remissions of Fines and Forfeitures and Conditional Transfers**

1.  On the date set for consideration, the Board will convene its open public meeting at the appointed place, at the appointed time or as soon thereafter as practicable.

2.  When the Board convenes its open public meeting to consider the matters on its docket, the bailiff shall notify all persons in the waiting rooms that the Board is convening to hear all business that may properly come before it, and that the meeting is open to the public.

3.  The Board will consider each case on the docket in such order as the Board may direct.

4.  All persons giving testimony before the Board shall testify under oath or affirmation.

5.  The individuals asking the Board to grant relief will be afforded the first opportunity to state the reasons relief ought to be granted. The officials and individuals entitled to notice under the statute will next be afforded an opportunity to express their views. The Board may, in its discretion, permit any other person to offer information that might be helpful in making its decision. If any member of the Board sees a need to do so, the Board may recess while a member of the staff interviews an individual to determine whether that individual should be asked or allowed to testify. The Board may question any person appearing before them. If a member of the Board desires information from any person not present, the Board may recess while the Board's staff seeks to contact that person.

6.  After the Board has received the available information, the Chair or other member presiding shall ask whether the Board is ready to take action. If any member is not ready to take action, he shall state whether additional information is needed, and if so, what that information might be. If the needed information cannot be obtained during the meeting, the Board shall decide whether to proceed without that information or to schedule another meeting.

7.  If any Board member desires, the Board may discuss the case before taking action. When the Board is prepared to take action, the members shall enter into the file their votes for or against the relief sought. Any member favoring the order of relief shall enter into the file a detailed written statement of the reasons that they believe the relief is proper.

8.  If the requisite number of votes have been cast in favor of the relief, that shall constitute an order for the relief, which shall become effective if not withdrawn by the Board in a timely manner.

9.  If a quorum may grant relief and the Board members present are evenly divided the case shall be continued to a date certain and that date shall be announced in the open public meeting. The Secretary shall announce that the case will be taken up again at the appointed public meeting. Only one continuance shall be scheduled.

10. When each Board member has entered his vote, or declined to do so, the Secretary of the Board shall determine whether the requisite number of affirmative votes appears of record and that the record contains the detailed statements of each affirmative voting Board member's reasons for ordering the relief and that the order is accurately executed including proper dates. If so, the Secretary shall announce that the Board has ordered the relief sought. If not, the Secretary shall announce that the relief has been denied.

11. If parole has been denied, the Board shall determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years. The case will be considered again as near as practicable to the specified month and year.

12. If at any time a quorum is not present, the Board shall stand in recess until a quorum is present. If a quorum is not present at the end of the day, or if it becomes apparent that a quorum probably will not be present that day, all cases that have not been decided shall be rescheduled for further consideration as early as is practicable, consistent with statutory requirements.

13. If only two members of the Board are present to hear a case requiring unanimous approval, the Board may pass over that case to hear other cases on the docket, pending arrival of the remaining member. If the third member does not return that day, the Board may offer those present an opportunity to express their views, and the two members present may ask questions, but the two members shall not deliberate in the absence of the third member. The case shall be continued to a date certain, which shall be announced in open public meeting, at which time the entire Board will take action. Only one continuance shall be

scheduled. In the event that the Board is unable to decide the case on the date specified, the case shall be rescheduled for further consideration as early as is practicable, consistent with statutory requirements.



**Article Seven**

**Certification and Reconsideration**

1.  After the Board has entered an order of a pardon, parole, conditional transfer or remission, the Board's Secretary shall review the file to ensure that the requisite number of affirmative votes appear of record and that the record contains the detailed statements of each affirmative voting member's reasons for ordering the relief.

2.  If, prior to the effect of the certificate of relief, good cause is found by Board staff that suggests the relief could be held null and void, such cause shall be documented and placed in the file and the case should be returned to the Board for rescheduling.

3.  Any member of the Board may void his own vote to order relief prior to the effect of the certificate of relief. If any member of the Board voids his order for relief, the case shall be docketed for reconsideration. Each party entitled to notice pursuant to §15-22-23 and §15-22-36 shall be afforded notice of the reconsideration meeting and afforded an opportunity to express their views. This meeting shall be scheduled as early as practicable. The order previously entered shall be stayed pending such reconsideration.

4.  All official orders of the Board granting pardons, paroles, and/or restorations of civil and political rights, remissions of fines and forfeitures, and conditional transfers of prisoners shall be certified by the Executive Director, except as provided herein. In the absence of the Executive Director such certification shall be by his designee or by a member of the Board. The certificate shall bear the seal of this department as evidence that it represents the official act of the Board of Pardons and Paroles.

5.  If additional facts come to the attention of the Executive Director or his designee or any member of the Board, subsequent to execution of the certificate but prior to its taking effect, that could result in the grant being rescinded, such official may order, in writing, that the effective date of such certificate or the delivery of such certificate be stayed pending further review by each individual member of the Board who voted in the affirmative. A record of such information shall be entered into the file.

6.  If, after each individual member of the Board who voted in the affirmative has reviewed such information as provided in section three (3) above, the record still contains the requisite number of votes favoring the order, the stay shall be vacated, and the certificate shall be delivered and become effective.

7.  If an order to parole is withdrawn pursuant to this article, that case should be rescheduled for further consideration approximately twelve months after the order is withdrawn, unless the Board orders otherwise.

8.  After the certificate is executed a letter will be sent to each person specified by §§15-22-23 and 15-22-36, advising them that the relief has been granted and informing them of the conditions applicable to the grant.



**Article Eight**

**Pardons**

1.  Except as provided in the Alabama Code or in these rules, the procedure for deciding whether to grant a pardon shall be the same as the procedure for deciding whether to grant a parole.

2.  No pardon application shall be considered, except at the request of the person whose conviction is at issue.

3.  This Board will entertain petitions for pardon from convictions in the courts of the State of Alabama for violations of State law. The mayors of the respective municipalities in Alabama have jurisdiction to pardon violations of municipal ordinances. Convictions for violation of municipal ordinances are not considered to be criminal convictions. This Board will also entertain petitions for pardon from convictions in the courts of the United States or of other States, if the petitioner is, at the time of application and at the time of consideration, a resident of Alabama.

4.  The procedures set out herein apply to applicants who have either completed their sentence or who have successfully served at least three years on parole for that sentence. All other cases are governed by specific statutory provisions.

5.  The applicant must fully cooperate with this department's investigation of his criminal history, his personal and social history, and the circumstances of the crime in question.

6.  When the application and necessary investigations are complete, the case will be docketed for consideration. The general rules for docketing and notification apply.

7.  If the Board grants a pardon, the Board will also decide whether to restore any or all civil and political rights lost as a result of the conviction. Civil and political rights are not restored unless the Board affirmatively votes to do so. As required by law, the members of the Board favoring the grant of relief shall enter in the file a detailed written statement of the reasons supporting that decision.

8.  If the Board declines to grant a pardon, or to restore any or all civil and political rights, that applicant may not apply again until at least two years have passed from the date of the Board action, unless otherwise expressly ordered by the Board.

9.  Any application for pardon prior to completion of sentence or three years of successful parole shall adhere to requirements of §15-22-36, to include written approval of the judge or district attorney

10. If the Board's designee finds that the statutory jurisdictional requirements are met, the case will be docketed for the Board's

consideration. The general rules of procedure applicable to other cases apply to the meeting or meetings at which the Board considers such case. If the Board orders that the pardon be granted, the order will be made a matter of public record.

11. The pardon procedures will apply to a request for a Certificate of Eligibility to Register to Vote, except where superceded by Ala. Code 15-22-36.1. This code section specifies certain procedures and requirements that must be met, as a matter of law.



**Article Nine**

**Remissions of Fines**

1. The same general procedures followed for consideration of pardons or paroles shall apply to remissions of fines, except as specified herein.

2. This Board will exercise this power only in cases to which the State of Alabama is a party.

3. An individual seeking remission of a fine shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the fine imposed against him.

4. The applicant shall cooperate in this department's investigation of the matter, and shall provide information about his personal, social and criminal history, the details of the offense, and the applicant's economic status.

5. The investigating officer shall contact the sentencing judge and the district attorney or their successors and solicit their input.

6. When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the fine (and, if so, what

portion), or to remit the entire fine. Unless a majority of the Board agrees to a specific grant of relief, all relief is denied. No offender shall be permitted to file a subsequent petition for remission in the same case after the Board decides his case.

7.  If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the fine is remitted.

8.  The Executive Director, or in his absence, his designee or a Board member shall issue a certificate, evidencing the Board's order to remit some or all of the fine. The certificate shall plainly express the terms of the Board's order. The certificate shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued.



## Article Ten

**Remissions of Forfeitures**

1.  The same general procedures followed for consideration of pardons or paroles shall apply to remissions of forfeitures, except as specified herein.

2.  This Board will exercise this power only in cases to which the State of Alabama is a party.

3.  An individual seeking a remission of forfeiture shall file an application on a form approved by this department. The application shall contain a short and plain statement of the reasons that the applicant believes it would be just for this Board to remit some or all of the forfeiture imposed against him.

4.  No application will be considered unless the principal has been convicted of the underlying offense. No application will be considered unless the principal and the sureties join in the application.

5.  The applicants shall cooperate in this department's investigation of the matter. In addition to the usual information about the applicant's personal, social and criminal history and the details of the offense, the investigation shall provide a clear picture of the applicants' economic status.

6.  The investigating officer shall contact the sentencing judge and the district attorney or their successors and solicit their input.

7.  When the Board deliberates, they shall consider whether to deny remission entirely, to remit a portion of the forfeiture (and, if so, what portion), or to remit the entire forfeiture. Unless a majority of the Board agrees to a specific order of relief, all relief is denied. No applicant may submit a subsequent petition for relief in the same case after the Board makes its decision.

8.  If the Board agrees to grant a remission, each member of the Board favoring the grant shall enter into the file a detailed statement of his reasons for favoring such remission. The remission order shall specify what portion of the forfeiture is remitted.

9.  The Executive Director or in his absence his designee or a Board member shall issue certificates, evidencing the Board's order to remit some or all of the forfeiture. The certificates shall plainly express the terms of the Board's order. The certificates shall also state that the order will not be valid unless the beneficiary pays the court costs in the referenced case within sixty-three days of the date the certificate is issued. The principal and each surety named in the forfeiture action shall each receive an original certificate, bearing the signature of the Executive Director or other designated officer and the seal of the Board of Pardons and Paroles.



**Article Eleven**

**Parole Violations**

1. A parole officer who has received information indicating that a parolee under his supervision may have violated a condition of parole should investigate the alleged violation in a timely manner. The thoroughness of the investigation shall be proportionate to the seriousness of the alleged violation.

2. After investigating the alleged violation and determining that the allegations are well founded, the parole officer shall submit a written report to Field Services Division. The parole officer should make a preliminary determination of the seriousness of the charges. If the parole officer believes no further action is required, he may report the investigation in the "Notice of Violation" format. If the parole officer believes further action is appropriate, he should report the investigation in the "Report of Parole Violation" format.

3. If the parole officer has reason to believe that the public would be endangered or that the parolee would abscond supervision if the parolee is left at liberty pending further action, he may issue an "authorization to arrest" writ and cause the parolee to be held in the local county jail.

4. The Executive Director or other designated officer will review notices and reports of parole violation when received by Field Services. The reviewing officer will determine whether there is reasonable cause to believe the parolee has violated the terms of his parole in an important respect. The reviewing officer shall base his decision on facts appearing in the record. If he relies on any facts outside of the delinquency report, he shall document those facts in the record. The reviewing officer shall decide whether the alleged violation is sufficiently serious to warrant referral to the Board for declaration of delinquency and/or to the Parole Court for hearing. The reviewing officer shall also determine whether the alleged violation is sufficiently serious to authorize the Department of Corrections to issue a fugitive warrant. Notice bearing the signature of the Executive Director or his designee shall be forwarded to the Department of Corrections authorizing the issuing of a fugitive warrant.

5. The charges may be referred to the Parole Court for hearing prior to the decision to refer to the Board for declaration of delinquency

and/or prior to the decision to authorize the Department of Corrections to issue a fugitive warrant. In such event, the Executive Director or other designated officer shall direct the investigating parole officer to direct the parolee to appear before the Parole Court for an evidentiary hearing.

6.  The decision whether to incarcerate the parolee pending Parole Court may be reconsidered at any point in the process.

7.  The Board retains jurisdiction to reconsider whether to enter a declaration of delinquency at any point in the process.

8.  The officer submitting the delinquency report shall coordinate with the regional Hearing Officer to schedule Parole Court. The Hearing Officer, in cooperation with Field Services, may assign a case to a designated parole officer for hearing.

9.  After the case is docketed for Parole Court, Field Services shall also docket the case for the Board to decide whether the parolee should be declared delinquent. Declarations of delinquency should be docketed on a weekly basis, unless the Board has no regularly scheduled meetings during a particular week. Field Services will notify the Department of Corrections of the date the Board declares a parolee delinquent.



**Article Twelve**

**Parole Court Hearings**

1.  The Board has, pursuant to law, appointed or designated officers to hold parole court and to determine the facts pertaining to alleged parole violations. These hearing officers are authorized to determine whether the parolee is guilty, as well as to determine whether there is probable cause to detain the parolee pending final resolution of the charges.

2.  The Board prefers to have a single fact-finding hearing, at which the Hearing Officer will decide whether parole violation charges are proven or not, evidence in mitigation will be heard, and the Hearing Officer will determine whether it is appropriate to continue detaining the parolee pending the Board's decision on revocation. However, the Hearing Officer may determine whether probable cause exists to detain the parolee, and continue the hearing until a later date for determination of guilt. The evidence taken at the preliminary hearing, if admissible, shall be considered in the determination of guilt. If there is no reasonable cause to detain the parolee pending further hearing, the Board shall be promptly so notified in writing.

3.  The investigating parole officer shall provide the parolee with a copy of the Report or Notice containing the charges prior to or contemporaneously with notice of the date, time and place of Parole Court, whether the parolee is incarcerated or not. If the parolee is not incarcerated, the parole officer may deliver these documents by U.S. mail, addressed to the parolee's address of record (as reflected in the parole officer's supervision notes). The officer serving these papers shall return a written certificate of service to the Parole Court.

4.  The Hearing Officer may accept a knowing, intelligent guilty plea to parole violation charges. Before doing so, he shall ensure that the parolee is aware of the specific charges, and understands the rights he waives by entering such plea. The Hearing Officer shall not accept a guilty plea unless the parolee does, in fact, acknowledge that he violated the conditions of parole. The Hearing Officer shall document the facts admitted by the parolee.

5.  The parolee is responsible for notifying his counsel and his witnesses of the date, time and place of the Parole Court hearing. He is also responsible for forwarding a copy of the charges to his counsel. The parole officer is not forbidden from contacting counsel or witnesses as a courtesy to the parolee, nor is the parole officer prohibited from providing copies of the charges or other documents pertaining to Parole Court to the parolee's counsel. Papers will be served on the parolee, either by personal service or by mail to ensure that he has received reasonable notice of the charges and the proceedings.

6. The Parole Court hearing officer may exercise reasonable discretion if any party or witness requests a continuance of a hearing. The entire hearing may be rescheduled, or the Parole Court may hear such evidence as is available and continue the hearing for further evidence, as may best serve the ends of justice. If the parolee requests a continuance and the continuance is denied, the Parole Court should enter the request and stated grounds in the record. The Parole Court should also state the reasons for denying the request.

7. The Hearing Officer shall preside over the hearing and govern its conduct. The Hearing Officer shall ensure that the record accurately reflects all necessary notices and that the record accurately reflects compliance with all procedural safeguards. A Probation and Parole Officer shall present the case of the alleged parole violations. The parolee shall be allowed to cross-examine witnesses accusing him, unless the Hearing Officer specifically finds good cause to believe the witness would be endangered by confrontation. If confrontation is disallowed, the Hearing Officer will make reasonable efforts to balance the parolee's need for cross-examination. The parolee shall be allowed to present evidence in his own defense, either personally or through counsel. The parolee's witnesses shall be subject to cross-examination. The Hearing Officer may question any witness, and should permit each side to ask follow-up questions.

8. The investigating parole officer shall present the evidence supporting the parole violation charges. The parole officer shall question any witnesses other than himself. The parole officer may testify in narrative format if he is a competent witness as to any issue. The parole officer may also question witnesses testifying in the parolee's defense. All witnesses against the parolee are subject to cross-examination. The Parole Court may exercise reasonable discretion in deciding whether to question witnesses, in order to arrive at the truth. The Parole Court may exercise reasonable discretion to disallow any question that seeks to elicit information not pertinent to the issues, or which tends to be abusive. The Parole Court should include in the record any questions disallowed and the reasons for the ruling.

9. For purposes of determining whether probable cause exists, the Hearing Officer may consider any relevant information, including hearsay. For purposes of determining guilt, the Hearing Officer shall

consider any evidence that would be admissible under either the Alabama Rules of Evidence or the Federal Rules of Evidence. The Hearing Officer may also consider any other evidence that appears to be reliable and probative. Commonly accepted treatises on evidence, including Gamble's, McElroy's, Wigmore's and McCormick's, should be considered persuasive authority for admission of evidence. If the Hearing Officer relies on evidence that does not appear to be admissible under the rules of evidence, the Hearing Officer should explain the reasons that he considers it to be reliable.

10. The Parole Court shall allow the parolee great leeway in presenting information that may be considered as mitigating circumstances. For purposes of mitigation, the Hearing Officer shall consider any information offered by the parolee. Any objections shall go to the weight of the evidence, not to its admissibility.

11. The Hearing Officer shall take judicial notice of conditions of parole imposed by this Board or by another State pursuant to the Interstate Compact. The parolee may introduce evidence that he was not aware of a condition. The Hearing Officer shall take judicial notice of the laws of the State of Alabama. In the absence of proof to the contrary, the Hearing Officer may rely on a copy of a municipal ordinance or of a statute of another jurisdiction as evidence of the law in that jurisdiction. The Hearing Officer may presume, in the absence of proof to the contrary, that each municipality in Alabama has adopted an ordinance incorporating the penal provisions of the Alabama Code into its municipal law. The Hearing Officer may accept a certified copy of a judgment of conviction as conclusive evidence that the parolee is guilty of violating a law, provided that, in the case of a conviction in municipal court or district court, the time for appealing to circuit court for trial de novo had run before the certification was issued.

12. The Hearing Officer may determine that a parolee is guilty of violating a law, but that the offense was less than that named in the delinquency report. The Hearing Officer may also determine that a parolee is guilty of violating a law other than that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue. The Hearing Officer may determine that a parolee is guilty of violating a condition of parole other than

that named in the delinquency report, if the report provided fair notice to the parolee of the wrongful behavior at issue.



**Article Thirteen**

**Parole Court Reports**

1.  The Hearing Officer shall file a detailed written report, detailing the evidence considered and deciding the facts. The report shall also state what evidence was relied upon in the findings of facts. The report shall clearly state whether each charge was proven or not. If the parolee is found guilty of violating the terms of his parole, the Hearing Officer shall also include in his report a detailed assessment of the mitigating circumstances. The Hearing Officer shall then recommend whether parole should be revoked or reinstated. The parolee shall be provided a copy of the Hearing Officer's Findings of Fact and Recommendation. The Hearing Officer's report shall detail the reasons supporting his recommendation. This report shall also apprise the parolee of his right to promptly submit written comments or objections for the Board's consideration. The Parole Court hearing officer is responsible for ensuring that a copy of the report is served on the parolee, and shall return a certificate of service to the Parole Court Docket Clerk verifying the date of service.

2.  The written report is the official record of the Parole Court Hearing.

3.  If the Parole Court determines that no charges have been proven, but that there is probable cause to believe any charge may be proven, the case may be continued pending further hearing. The Parole Court should also determine whether it is appropriate to detain the parolee pending such further hearing. These findings are to be reduced to writing, and a copy is to be served on the parolee.

4.  Except as provided in the preceding section, if no charges are proven to the reasonable satisfaction of the Hearing Officer, the Hearing Officer shall forthwith prepare a draft order, for the Board's signature, directing withdrawal of any warrant issued by authority of this

department. That draft order and the Hearing Officer's report shall be filed with the Board, and copies forwarded to the Executive Director (or designated officer) and members of the Board, by the most expeditious means. The Clerk of the Hearing Office shall prepare a monthly docket of acquittals for the Board's review. A copy of that docket shall be forwarded to the Executive Director or designated officer. A parolee who has been accused of a specific parole violation, after the charge is found "not proven," shall not have his parole revoked for that violation unless the charge is subsequently proven in a new evidentiary hearing or unless he is convicted of an underlying criminal charge. The Board's review of acquittals is for the purpose of ensuring that Hearing Officers are properly evaluating the evidence presented to them. The Board will also review the files pertaining to proven charges as they determine whether parole should be revoked.

5.  If the parolee is found guilty of any charge, the Hearing Officer's report shall be filed with the Clerk of the Hearing Office. The Clerk shall prepare two separate dockets. The cases in which Hearing Officers recommend reinstatement shall be presented to the Board separately from those cases in which the Hearing Officers recommend revocation. The cases in which Hearing Officers recommend revocation shall be presented to the Board no earlier than three weeks after service of the Parole Court report, so as to allow the parolee an opportunity to submit any written comments or objections to the Board.

6.  If the parolee believes the Parole Court's written report misstates the facts adduced at the hearing, he or his counsel shall submit to the Board a written objection to that report within fourteen days of receipt of the report. Any objections not raised are deemed waived. The parolee should state what facts he contends were omitted or misstated in the report, or in what other way the proceedings appeared to be unfair. The Board's counsel may remand any case for the parole court to address issues presented by such objections.

7.  If the parolee has not been incarcerated pending the Parole Court hearing, the Parole Court shall determine whether he should be incarcerated pending the Board's final decision.

8.  If the Parole Court recommends reinstatement, the written report should be submitted to the Board at the earliest practicable time. When reinstatement is appropriate, the Board believes that society benefits when this decision is made and carried out as soon as possible.

9.  If the Parole Court recommends revocation, the written report should be submitted to the Board within a reasonable time after the time has run for the parolee to file his objections to the report.



**Article Fourteen**

**Board Action Subsequent to Parole Court**

1.  The records of Parole Court proceedings shall be maintained in the department's file pertaining to the affected parolee.

2.  The Board shall take up its parole court dockets during regularly scheduled open public meetings. After consideration of the parole court report and any written objections submitted by the parolee, the Board shall decide whether to revoke parole.

3.  Any Board order, revoking parole shall state the reasons for revocation and shall refer to the evidence relied on in determining that revocation is appropriate.

4.  If the Board is inclined to reinstate to parole supervision any parolee found guilty of parole violation, the case may be continued to a later meeting, pending verification of his home and job plan.

5.  If the Board is of the opinion that the interests of justice will be served by remanding a case for further hearing, either to ensure that the parolee has had due process or to ensure that society is properly served by a more thorough fact-finding process, such proceedings shall be conducted as promptly as may be practicable and just.

6.   The Clerk shall notify the Department of Corrections of any order revoking parole or returning the parolee to parole supervision.

7.   The Clerk shall ensure that the Executive Director receives copies of any dockets, orders, or records he may need.

8.   The Board shall consider the record of proceedings and vote to revoke or reinstate parole, as they deem proper. The Board will only consider revocation on charges proven to the reasonable satisfaction of the Parole Court. However, the Board may remand any charge for further hearing.

9.   The Board retains jurisdiction to reconsider any revocation that they may later determine to have been improvidently ordered.



**Article Fifteen**

**Records**

1.   **The records of the Board pertaining to each prisoner are confidential. Prior to enactment of the statutory privilege in 1951, the Legislature regarded these files as privileged by common law. The Legislative history of Act 599 of 1951 indicates that the Legislature was concerned about the risks of abuse if individuals, including public officials, had access to the sensitive information in these files. Act 83-750 of 1983 increased the likelihood that the Board would receive useful, but sensitive, information from crime victims and public officials. The context of this act indicates that the Legislature intended for communications from these individuals to be kept confidential.**

2.   **The records maintained in the Board's Minute Books are public records. As provided herein, copies of the Board's dockets, including a record of the action taken, will be filed in the Board's Minutes for public inspection.**

**3.  Board Orders granting pardons, with or without restoration of civil and political rights, paroles, or remissions of fines or forfeitures are public records. The statement of reasons filed by each member voting in favor of such grant are public records.**



**Article Sixteen**

**Flexibility in Responding to Crises**

1.  When the Board determines that circumstances exist manifesting a critical need for the Board to expedite parole consideration, the Board may direct its staff to implement these procedures, consistent with available resources.

2.  The staff will survey the prison population, with a view toward assisting the Board in exercising its discretion in setting priorities for special dockets.

3.  After reviewing the data assembled by the staff, and considering advice offered by our staff, the Board may set criteria for Special Dockets. The Board may also set criteria for a Secondary Docket. These criteria will be adopted by special order of the Board, entered into the minutes and published on the Board's web site.

4.  Clerical staff will be assigned to initially screen files that appear to meet these criteria. These cases will be divided into three categories: those that clearly are excluded, those that may be excluded from the Special Docket but appear to be candidates for the Secondary Docket, and those that are clearly not excluded from the Special Docket. Cases that are clearly excluded from the Special Docket will remain scheduled for parole consideration on the tentative dockets previously established according to these procedures, except as otherwise provided herein. Cases that are not excluded from the Special Docket will be forwarded to a designated officer for further review. Cases that

may be considered for a Secondary Special Docket will be forwarded to the Review Committee for further review.

5. Special Docket cases are those in which the current offense does not require victim notification under §15-22-36, Ala. Code. The cases will be initially screened by knowledgeable clerical employees.

6. Secondary Dockets may be established for closer review of prisoners who have been convicted of violent crimes, with a view toward identifying individual prisoners who appear less likely to commit violent crimes in the future. Because of the potentially higher stakes, the staff must exercise proportionately greater discretion in reviewing these files to identify candidates for earlier consideration. More experienced officers will review these cases.

7. The designated staff officers reviewing Special Docket cases will consider the nature and severity of the current offense, the seriousness of prior criminal history, and the length of sentence and time served; and may consider events occurring since incarceration to determine the rescheduled consideration dates. These designees are authorized to order rescheduling of consideration, within the parameters established by the Board's emergency order.

8. The staff officers and clerical employees involved in Special Docket reviews will meet frequently and consult with other staff as appropriate, and will ensure that the Executive Director and the Board are kept apprised of their progress and of any potential obstacles.

9. The Review Committee members reviewing Secondary Docket cases will consider the nature and severity of the current offense, the seriousness of prior criminal history, the length of sentence and time served, and community attitude toward the offender; and may consider events occurring since incarceration to determine the rescheduled consideration dates. The Committee is authorized to order rescheduling of consideration, within the parameters established by the Board's emergency order.

10. While any Secondary Docket order is in effect, the Review Committee will meet frequently and consult with other staff as appropriate, and will ensure that the Executive Director and the Board are kept apprised of their progress and of any potential obstacles.

11. Backlogged victim notification cases may be screened by a senior officer or senior VSO Officer, who may direct the Victim Service unit to expedite notice in cases where the information appears to be current, even if there are other cases more overdue. This officer may also screen backlogged cases to determine whether any other backlogged case should be expedited, and if so, he may direct that such case be processed.



**Article Seventeen**

**Organization of Panels**

1.  The provisions of this article apply during the time that the Legislature has provided for temporary expansion of the Board by appointment of special members.

2.  For purposes of this article, the term "all members" refers to both special members and regular members; the term "regular members" refers to those members appointed to the six-year terms of the permanent Board; and the term "special members" refers to those members appointed for the limited purpose of hearing and deciding cases.

3.  The Chair will designate the membership of panels, so that all members of the Board will know in advance which dockets they are assigned to hear and which dockets they are assigned to relieve, and will be able to prepare for those dockets by studying the files.

4.  Two panels, each of three members, will be established for each day that cases are docketed for consideration. Each panel will be assigned to hear the cases on specified dockets at a specific site. The remaining member of the Board will be the primary alternate for that day. In the event that a member of either panel must absent himself for all or part of the meeting, this primary alternate will relieve that member as needed. These assignments will be stated in the Chair's notice to the

Board of the meetings of each panel, which shall also be published in the Board's minutes.

5. The Chair may also designate a secondary alternate from each panel to relieve members of the other panel, in the event of the unavoidable absence of two members of the panel for all or part of the meeting. This alternate may relieve a member of the other panel after ensuring that he meets his obligations to his own panel.

6. Two members of a panel constitute a quorum of the panel, and may act in cases that can lawfully be decided by a majority vote.

7. Notwithstanding the general provisions of these operating procedures, during the terms of the special members, three members will hear and decide each case that could not be granted without unanimous agreement.

8. In the event that a panel of the Board finds it necessary to continue a case, as provided in the general provisions of these operating procedures, the case will be considered by the same panel originally assigned to hear the case.

9. Individual members of the Board should not seek to alter the docketed panel assignments merely for personal convenience or for other personal motive. The Board recognizes that its best interest as an institution, as well as the public's best interest, is better served if substitution of alternates is a rare event.

RULES, REGULATIONS AND PROCEDURES

OF

THE BOARD OF PARDONS AND PAROLES

CHAPTER 640-X-1

ORGANIZATION

TABLE OF CONTENTS

640-X-1-.01 – Statutory Authority

640-X-1-.02 – Departmental Administration

640-X-1-.03 – Executive Seal

Revised 2/10/86

RULES, REGULATIONS AND PROCEDURES

OF

THE BOARD OF PARDONS AND PAROLES

CHAPTER 640-X-2

BOARD ACTION IN GRANTING, DENIAL AND SUPERVISION
OF PAROLES, PARDONS, RESTORATION OF CIVIL AND
POLITICAL RIGHTS, REMISSION OF FINES AND FORFEI-
TURES, AND INVESTIGATIONS AND SUPERVISION OF
PROBATIONERS

TABLE OF CONTENTS

640-X-2.01 - Interstate Compact Services

640-X-2.02 - Scheduling Cases for Parole Consideration

640-X-2.03 - Pre-Parole Inmate Interview

640-X-2.04 - Public Notice of Pending Parole Consideration

640-X-2.05 - Preliminary Review of Docket Cases

640-X-2.06 - Notice of Pending Parole Consideration

640-X-2.07 - Protests

640-X-2.08 - Public Meeting

640-X-2.09 - Board Action to Grant or Deny Parole

640-X-2.10 - Statement of Conditions Under Which Parole is Granted

640-X-2.11 - Conditional Transfer

640-X-2.12 - Parole Violations

640-X-2.13 - Rules for Eligibility for Pardon and Restoration of
              Civil and Political Rights

640-X-2.14 - Eligibility for Remission of Fines and Forfeitures

640-X-2.15 - Petition for Adoption of Rules

640-X-1-.01 – <u>Statutory Authority</u>.  The State Board of Pardons and Pa-/ roles, hereafter referred to as the Board, exists and functions by authority of Title 15, Chapter 22, Code of Alabama 1975 as amended.  The Board is composed of three members, who are appointed by the governor for terms of six years each.  The public may obtain information and make submissions or requests at the Central Office of the Board at 750 Washington Avenue, Suite 312, Montgomery, Alabama 36130.

640-X-1-.02 – <u>Departmental Administration</u>.  Authority and responsibility for organization and administration of the Department, in accordance with the law and duly established policies of the Board, is vested in the Executive Director.

640-X-1-.03 – <u>Executive Seal</u>.  All official orders of the Board granting paroles, pardons, and/or restorations of civil and political rights, re- missions of fines and forfeitures, and conditional transfers of prison- ers shall be certified by the Executive Director and sealed with a seal heretofore adopted and published.  In the absence of the Executive Director, such certification shall be by his designee or by a member of the Board.

640-X-2-.01 - <u>Interstate Compact Services</u>.

(1) Persons on parole or probation may be transferred under supervision to another state provided they are a resident of that state and have a home and employment approved by the Compact Administrator in the receiving state. If they are not residents of the other state, they may be transferred if they have a home and employment plan approved by the Compact Administrator and the other state consents to the transfer.

(2) The Board provides supervision to compact cases from other states under the provisions listed above.

(3) Application for Compact Services is made to the probation/parole authority where the individual was sentenced. Application forms for requesting compact services are available at the office of the Board.

640-X-2-.02 - <u>Scheduling Cases for Parole Consideration</u>.

(1) As soon as practical after a prisoner is sentenced to prison, the Board causes a file to be prepared on the case. When complete, the Board members or their designee study the file and set a parole calendar date. This parole calendar date is for initial parole consideration and is not a presumptive parole date.

(2) On cases involving crimes committed before May 19, 1980, the parole calendar date is set at one-third of the prison term or ten years,[1]

_____

[1]Alabama statutes provide that earned incentive good time apply to time calculations for determining the time at which majority vote parole may issue. The Board also applies this credit in establishing a parole calendar date.

whichever is less.  In cases involving multiple convictions, the parole calendar date is set at one-third or ten years of the total term, whichever is less, or at one-third or ten years, whichever is less, of an individual sentence or combination of sentences whichever results in the latest parole calendar date.  This calculation also determines the time at which majority vote parole may issue.

(3)  On cases involving crimes committed on or after May 19, 1980, the Board uses guidelines in establishing the initial parole calendar date.  The guidelines take into account past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender.  Unless the Board determines that the guidelines should not apply, calendar dates will be set as follows:

(a)  If sentence is of ten years or more – and the offense is of a particularly heinous nature or the present offense is of a violent nature and his previous behavior indicates a high risk potential for future violence – case shall be set on the maximum scale.

(b)  Inmates serving their third or more separate  prison term and members of organized crime or large scale drug transporting and sales operations are designated career criminals.  The parole calendar date in career criminal cases shall be set on a case by case basis at a date between one-third and one-half of the total term as determined by the Board upon the recommendation of a senior staff officer in the Central Office.

(c)  Other cases will be set in accordance with the guideline
rating in Section III of the parole review worksheet and the scale
for parole calendar dates.  A copy of each document is included in
Chapter 640-X-3 of this Administrative Code.

(4)  In multiple cases where more than one parole review work-
sheet is completed, the calendar date which occurs later in time
is applied.

(5)  A parole review worksheet shall be completed in each case
by the field parole officer immediately after he completes the
investigation of a case.  This worksheet is reviewed by a senior
staff officer in the Central Office for consistency and ap-
propriateness and for a final evaluation.

(6)  If an inmate has multiple convictions and one or more
of the offenses occurred before May 19, 1980, and one or more
of the offenses occurred on or after May 19, 1980, his parole
calendar date will be determined by the guidelines.  If he
receives incentive good time credit, such credit will be applied
if it results in an earlier parole calendar date.

(7)  Any credit on a sentence shall be considered in
determining a parole calendar date if provided by law.

(8)  A parole calendar date may be changed by order of the Board.
No calendar date will be scheduled prior to service of one-third
of the term or ten years for total terms of ten years or more
except by unanimous action of the Board.  When an inmate is denied

parole, the Board will determine when his case is to be reset but in no event shall it be reset for more than three years from the date of the denial.

(9)  Exceptions

(a)  No parole calendar date is established on cases barred from parole.

(b)  Calendar dates on cases required by statute to serve a mandatory minimum term are set consistent with the provisions of the statute.

(c)  Persons serving split sentences pursuant to Section 15-18-8, Code of Alabama 1975 as amended and also serving another term will not be set for parole consideration prior to actual service of a period of time equal to the term ordered served in the split sentence case.

(d)  A person sentenced pursuant to Section 15-18-8, Code of Alabama 1975 as amended and whose probation is subsequently revoked will be set for initial parole consideration on the basis of the remainder of the sentence to be served, excluding the original incarceration term of the split sentence.

(e)  Prisoners placed by the court in a local work release program will not be scheduled for parole consideration in order that the sentencing court may determine early release dates in such work release programs.

(f) When an inmate has already served sufficient time to be eligible for parole consideration at the time the Board receives sentencing data from the Board of Corrections, the case shall be placed on the first docket occurring after forty-five (45) days from the date sentencing data is received by the Board.

640-X-2-.03 - Pre-Parole Inmate Interview. Pre-parole personal interviews with prisoners being considered for parole will be conducted by an agent of the Board who will then submit a written report to the Board of his findings and evaluations.

640-X-2-.04 - Public Notice of Pending Parole Consideration. News media shall have access to weekly information regarding pending parole consideration thirty (30) days in advance of the Board's pending dockets. The information shall include the prisoner's name, prison number, sentence, and offense for which convicted as well as other pertinent information.

640-X-2-.05 - Preliminary Review of Docket Cases. Members of the Board will conduct individual study and review of each case prior to its parole consideration docket date. Each member will prepare a file review worksheet when he reviews a file for this purpose.

640-X-2-.06 - <u>Notices of Pending Parole Consideration</u>.
Notices of pending parole consideration will be sent as
required by Act No. 83-750, Regular Session, 1983, of the
Alabama Legislature.


640-X-2-.07 - <u>Protests</u>.  Any person wishing to protest
parole may do so in person or in writing, stating the
reasons therefor, and may submit supporting data.  Such
protest may be made at any time after sentence to im-
prisonment.  It will be placed in the files of the Board
for consideration when the case is before the Board for
action.


640-X-2-.08 - <u>Public Meeting</u>.  The Board will convene each
Monday for Public Meeting for cases theretofore docketed and
set for consideration and other cases where additional in-
formation is to be presented.  When Monday falls on a State
holiday, the next working day will be Public Meeting.  The
Board will convene Public Meeting at 9:00 a.m. for the purpose
of considering and acting on its weekly dockets and for interviews
with the general public.  Persons wishing to see the Board about
a case may do so without appointment on that day at Public
Meeting.  Appearances at Public Meeting are not necessary to
ensure a careful and complete review of any case before the
Board.  Appointments with attorneys will be scheduled on
Tuesday of each week.

640-X-2-.09 - <u>Board Action to Grant or Deny Parole</u>.


(1)  The Board's formal action to grant or deny parole will be taken in the Public Meeting convened to consider the docket on which that case appears.


(2)  If all statutory provisions have been met, parole will issue within two weeks.


(3)  If majority vote parole may be granted within sixty (60) days and the Board's vote is split two to one in favor of parole, such vote shall constitute an order to parole at such time as parole may issue.


(4)  If a unanimous vote is required to parole and only two Board members are present, the case will be continued unless both members present vote to deny parole.


(5)  If majority vote parole may not issue within sixty (60) days and the Board's vote is split two to one in favor of parole, such action shall constitute a denial of parole and a reset of the case to the first Public Meeting following the date on which majority vote parole may issue.

(6) When the Board's vote is to deny parole, a notice of this action will be mailed to the inmate within three working days.

(7) <u>Exceptions</u>

(a) The Board's Executive Director is authorized to postpone execution of any order to parole for a period up to ten (10) days if new relevant information is received which indicates that such release is incompatible with the welfare of society. Such information may include, but is not limited to, prison disciplinaries, changes in time computation, and protests. When the execution of an order to parole is postponed, the Executive Director shall present the case to the Board for reconsideration within three working days from the date of such postponement.

(b) If no parole plan has been submitted and approved by the Board or its designee at the time a parole is ordered, parole will not issue until an approved plan is submitted. If such a plan is not submitted within sixty (60) days from the date of the order to parole, the case will be returned to the Board for reconsideration on the first Public Meeting following.

640-X-2-.10 – <u>Statement of Conditions Under Which Parole is Granted</u>. It is the order of the Board that the following shall be the Conditions under which parole is granted. The Board may specify such other Conditions as it deems necessary. This Certificate of Parole shall not become operative until the following Conditions are agreed to by the prisoner, and violation of any of the Conditions may result in revocation of parole.

(a) I shall report immediately to the Parole Officer under whose supervision I am paroled by personal visit.

(b) I shall not change my residence or employment or leave the State without first getting the consent of my Parole Officer.

(c) I shall, between the first and third days of each month, until my release from parole, make a full and truthful report to my Parole Officer in writing.

(d) I shall not use narcotic drugs, or frequent places where intoxicants or drugs are sold, dispensed, or used unlawfully.

(e) I shall avoid injurious habits and shall not associate with persons of bad reputation or harmful character.

(f) I shall in all respects conduct myself honorably, work diligently at a lawful occupation, and support my dependents to the best of my ability.

(g)  I shall not violate any law.

(h)  I hereby waive all extradition rights and process and agree to return when the State Board of Pardons and Paroles directs at any time before my release from parole.

(i)  I shall promptly and truthfully answer all inquiries directed to me by the State Board of Pardons and Paroles and my Parole Officer and allow that Officer to visit me at my home, employment site, or elsewhere, and carry out all instructions my Parole Officer gives.

(j)  If at any time it becomes necessary to communicate with my Parole Officer for any purpose and that Officer is not available, I shall contact the State Board of Pardons and Paroles.

(k)  I shall not marry without first seeking the advice and counsel of my Parole Officer.

(l)  Immediately upon release from the service of sentence in _____ and if prior to _____, I will report directly to the State Board of Pardons and Paroles, 750 Washington Avenue, Montgomery, Al 36130, either by telephone, correspondence or in person.

(m)  I shall pay supervision fee monthly to the State Board of Pardons and Paroles as required by law.

(n)  I shall not own, possess or have under my control a firearm
or ammunition of any kind, nor any other deadly weapon or dangerous
instrument as defined by Alabama law.

(o)  I shall participate in alcoholic, drug treatment, or other
therapeutic programs when instructed to do so by my Parole Officer.

(p)  I shall pay $_____ Restitution as
ordered by the sentencing court or the State Board of Pardons and
Paroles.

640-X-2-.11 - Conditional Transfer.

(1)  The Board may conditionally transfer a prisoner to the author-
ities of the Federal Government or any other jurisdiction entitled to
custody to answer pending charges or begin serving a sentence in re-
sponse to a properly filed detainer from the other jurisdiction.

(2)  Conditional transfer cases will be placed (set) on an approp-
riate open public meeting docket by affirmative action of two Board
members.

(3)  Thirty (30) days notice of consideration for conditional
transfer will be given to the Judge, District Attorney, and Sheriff
of the county of conviction before Board action on such cases.

(4)  Before a conditional transfer order is executed, confirmation

must be received that the jurisdiction filing the detainer will assume
custody and will agree to return the inmate, when the detainer is
satisfied, to the Alabama prison system at the Board's option.

(5)  The case will be placed on the appropriate docket for the Board
action in an open public meeting of the Board.

(6)  A Certificate of Conditional Transfer will be issued and routed
to appropriate authorities upon affirmative action by two members of
the Board in said open public meeting.

(7)  When evidence presented reflects a critical need to expedite
transfer of a prisoner or prisoners, the rules for conditional trans-
fer may be suspended by unanimous affirmative action of the Board.

640-X-2-.12 - Parole Violations.

(1)  On receipt of a Parole Violation Report and/or other official
notice of parole violation, the Executive Director should report such
facts to the Board of Corrections and instruct them to issue a warrant
for the retaking of such prisoner.  Such cases will be presented to the
Board at its next scheduled meeting and where appropriate the Board will
declare the prisoner to be delinquent.

(2)  The parolee is given an opportunity for a preliminary, on-site
revocation hearing for the purpose of establishing probable cause.

(3)  If preliminary hearing is waived or probable cause is found, he is granted a hearing by one member of the Board.  This hearing is scheduled as soon as practicable at Kilby Correctional Center or other places of confinement.  A report of the hearing is then considered by the Board in an open public meeting and the Board acts to either reinstate or to revoke parole.  In the event parole is revoked, the Board determines at that time if and when the inmate shall have further parole consideration.

(4)  The Board, in addition to or in lieu of other actions, may forfeit good time consequent to a parole violation on cases involving an offense committed prior to May 19, 1980.

640-X-2.13 - <u>Rules for Eligibility for Pardon and Restoration of Civil and Political Rights.</u>

(1)  Restoration of Civil and Political Rights are considered by the Board upon application filed with the Board in duplicate.  Forms to be used for this purpose may be obtained from the offices of the Board.  When an application is made, if the applicant is found to be eligible under the law and rules of the Board, an investigation of the case is ordered.

(2)  No applicant for Pardon and/or Restoration of Civil and Political Rights shall be considered by the Board until after the expiration of five years from date of release on parole except where the maximum sentence has expired.  Persons who have completed parole or probation or who have served a penitentiary or jail sentence for an offense which takes away Civil and Political Rights may be considered for pardon and/or restoration after two years from the termination of the sentence or from the termination of parole or probation.

(3)  Persons who are assessed a fine, but are given no hard labor or jail sentence for an offense which takes away their Civil and Political Rights may be considered for the pardon and/or restoration of said rights after two years from the date of the payment of the fine.

(4)  Applicants who are denied Pardon and/or Restoration of
Civil and Political Rights may reapply after one year from the
date of the denial.

(5)  Restrictions on eligibility for consideration for pardon
shall not apply in cases in which it is clearly established from
evidence which was not available at the trial that the defendant
was wrongfully convicted.

(6)  The Board by unanimous vote for good cause shown, may
waive the waiting period where the sentence has expired.

(7)  Applications for Pardon and/or Restoration of Civil and
Political Rights will be assembled for the Board's review when
all required file material is received in the Central Office.
The Board members will independently review such files and
indicate favorable or unfavorable impression on said initial
screening.  Such cases will then be scheduled for the proper
docket for Board action in an open public meeting after re-
quired notices of pending action are given.

(8)  The Board will not act to grant or deny disabilities
caused by the Federal Gun Control Act of 1968.  The remedy
for such disabilities is found in Title 18, Section 925,
United States Code.

640-X-2-.14 - Rules for Eligibility for Remission of Fines
                and Forfeitures.

(1)  The Remission of Fines and Forfeitures will be considered
by the Board only upon application filed with the Board in
duplicate.  Forms for Remission of Forfeiture may be obtained
from the Board of Pardons and Paroles upon request.

(2)  Application for Remission of Fine may be made to the
Board by letter listing the offense, the date of conviction,

the amount of the fine, the court in which the fine was
assessed, and the reasons for the application.  Upon receipt
of the application, an investigation is conducted.

(3)  Applications for Remission of Fine and Forfeiture will
be assembled for the Board's review when all required file
material is received in the Central Office.  The Board
members will independently review such files and indicate
favorable or unfavorable impression on said initial screen-
ing.

(4)  Such cases will then be scheduled for the proper
docket for Board action in an open public meeting after
required notices of pending action are given.

640-X-2-.15 - Petition for Adoption of Rules.  Any person
wishing to petition the Board for the adoption, amendment
or repeal of a rule, and the procedure for submission, con-
sideration and disposition thereof, should write the Board
setting out the details of the petition.  This petition
should be mailed to the Board at 750 Washington Avenue, Suite
312, Montgomery, AL 36130.

RULES, REGULATIONS AND PROCEDURES

OF

THE BOARD OF PARDONS AND PAROLES

CHAPTER 640-X-3

FORMS AND INSTRUCTIONS USED BY THE BOARD OF PARDONS
AND PAROLES IN GRANTING, DENIAL AND SUPERVISION OF
PAROLES, PARDONS, RESTORATION OF CIVIL AND POLITICAL
RIGHTS, REMISSION OF FINES AND FORFEITURES, AND IN-
VESTIGATIONS AND SUPERVISION OF PROBATIONERS WHICH
ARE APPLICABLE TO THE PUBLIC

TABLE OF CONTENTS

640-X-3-.01 - Application for Compact Services

640-X-3-.02 - Parole Review Worksheet

640-X-3-.03 - Scale for Parole Calendar Dates

640-X-3-.04 - Interview/File Review Worksheet

640-X-3-.05 - Victim Request or Waiver of Notice

640-X-3-.06 - Action by Board

640-X-3-.07 - Certificate of Parole

640-X-3-.08 - Report of Parole Violation

640-X-3-.09 - On-Site Hearing/Forfeiture of Good Time

640-X-3-.10 - Application for Pardon and/or Restoration of Civil and
              Political Rights

640-X-3-.11 - Application for Remission of Fines and Forfeitures

640-X-3-.01 – <u>Application for Compact Services</u>.  This form is to be used by a parolee or a probationer who wants to live and work in another state and be supervised by that state under the Interstate Compact, Title 15, Chapter 22, Section 1, Code of Alabama 1975 as amended.  A copy of this form is attached.

PAROLE AND PROBATION FORM

APPLICATION FOR COMPACT SERVICES

TO: _____

I, _____ hereby apply for supervision as a parolee or probationer pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. I understand that the very fact that supervision will be in another state makes it likely that there will be certain differences between the supervision I would receive in this state and the supervision which I will receive in any state to which I am asking to go. However, I urge the authorities to whom this application is made, and all other judicial and administrative authorities, to recognize that supervision in another state, if granted as requested in this application, will be a benefit to me and will improve my opportunities to make a good adjustment. In order to get the advantages of supervision under the Interstate Compact for the Supervision of Parolees and Probationers, I do hereby accept such differences in the course and character of supervision as may be provided, and I do state that I consider the benefits of supervision under the Compact to be worth any adjustments in my situation which may be occasioned.

In view of the above, I do hereby apply for permission to be supervised on (parole) (probation) in _____ for the following reasons:

I (have read the above) (have had the above read and explained to me), and I understand its meaning and agree thereto.

Signature _____

Witnessed by _____

Date _____

640-X-3-.02 - <u>Parole Review Worksheet</u>.  This form is completed by the field parole officer at the time he investigates a case to aid in evaluation for parole consideration.  A copy of this form is attached.

**PAROLE REVIEW WORKSHEET**

AIS # _____

NAME _____    COURT # _____

I.  If sentence is of ten years or more — and (a) offense is of a particularly heinous nature or (b) present offense is of a violent nature and his previous behavior indicates a high risk potential for future violence — case should be set on the maximum scale.

P. O. Recommends Maximum Scale (    )

II.  If case fits the following it should be set as a Career Criminal:

    (A)  Serving third or more separate prison term.

    (B)  Members of organized crime or large scale drug transporting and sales operations.

P. O. Recommends Set as Career Criminal (    )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.  If subject did not fall into I or II above, complete the following: (circle applicable number)
    (Desired criteria indicated by smallest numbers)

| | | | | | | |
|---|---|---|---|---|---|---|
| (A) | Past criminal record | 1 | 2 | 3 | 4 | 5 |
| (B) | Pattern and nature (severity) of present offense | 1 | 2 | 3 | 4 | 5 |
| (C) | Community attitude toward offender | 1 | 2 | 3 | 4 | 5 |

P. O. Recommends Setting of (          )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV.  Complete for all cases, yes or no.
    (Desired criteria indicated by negative responses)

| | | Yes | No |
|---|---|---|---|
| (D) | History of drug or alcohol abuse | (    ) | (    ) |
| (E) | On parole at time of commission of present offense | (    ) | (    ) |
| (F) | Prior failure on probation or parole | (    ) | (    ) |
| (G) | Unacceptable employment history | (    ) | (    ) |
| (H) | Unstable marital status | (    ) | (    ) |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V.  (    )  I recommend that guidelines not be used in this case.

Explain:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI.  Remarks:

Signed and dated at _____, Alabama, the _____ day of _____, 19 _____.

PBF 118
(Rev. 4-86)                        OFFICER _____

640-X-3-.03 - <u>Scale for Parole Calendar Dates</u>. This scale establishes the time to be served prior to initial parole consideration on guideline cases. A copy of this form is attached.

## SCALE FOR PAROLE CALENDAR DATES

| Length of sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | **1** | **2** | **3** | **4** | **5** | |
| 1 yr. 1 da. | | | | | | |
| 18 months | 4 | 4-15 | 5 | 5-15 | 6 | |
| 19 months | 4-5 | 4-22 | 5-8 | 5-24 | 6-10 | |
| 20 months | 4-10 | 4-28 | 5-15 | 6-3 | 6-20 | |
| 21 months | 4-15 | 5-4 | 5-23 | 6-12 | 7 | |
| 22 months | 4-20 | 5-10 | 6 | 6-20 | 7-10 | |
| 23 months | 4-25 | 5-16 | 6-8 | 6-29 | 7-20 | |
| 2 years | 5 | 5-23 | 6-15 | 7-8 | 8 | |
| 25 months | 5-3 | 5-28 | 6-22 | 7-16 | 8-10 | |
| 26 months | 5-6 | 6-2 | 6-28 | 7-24 | 8-20 | |
| 27 months | 5-8 | 6-6 | 7-4 | 8-2 | 9 | |
| 28 months | 5-10 | 6-10 | 7-10 | 8-10 | 9-10 | |
| 29 months | 5-12 | 6-14 | 7-16 | 8-18 | 9-20 | |
| 30 months | 5-15 | 6-19 | 7-23 | 8-27 | 10 | |
| 31 months | 5-18 | 6-24 | 8 | 9-6 | 10-10 | |
| 32 months | 5-21 | 6-28 | 8-6 | 9-13 | 10-20 | |
| 33 months | 5-24 | 7-3 | 8-12 | 9-21 | 11 | |
| 34 months | 5-26 | 7-7 | 8-19 | 10 | 11-10 | |
| 35 months | 5-28 | 7-11 | 8-25 | 10-8 | 11-20 | |
| 3 years | 6 | 7-15 | 9 | 10-15 | 12 | |
| 37 months | 6-10 | 7-25 | 9-10 | 10-25 | 12-10 | |
| 38 months | 6-20 | 8-5 | 9-20 | 11-5 | 12-20 | |
| 39 months | 7 | 8-15 | 10 | 11-15 | 13 | |
| 40 months | 7-10 | 8-25 | 10-10 | 11-25 | 13-10 | |
| 41 months | 7-20 | 9-5 | 10-20 | 12-5 | 13-20 | |

2

| Length of Sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| 42 months | 8 | 9-15 | 11 | 12-15 | 14 | |
| 43 months | 8-10 | 9-25 | 11-10 | 12-25 | 14-10 | |
| 44 months | 8-20 | 10-5 | 11-20 | 13-5 | 14-20 | |
| 45 months | 9 | 10-15 | 12 | 13-15 | 15 | |
| 46 months | 9-10 | 10-25 | 12-10 | 13-25 | 15-10 | |
| 47 months | 9-20 | 11-5 | 12-20 | 14-5 | 15-20 | |
| 4 years | 10 | 11-15 | 13 | 14-15 | 16 | |
| 49 months | 10-5 | 11-21 | 13-8 | 14-24 | 16-10 | |
| 50 months | 10-10 | 11-27 | 13-15 | 15-3 | 16-20 | |
| 51 months | 10-15 | 12-4 | 13-23 | 15-12 | 17 | |
| 52 months | 10-20 | 12-10 | 14 | 15-20 | 17-10 | |
| 53 months | 10-25 | 12-16 | 14-8 | 15-29 | 17-20 | |
| 54 months | 11 | 12-22 | 14-15 | 16-8 | 18 | |
| 55 months | 11-5 | 12-29 | 14-23 | 16-17 | 18-10 | |
| 56 months | 11-10 | 13-5 | 15 | 16-25 | 18-20 | |
| 57 months | 11-15 | 13-11 | 15-8 | 17-4 | 19 | |
| 58 months | 11-20 | 13-18 | 15-15 | 17-13 | 19-10 | |
| 59 months | 11-25 | 13-24 | 15-23 | 17-22 | 19-20 | |
| 5 years | 12 | 14 | 16 | 18 | 20 | |
| 61 months | 12-10 | 14-10 | 16-10 | 18-10 | 20-10 | |
| 62 months | 12-20 | 14-20 | 16-20 | 18-20 | 20-20 | |
| 63 months | 13 | 15 | 17 | 19 | 21 | |
| 64 months | 13-10 | 15-10 | 17-10 | 19-10 | 21-10 | |
| 65 months | 13-20 | 15-20 | 17-20 | 19-20 | 21-20 | |
| 66 months | 14 | 16 | 18 | 20 | 22 | |

3

| Length of Sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| 67 months | 14-10 | 16-10 | 18-10 | 20-10 | 22-10 | |
| 68 months | 14-20 | 16-20 | 18-20 | 20-20 | 22-20 | |
| 69 months | 15 | 17 | 19 | 21 | 23 | |
| 70 months | 15-10 | 17-10 | 19-10 | 21-10 | 23-10 | |
| 71 months | 15-20 | 17-20 | 19-20 | 21-20 | 23-20 | |
| 6 years | 16 | 18 | 20 | 22 | 24 | |
| 73 months | 16-5 | 18-6 | 20-8 | 22-9 | 24-10 | |
| 74 months | 16-10 | 18-13 | 20-15 | 22-18 | 24-20 | |
| 75 months | 16-15 | 18-19 | 20-23 | 22-27 | 25 | |
| 76 months | 16-20 | 18-25 | 21 | 23-5 | 25-10 | |
| 77 months | 16-25 | 19-1 | 21-8 | 23-14 | 25-20 | |
| 78 months | 17 | 19-8 | 21-15 | 23-23 | 26 | |
| 79 months | 17-5 | 19-14 | 21-23 | 24-2 | 26-10 | |
| 80 months | 17-10 | 19-20 | 22 | 24-10 | 26-20 | |
| 81 months | 17-15 | 19-26 | 22-8 | 24-19 | 27 | |
| 82 months | 17-20 | 20-3 | 22-15 | 24-28 | 27-10 | |
| 83 months | 17-25 | 20-9 | 22-23 | 25-7 | 27-20 | |
| 7 years | 18 | 20-15 | 23 | 25-15 | 28 | |
| 85 months | 18-5 | 20-21 | 23-8 | 25-24 | 28-10 | |
| 86 months | 18-10 | 20-28 | 23-15 | 26-3 | 28-20 | |
| 87 months | 18-15 | 21-4 | 23-23 | 26-12 | 29 | |
| 88 months | 18-20 | 21-10 | 24 | 26-20 | 29-10 | |
| 89 months | 18-25 | 21-16 | 24-8 | 26-29 | 29-20 | |
| 90 months | 19 | 21-23 | 24-15 | 27-8 | 30 | |
| 91 months | 19-5 | 21-29 | 24-23 | 27-17 | 30-10 | |

| Length of Sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| 92 months | 19-10 | 22-5 | 25 | 27-25 | 30-20 | |
| 93 months | 19-15 | 22-11 | 25-8 | 28-4 | 31 | |
| 94 months | 19-20 | 22-18 | 25-15 | 28-13 | 31-10 | |
| 95 months | 19-25 | 22-24 | 25-23 | 28-22 | 31-20 | |
| 8 years | 20 | 23 | 26 | 29 | 32 | |
| 97 months | 20-5 | 23-6 | 26-8 | 29-9 | 32-10 | |
| 98 months | 20-10 | 23-13 | 26-15 | 29-18 | 32-20 | |
| 99 months | 20-15 | 23-19 | 26-23 | 29-27 | 33 | |
| 100 months | 20-20 | 23-25 | 27 | 30-5 | 33-10 | |
| 101 months | 20-25 | 24-1 | 27-8 | 30-14 | 33-20 | |
| 102 months | 21 | 24-8 | 27-15 | 30-23 | 34 | |
| 103 months | 21-5 | 24-14 | 27-23 | 31-2 | 34-10 | |
| 104 months | 21-10 | 24-20 | 28 | 31-10 | 34-20 | |
| 105 months | 21-15 | 24-26 | 28-8 | 31-19 | 35 | |
| 106 months | 21-20 | 25-3 | 28-15 | 31-28 | 35-10 | |
| 107 months | 21-25 | 25-9 | 28-23 | 32-7 | 35-20 | |
| 9 years | 22 | 25-15 | 29 | 32-15 | 36 | |
| 109 months | 22-5 | 25-21 | 29-8 | 32-24 | 36-10 | |
| 110 months | 22-10 | 25-28 | 29-15 | 33-3 | 36-20 | |
| 111 months | 22-15 | 26-4 | 29-23 | 33-12 | 37 | |
| 112 months | 22-20 | 26-10 | 30 | 33-20 | 37-10 | |
| 113 months | 22-25 | 26-16 | 30-8 | 33-29 | 37-20 | |
| 114 months | 23 | 26-23 | 30-15 | 34-8 | 38 | |
| 115 months | 23-5 | 26-29 | 30-23 | 34-17 | 38-10 | |
| 116 months | 23-10 | 27-5 | 31 | 34-25 | 38-20 | |

5

| Length of Sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | |
| 117 months | 23-15 | 27-11 | 31-8 | 35-4 | 39 | |
| 118 months | 23-20 | 27-18 | 31-15 | 35-13 | 39-10 | |
| 119 months | 23-25 | 27-24 | 31-23 | 35-22 | 39-20 | |
| 10 years | 24 | 28 | 32 | 36 | 40 | 60 |
| 121 months | 24-5 | 28-6 | 32-8 | 36-9 | 40-10 | 60-15 |
| 122 months | 24-10 | 28-13 | 32-15 | 36-18 | 40-20 | 61 |
| 123 months | 24-15 | 28-19 | 32-23 | 36-27 | 41 | 61-15 |
| 124 months | 24-20 | 28-25 | 33 | 37-5 | 41-10 | 62 |
| 125 months | 24-25 | 29-1 | 33-8 | 37-14 | 41-20 | 62-15 |
| 126 months | 25 | 29-8 | 33-15 | 37-23 | 42 | 63 |
| 127 months | 25-5 | 29-14 | 33-23 | 38-2 | 42-10 | 63-15 |
| 128 months | 25-10 | 29-20 | 34 | 38-10 | 42-20 | 64 |
| 129 months | 25-15 | 29-26 | 34-8 | 38-19 | 43 | 64-15 |
| 130 months | 25-20 | 30-3 | 34-15 | 38-28 | 43-10 | 65 |
| 131 months | 25-25 | 30-9 | 34-23 | 39-7 | 43-20 | 65-15 |
| 11 years | 26 | 30-15 | 35 | 39-15 | 44 | 66 |
| 133 months | 26-5 | 30-21 | 35-8 | 39-24 | 44-10 | 66-15 |
| 134 months | 26-10 | 30-28 | 35-15 | 40-3 | 44-20 | 67 |
| 135 months | 26-15 | 31-4 | 35-23 | 40-12 | 45 | 67-15 |
| 136 months | 26-20 | 31-10 | 36 | 40-20 | 45-10 | 68 |
| 137 months | 26-25 | 31-16 | 36-8 | 40-29 | 45-20 | 68-15 |
| 138 months | 27 | 31-23 | 36-15 | 41-8 | 46 | 69 |
| 139 months | 27-5 | 31-29 | 36-23 | 41-17 | 46-10 | 69-15 |
| 140 months | 27-10 | 32-5 | 37 | 41-25 | 46-20 | 70 |
| 141 months | 27-15 | 32-11 | 37-8 | 42-5 | 47 | 70-15 |

6

| Length of Sentence | Time in Months and Days for each step | | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | **1** | **2** | **3** | **4** | **5** | |
| 142 months | 27-20 | 32-18 | 37-15 | 42-13 | 47-10 | 71 |
| 143 months | 27-25 | 32-24 | 37-23 | 42-22 | 47-20 | 71-15 |
| 12 years | 28 | 33 | 38 | 43 | 48 | 72 |
| 12 yr. 6 mos. | 29 | 34-7 | 39-15 | 44-22 | 50 | 75 |
| 13 years | 30 | 35-15 | 41 | 46-15 | 52 | 78 |
| 13 yr. 6 mos. | 31 | 36-22 | 42-15 | 48-7 | 54 | 81 |
| 14 years | 32 | 38 | 44 | 50 | 56 | 84 |
| 14 yr. 6 mos. | 33 | 39-7 | 45-15 | 51-22 | 58 | 87 |
| 15 years | 34 | 40-15 | 47 | 53-15 | 60 | 90 |
| 15 yr. 6 mos. | 35 | 41-22 | 48-15 | 55-7 | 62 | 93 |
| 16 years | 36 | 43 | 50 | 57 | 64 | 96 |
| 16 yr. 6 mos. | 37 | 44-7 | 51-15 | 58-22 | 66 | 99 |
| 17 years | 38 | 45-15 | 53 | 60-15 | 68 | 102 |
| 17 yr. 6 mos. | 39 | 46-22 | 54-15 | 62-7 | 70 | 105 |
| 18 years | 40 | 48 | 56 | 64 | 72 | 108 |
| 18 yr. 6 mos. | 41 | 49-7 | 57-15 | 65-22 | 74 | 111 |
| 19 years | 42 | 50-15 | 59 | 67-15 | 76 | 114 |
| 19 yr. 6 mos. | 43 | 51-22 | 60-15 | 69-7 | 78 | 117 |
| 20 years | 44 | 53 | 62 | 71 | 80 | 120 |
| 20 yr. 6 mos. | 45 | 54-7 | 63-15 | 72-22 | 82 | 123 |
| 21 years | 46 | 55-15 | 65 | 74-15 | 84 | 126 |
| 21 yr. 6 mos. | 47 | 56-22 | 66-15 | 76-7 | 86 | 129 |
| 22 years | 48 | 58 | 68 | 78 | 88 | 132 |
| 22 yr. 6 mos. | 49 | 59-7 | 69-15 | 79-22 | 90 | 135 |
| 23 years | 50 | 60-15 | 71 | 81-15 | 92 | 138 |

7

| Length of Sentence | 1 | Time in Months and Days for each step | | | | Maximum Scale* |
|---|---|---|---|---|---|---|
| | | 2 | 3 | 4 | 5 | |
| 23 yr. 6 mos. | 51 | 61-22 | 72-15 | 83-7 | 94 | 141 |
| 24 years | 52 | 63 | 74 | 85 | 96 | 144 |
| 24 yr. 6 mos. | 53 | 64-7 | 75-15 | 86-22 | 98 | 147 |
| 25 years | 54 | 65-15 | 77 | 88-15 | 100 | 150 |
| 25 yr. 6 mos. | 55 | 66-22 | 78-15 | 90-7 | 102 | 153 |
| 26 years | 56 | 68 | 80 | 92 | 104 | 156 |
| 26 yr. 6 mos. | 57 | 69-7 | 81-15 | 93-22 | 106 | 159 |
| 27 years | 58 | 70-15 | 83 | 95-15 | 108 | 162 |
| 27 yr. 6 mos. | 59 | 71-22 | 84-15 | 97-7 | 110 | 165 |
| 28 years | 60 | 73 | 86 | 99 | 112 | 168 |
| 28 yr. 6 mos. | 61 | 74-7 | 87-15 | 100-22 | 114 | 171 |
| 29 years | 62 | 75-15 | 89 | 102-15 | 116 | 174 |
| 29 yr. 6 mos. | 63 | 76-22 | 90-15 | 104-7 | 118 | 177 |
| 30 years | 64 | 78 | 92 | 106 | 120 | 180 |

*Maximum scale to be used for cases where factors are present which indicate high potential for future violence or present offense was a heinous crime.

640-X-3-.04 – <u>Interview/File Review Worksheet</u>. This form is used by the Board when it is considering an inmate for parole. It has a checklist showing the reasons for favoring parole and the reasons for denial of parole and the reasons for not resetting for parole consideration. A copy of this form is attached.

## INTERVIEW/FILE REVIEW WORKSHEET

Inmate: _____ AIS # _____

Set _____ Personal Interview:  Yes _____ No _____

### Reasons Favoring Parole

My reasons for favoring parole of the prisoner are as follows:

1. _____ Subject has served sufficient portion of sentence.
2. _____ Investigation has been made of subject.
3. _____ Subject's parole program is acceptable.
4. _____ Subject's interview was favorable.
5. _____ Prison Authority report is satisfactory.
6. _____ (State of) _____ accepts for supervision.
7. _____ I am of the opinion that there is a reasonable probability that if the prisoner is released, (he. she) will live and remain at liberty without violating the law, and that (his, her) release is not incompatible with the welfare of society.
8. _____ Interviewing Parole Officer recommends.
9. _____ _____

_____          _____
Date                                      Member

### Reasons Favoring Denial

My reasons for favoring Denial are as follows:

1. _____ Failure to adjust in prison.
2. _____ Failure to adjust on parole or probation.
3. _____ Protest.
4. _____ Prior record.
5. _____ Pending cases or holdovers.
6. _____ New conviction.
7. _____ Has not served enough time.
8. _____ Release would not be compatible with society's welfare.
9. _____ Protection of Society.
10. _____ On Escape.
11. _____ Attitude does not show evidence of rehabilitation.
12. _____ Prison authority does not recommend for parole.
13. _____ Nature of Offense.
14. _____ Other _____

My reasons for not re-setting for parole consideration:

1. _____ Only short time to serve.
2. _____ Same as above.
3. _____ Other _____

_____          _____
Date                                      Member

640-X-3-.05 – <u>Victim Request or Waiver of Notice</u>.  This form is for the victim to request a thirty (30) day notice or a waiver of notice to be given to them by the Board before considering a prisoner for pardon, parole, or restoration of civil and political rights.  A copy of this form is attached.

STATE BOARD OF PARDONS AND PAROLES

Montgomery, Alabama

VICTIM REQUEST OR WAIVER OF NOTICE

Inmate's Name _____ AIS # _____

I, _____
                name                 address

do hereby request ☐ waive ☐ 30 days written notice to be given to me by the Board of Pardons and

Paroles before considering the above-named prisoner for pardon, parole or restoration of civil and

political rights. I agree to give the Board of Pardons and Paroles written notice of any change in my

permanent mailing address. I understand that I may change this decision in the future by filing a

written statement to that effect with the Board of Pardons and Paroles.


_____     _____
Signature                              Date


_____     _____
Witness                               Date


PBF-119

640-X-3-.06 - <u>Action by Board</u>.  This form is used by the Board in taking action to grant, deny, or to continue to a future date, an inmate who is being considered for parole by the Board.  A copy of this form is attached.

**STATE BOARD OF PARDONS AND PAROLES**
Montgomery, Alabama

*ACTION BY THE BOARD*

NAME _____ COUNTY _____ NUMBER _____

DOCKET _____        1/3 _____

PAROLE IS THIS DAY ORDERED        PAROLE IS THIS DAY DENIED AND RESET FOR _____

DATE _____              DATE _____
BY:                        BY:
                                                        RESET

_____        _____        _____

_____        _____        _____

_____        _____        _____

CONTINUED TO _____        DATE _____

SPECIAL CONDITIONS: _____

_____

_____

COURT ORDERED RESTITUTION: _____

_____

DATE OF PAROLE _____        PAROLE OFFICE _____

S.T RELEASE DATE _____ _____ IGT REL DATE _____ MAX EXPIRATION _____

PROTESTS: _____

_____

_____

REMARKS _____

_____

_____

_____

_____

_____

_____

_____

CO FORM 501 (Rev. 6/82)

640-X-3-.07 – <u>Certificate of Parole</u>.  This form is given to an inmate when he or she is granted a parole.  It gives the reasons for the Board's action and contains the conditions of parole.  A copy of this form is attached.

 

**State Board of Pardons and Paroles**

Montgomery, Alabama

# Certificate of Parole

KNOW ALL MEN BY THESE PRESENTS:

It having been made to appear to the Alabama State Board of Pardons and Paroles that

_____

is eligible to be PAROLED. and that there is a reasonable probability that said prisoner WILL REMAIN AT LIBERTY WITHOUT VIOLATING THE LAWS. and it being the opinion of the said State Board of Pardons and Paroles that the release of this prisoner is not incompatible with the welfare of society, and it appearing further that the Board is satisfied that this prisoner will not become a public charge on release, but will be suitably employed at _____

_____

and will live at _____

and shall continue in the same until he obtains the permission of his Parole Officer to make a change. He shall go directly to _____ and report immediately upon arrival to his Parole Officer at _____

It is therefore ORDERED that said prisoner be, and is, hereby paroled pending good  
_ _ _ _ _ _ _ as or under supervision subject to the specific conditions of parole listed on the reverse side of this Order.

In witness whereof this Certificate bearing the seal of the State Board of Pardons and Paroles is issued this the _____ day of _____

19_____ .

By Order of:

STATE BOARD OF PARDONS AND PAROLES

_____
Executive Director

## STATEMENT OF CONDITIONS UNDER WHICH PAROLE IS GRANTED

This Certificate of Parole shall not become operative until the following Conditions are agreed to by the prisoner, and violation of any of these Conditions may result in revocation of Parole.

1. I shall report immediately to the Parole Officer under whose supervision I am paroled by personal visit.

2. I shall not change my residence or employment or leave the State without first getting the consent of my Parole Officer.

3. I shall, between the first and third days of each month, until my release from parole, make a full and truthful report to my Parole Officer in writing.

4. I shall not use narcotic drugs, or frequent places where intoxicants or drugs are sold, dispensed, or used unlawfully.

5. I shall avoid injurious habits and shall not associate with persons of bad reputation or harmful character.

6. I shall in all respects conduct myself honorably, work diligently at a lawful occupation, and support my dependents to the best of my ability.

7. I shall not violate any law.

8. I hereby waive all extradition rights and process and agree to return when the State Board of Pardons and Paroles directs at any time before my release from parole.

9. I shall promptly and truthfully answer all inquiries directed to me by the State Board of Pardons and Paroles and my Parole Officer and allow that Officer to visit me at my home, employment site or elsewhere, and carry out all instructions my Parole Officer gives.

10. If at any time it becomes necessary to communicate with my Parole Officer for any purpose and that Officer is not available, I shall contact the State Board of Pardons and Paroles.

11. I shall not marry without first seeking the advice and counsel of my Parole Officer.

12. Immediately upon release from the service of sentence in _____ and if prior to _____ , I will report directly to the State Board of Pardons and Paroles, 750 Washington Avenue, Montgomery, AL 36130, either by telephone, correspondence or in person.

13. I shall pay fifteen dollars ($15.00) per month to the State Board of Pardons and Paroles as required by law.

14. I shall not own, possess or have under my control a firearm or ammunition of any kind, nor any other deadly weapon or dangerous instrument as defined by Alabama law.

15. I shall participate in alcoholic, drug treatment, or other therapeutic programs when instructed to do so by my Parole Officer.

16. I shall pay $ _____ Restitution as ordered by the sentencing court or the State Board of Pardons and Paroles.

I hereby certify that this Statement of Conditions of Parole have been read and explained to the Parolee.

This _____ day _____ 19 _____        _____
                                                            (Signature of Parolee)

_____              _____
   (Member of Board or Warden)                    (Give full address at which you can be reached)

640-X-3-.08 - <u>Report of Parole Violation</u>.  This form is used by the parole and probation officer to report a violation of parole.  After completing the identifying information, the officer reports the violation of the parolee along with the information as to where the parolee can be located.  A copy of this form is attached.

STATE BOARD OF PARDONS AND PAROLES
Montgomery, Alabama

REPORT OF PAROLE VIOLATION

Date: _____

Field Office: _____

Name of Parolee _____ _____ No. _____

Race, Sex & Age _____ County of Conviction _____

Offense _____ Sentence _____

Date Convicted _____ Date of Parole _____

Date Sentence Expires _____

If declared Delinquent, subject can be located at the following place: _____

P 3 Form No. 109

640-X-3-.09 - <u>On-Site Hearing/Forfeiture of Good Time</u>. This form gives to the parolee the violations of parole with which he is charged, and gives him the option of an on-site hearing or the right to waive such hearing. A copy of this form is attached.

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
Montgomery, Alabama 3615.

Name                                                    AIS Number
Address                                                 Race & Sex
                                                        County of Conviction

IN RE.   On-Site Hearing
         Forfeiture of Good Time

You are hereby notified that the following violations of parole have been placed against you:

| Condition of Parole | Date and charge | Disposition of Criminal Charges |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Under the law you are entitled to a hearing on these charges. If you wish you may be given a hearing by the Parole Board or his agent. You may waive this hearing and accept the action taken by the Parole Board. Please sign the appropriate form.

I, _____          I, _____
hereby waive a hearing by the Parole Board or his agent.          after having been advised of the charges placed against me hereby request a hearing by the Parole Board or his agent in regard to these charges.

Date          Signature of Parolee          Date          Signature of Parolee

This is to certify that I have this date advised the above named parolee of the charges contained herein and he has (received a hearing), (requested a hearing)

Date          Field Probation and Parole Officer

After careful consideration of these charges, it is the order of the Board that you be:

_____ (1)  Continued on Parole without further delinquency action.

_____ (2)  Continued on Parole and that you forfeit_____ months of your good time.

Date          Assistant Director

cc:  Parolee
     Parole Supervisor
     Board of Corrections
     Central Office File

PBF 105

640-X-3-.10 - <u>Application for Pardon and/or Restoration of Civil and Political Rights</u>. This form is used in applying for a pardon and/or restoration of civil and political rights. In addition to identifying information, the form requests employment history and suggested references. It also asks for the reason for the application. A copy of the form is attached.

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES
Montgomery, Alabama

APPLICATION FOR PARDON AND/OR RESTORATION OF CIVIL AND POLITICAL RIGHTS

Name_____

Address_____ Phone_____     Race
        Street        City        State        Zip Code

County of Conviction_____ Date of Conviction_____     Sex

Check the court of conviction — State_____ City_____ Federal_____     Age

Offense_____ Sentence_____ Prison_____ Probation_____     D.O.B.
                         (Term)

Plea: Guilty_____ Not Guilty_____ Nolo Contendere_____     Prison No.

Date and Method of Release_____

Date of Final Discharge_____ Date Last Voted_____
EMPLOYMENT HISTORY SINCE RELEASE (List in Chronological Order)
Name of Employer                    Address              Dates
1.                                                       From_____ 19___
                                                         To_____ 19___
2.                                                       From_____ 19___
                                                         To_____ 19___
3.                                                       From_____ 19___
                                                         To_____ 19___

REFERENCES:_____ _____
              Name                              Address

_____ _____
              Name                              Address

_____ _____
              Name                              Address

_____ _____
              Name                              Address
(List other references on back of application)

Reason for Application_____
State other facts showing why restoration should be granted. (Participation in Civic, Church, Politi-
cal, Family Life, Etc )

_____

_____

_____

_____

                                    Signature _____

Date_____
Note:  Application must be filed in duplicate
co: 510

640-X-3-.11 – <u>Application for Remission of Forfeiture</u>.  This form is used in applying for the Remission of Forfeiture.  In addition to identifying information, a request for a certified copy of the bond is made, as well as the consideration for becoming surety.  A copy of this form is attached.

STATE BOARD OF PARDONS AND PAROLES

Montgomery, Alabama

APPLICATION FOR REMISSION OF FORFEITURE

1. _____

    Name of Defendant                           Address

2. _____

    Name of Surety                               Address

   _____

    Name of Surety                               Address

   _____

    Name of Surety                               Address

3. (a) _____

       Judge                                 Solicitor

4. Attach certified copy of bond and certificate from Court Clerk showing the amount of forfeiture and costs of same.

5. _____

    Date of First Forfeiture                Date Made Final

6. Final disposition of case including date of conviction, the offense, sentence, date of arrest, and if any prior bond. If undisposed of, so state. _____

7. What was consideration for your becoming surety? _____

_____

8. State all other pertinent facts including reason for defendant's failure to appear, his whereabouts from date of bond to present, efforts made to locate and return him, expense incurred, names and addresses of persons who will verify information furnished, and other pertinent facts or mitigating circumstances showing why remission on forfeiture should be granted.

(Use reverse side if necessary)

                                                 Signature of Applicant

IMPORTANT:
This application must be made in duplicate. The burden is upon applicant to state and prove due diligence in producing defendant, and freedom from negligence on his part in connection therewith. In the absence of such proof, application will be denied.

The above rules, regulations, and procedures, as required by the Alabama Administrative Procedure Act, were proposed by all three members of the Board. All other rules, regulations, and procedures covered by the Alabama Administrative Procedure Act heretofore adopted by the Board are hereby repealed.


_____
Ealon M. Lambert

_____
Jack C. Lufkin

_____
John T. Porter

This is to certify that each of the above listed rules, regulations, and procedures are hereby adopted by the Board this the 27th day of September, 1982.


_____
Ealon M. Lambert

_____
Jack C. Lufkin

_____
John T. Porter