## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

Bernies Burnett, 132146

     Plaintiff,

Vs.

Alabama Pardon & Paroles et. al.,    *

     Defendants.             *

2:08-CV-22-WKW

### RESPONSE AS ORDERED ON 4/24/08 TO THE
### DEFENDANTS SPECIAL REPORT AS SUPPLEMENTED
### INAPPOSITE TO WYNNE'S, WEATHERLY'S AND LONGSHORE'S
### DEFICIENT ANSWER & AFFIDAVITS

COMES NOW Bernies Burnett (hereinafter "BURNETT") moves this Honorable Court to respectfully review as shown upon this Court as follows:

First, Defendants answered collectively, so Burnett more than likely would assume Documents Numbered 23, and 36, as were cited by this Court, as received by Burnett on two (2) separate dates 1) March 25, 2008 and 2) April 22nd, 2008, therefore Burnett "*Response to the Special Report as Supplemented*" will proceed, necessarily throughout, accordingly, as answered:

DEFENDANTS' stated at page 1, §1 that:

    1). "Supplemental affidavits from Longshore and Weatherly are filed herewith, addressing the equal protection and false information claims." *Id.*

§ 1.     Burnett maintains said affidavit remains inadequate, inadmissible as evidence, as likewise disclosed to this Court,

see Defendant Weatherly's Affidavit (4/22/08) coupled to, as an attachment to, of said "*Supplemental Special Report*," (hereinafter ""Supp.Sp.Rpt."}.    Nevertheless,    Defendants affidavits don't comport with this Court's previous issued "directive" dated April 1st, 2008 "Upon consideration of Defendants' written report filed March 25, 2008 it is ORDERED that on or before April 30, 2008, the parole board defendants **shall** file a supplemental to their special report which:

"1). Addresses Plaintiff's claims that:

    (i)  He was denied parole based upon erroneous/false information;

    (ii)  **The parole board members acted in violation of his equal protection rights when they denied him parole in 2007**;and

    (iii)  The parole decision issued in 2007 violated the Ex Post Facto Clause as it was based on rules/regulations adopted after Plaintiff's conviction and sentence; and

2). Contains affidavits and copies of all relevant rules/regulations relevant to Plaintiff's claims for relief." *Id*.

(Emphasis-added). Nowhere in Weatherly's affidavit could Burnett find a[ny] admissible "affirmative defense," to Burnett's claim(s), of "equal protection, and *especially his ex post facto clause*," clearly substantiated in the original §1983 COMPLAINT, under oath; additionally Weatherly's affidavit <u>does not</u> comport with Rules <u>11</u>(a), <u>56</u>(e), Fed.R.Civ.P., as follows:

2

"Rule 11 applies to every pleading, written motion, or other paper filed or served in the course of litigation, as well as advocacy of documents previously filed." *See, e.g., Antonious v. Spalding & Evenflo Companies, Inc.,* 281 F.3d 1258, 1261 (Fed.Cir.2002)(court ordered filing of document . . . held falls within the scope of Rule 11 . . ." *id.* Simply put, the party must sign the document, in this instant action -Weatherly "failed to sign said affidavit before [t]he *Notary*, see page two (2) therein; thus said "document remains inadmissible -unsworn. *See Harbert Int'l, Inc., v. James,* 157 F.3d 1271, 1280 (11th.Cir.1998); likewise, applicable herein, is Rule 56(e), states: "A supporting affidavit *must* be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy *must* be attached to or served with the affidavit . . ." *id.* (Emphasis-added).

§ 2.     Clearly, Weatherly's affidavit failed to comport to the prerequisites of Rule 56(e), nowhere in said affidavit has it been stated, let alone verified, nor was it lawfully authenticated with a valid "*signature sworn / signed before the notary,*" notwithstanding the absence of, being upon: "i) personal knowledge, ii) stating specific facts admissible in evidence, and iii) offering up a[ny] competency," therein. *Id,*

*at Rule 56*, Fed.R.Civ.P., *see, also Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th.Cir.2002); *Bolen v. Dengel,* 340 F.3d 300, 313 (5th.Cir.2003), *cert. denied* ___ *U.S.* ___, 124 S.Ct. 1714, 158 L.Ed.2d 399, (2004). See Plaintiff Burnett's attached "*Motion to Strike*," coupled herewith.

DEFENDANTS' stated at page 1, §2 that:

> 2). "The Board's position is that <u>the Complaint
> fails to state a claim under either of those
> theories</u>, as set forth in *Jones v. Ray*, 279
> F.3d 944 (11[th].Cir.2001). He does not show
> what prisoners he claims are situated
> similarly to him. <u>The Equal Protection
> Clause does not forbid the State from
> treating people differently, according to
> their circumstances</u>. <u>Receiving false
> allegedly false information does not violate
> the Due Process Clause</u>. Plaintiff must show
> that the Board knowingly relied on false
> information in order to state a claim." *Id.*

(Emphasis-added). As interesting as it may otherwise be, to plead a[ny] affirmative defense in a boiler-plated fashion, commonly referred to as a "shotgun" this Court frowns upon such tactics. *See, e.g., Roberts v. Dretke*, 356 F.3d 632 (U.S. Dist. 5th -11[th].Cir. 2004); *United States v. Emerson*, 270 F.3d 203 (U.S. Dist. 5th. -11[th].Cir. 2001).

§ 3.    Defendant   Weatherly,   Longshore   have   "yet"   to accurately disclose the evidentiary materials, documents Burnett sought to predicate with this Court upon "full discovery" as requested in Doc's. #19, 20, and ORDERED by this Court on April 24th, 2008, that Defendants **shall object or otherwise respond to**

4

**the requests for discovery . . . submit an objection to a request . . .**" *Id*. The date which this Court so ordered, has came and went, thus entitling Burnett to partial relief, due to Weatherly, Longshore "failures," both constituting a "waiver," on said behalf of Defendants disregard to properly respond, timely, and cause for Compel / Sanctions.

First, as maintained by Burnett, the Equal Protection Clause provides, in relevant part, that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., Amend. XIV, 1. We have recognized 'that an inmate may challenge the denial of pardon or parole on equal protection grounds.'" *Fuller v. Georgia State Bd. Of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).

The Equal Protection Clause is implicated in "class of one" claims, the type of claim alleged by Burnett, "where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir.), *cert. denied*, 127 S.Ct. 559, 166 L.Ed. 2d 410 (2006)(citation omitted). "A showing that two prisoners are similarly situated requires some specificity." *Id,* which Burnett most assuredly will come forth with upon discovery. "[A]n unexplained statistical showing of

disparate treatment by a single entity over a period of time [may] raise the inference of an equal protection violation." *Fuller*, 851 F.2d at 1310, Burnett maintains upon completion of discovery by Weatherly, Longshore, he will predicate the necessary statistical calculations to prove that there remains within Alabama's political system a "huge, discriminatory disparity" between the amount of time that he has been required to serve in prison, in addition to the other components described in the §1983 complaint, as compared to the amount of time served by other(s) "parole[d];" inmates serving sentences for murder, rape, armed robbery, kidnapping, or aggravated sodomy.

Burnett will do so through a comparative statistical analysis -substantially providing both this Court, and Defendants Weatherly, Longshore with the "exceptionally clear proof" of said discrimination, when compared to those similarly situated for comparative purposes. *See Fuller*, 851 F.2d at 1310.

Burnett replies, as this Court well knows, as does Burnett that under Alabama law, "the right to parole is a privilege granted by the people of Alabama to those committed to [y]our penal institutions as punishment for crimes." *Andrus v. Lambert*, 424 So.2d 5, 9 (Ala.Cr.App. 1982); *Holley v. State*, 397 So.2d 211, 216 (Ala.Crim.App.), cert. Denied, 397 So.2d 217 (Ala. 1981). Thus obtaining release through parole, like obtaining a

6

pardon, is wholly contingent upon either the grace of the detaining authority or some affirmative statutory entitlement. *United States v. Chagra*, 669 F.2d 241, 264 (5th·Cir. 1982), and although while "no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz v. Nebraska*, [442 U.S. 1], a prisoner, even like Burnett "has the right to be properly considered for parole." *Christopher v. U.S. Board of Parole*, 589 F.2d 924 (7th·Cir. 1978); *Wallace v. Turner*, 525 F.Supp. 1072 (S.D.Fla. 1981).

§ 4.    Even in Alabama, paroling authorities **must** comply with constitutional requirements and may not determine parole eligibility [or consideration] on improper grounds. *Wallace v. Turner*, *supra*, parole cannot be denied on false, insufficient, or capricious reasons. *Christopher*, *supra*. *Tedder v. Alabama Bd. of Pardon & Paroles*, 677 So.2d 1261 (Ala.Crim.App. 1996), see also *Tucker v. Alabama Bd. of Pardon & Paroles*, 781 So.2d 358 (Ala.Crim.App. 2000).

Second, Burnett points out to this Court that Counsel is twisting or attempting to conjoin the Second (2nd) Claim (a Denial of [an] **Equal Protection** [violation]-based upon *false and erroneous information*) into Burnett's First (1st) Claim (Denial of Effective Due Process of Article 1, U.S.C. 14th. Amendment [violation]-the *political predisposed parole denial effectuated*

7

*through conspiracy*) –two entirely different claims respectively not to be intertwined for the sake of argument, and relief – Burnett thus moves to strike said "defensive entanglement to Burnett real issue," see Burnett's attached 1) Motion to Strike and 2) Supporting Affidavit fully adopted and incorporated hereinafter as evidentiary materials opposing Defendants misapplication of Claim One (1).

For the sake of preserving an objection, inclusive to Responding, Burnett will attempt to reply accordingly to Defendants misapplied, deficient "Supp.Sp.Rpt." the foregoing theory's:

## A.    The Theory of Equal Protection and
## And Equal Protection:

§ 5.    The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner. U.S. Const. Amend. XIV, 1; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As a general rule, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. When "social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude." *Id*. This general rule gives way, however, "when the statute classifies by [gender,] race, alienage, or national origin," and because such factors "are seldom relevant

to the achievement of any legitimate state interest," such laws are subject "to strict scrutiny and will be sustained only if they **are suitably tailored to serve a compelling state interest.**" *Id*. Thus, if legislation classifies people in such a way that they receive different treatment under the law, the degree of scrutiny the court applies to the legislation depends on the basis for the classification. *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1337 (11th Cir.2002). Where a fundamental right or a suspect class is involved, the court reviews the classification with strict scrutiny. *Id*. On the other hand, "[i]f an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the [regulation / guideline] must be rationally related to the achievement of a legitimate government purpose." *Id*. (quoting **Joel v. City of Orlando**, 232 F.3d 1353, 1357 (11th Cir. 2000)).

Viewing the limited evidence in the light most favorable to Burnett, said evidentiary assertions between suspect class treatment disparities challenged herein, offer sufficient facts for a legal argument to support the assertion that the newly amended regulations are facially unconstitutional under the Equal Protection Clause -in light of the first impression issue for Alabama under the *Wilkinson v. Dotson*, progeny -that Burnett

has been in fact treated fundamentally dissimilar as a definable group -suspect class with respects to the laws concerning non-violent offenders, and at times some violent offenders too - inapposite to Federal standards, accommodated others. Simply put, these Defendants cannot predicate any lawful standing to uphold these post amendatory Board "Articles" under the current challenge, therefore said post-guidelines remain both "*irrational and arbitrary,*" under *Wilkinson*, when viewed cumulatively to the 640-X's in effect at the time Burnett was both convicted / sentenced in 1981.

Strictly speaking, the Equal Protection Clause prohibits these Defendants from unfairly discriminating between equivalent groups. The Defendants may not act in an invidious or arbitrary manner, the key to determining whether these Defendants, in treating one group differently from another, has stepped over the line is to ascertain the level of justification that these Defendants provided to explain their actions. No "single" standard defines the level of justification that is required; instead the Supreme Court has articulated three (3) distinct standards, the **first** and most lenient standard from the standpoint of prison administration, is the rational basis standard. It requires only that the classification be drawn for the purpose of serving a legitimate governmental interest and that the means chosen actually serve that interest. *See, e.g.,*

*San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed 369 (1911); *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); *Gregory v. Ashcroft*, 501 U.S. 452, 11 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Nordlinger v. Hann*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *F.C.C v. Beach Communications, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

§ 6.    However, in a stark, marked contrast, the **second** standard, the strict scrutiny standard, commands a close connection between the legislation or practice under examination and a compelling state interest. *See, e.g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (9174); *Miller v. Johnson*, 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995).    In between these two (2) positions lies the **third** standard, the intermediate standard of review; under it, there must be a substantial relationship to an important (although not compelling) state interest. *See, e.g., Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Plyer v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786, 4 Ed. Law Rep. 953 (1982); *I.N.S. v. Nam Nguyen*, 533 U.S. 944, 121

S.Ct. 2582, 150 L.Ed.2d 743 (2001). Under traditional equal
protection theories, the "*rational basis test*," is most commonly
applied to regulations in the social and economic field when
nonfundamental rights are at issue, and when the regulations do
not exclude "*suspect groups,*" such as racial or religious
minorities. *See, e.g., Dandridge v. Williams*, 397 U.S. 471, 90
S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Romer v. Evans*, 517 U.S. 620,
116 S.Ct. 1620, 134 L.Ed.2d 855, 109 Ed. Law Rep. 539 (1996);
*Rodriquez*; *Lindsley*, *supra.*

§ 7.     Burnett maintains, as does the United States Supreme
Court, that the "*strict scrutiny*," will be the appropriate test
when fundamental rights are at stake or a suspect classification
is involved. *See, e.g., Police Dept. of City of Chicago v.
Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)(free
speech); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22
L.Ed.2d 600 (1996); *Edelman*, *supra.*

Under current law, the intermediate standard applies to
gender-based classifications. *See Craig v. Boren*, 429 U.S. 190,
97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Califano*, *supra*. This
Circuit, as well as others "*suggest,*" that the intermediate
standard may also apply in cases involving important, but not
fundamental, rights. *See, e.g., L. Tribe, American
Constitutional Law,* 1591 -92 (2d.ed. 1988)(contending that the
intermediate standard should apply to cases involving children

or childhood). Whether to raise an equal protection claim-rather than one focusing solely on violation of a substantive right-depends in part, therefore, on an assessment of the standard of review used to resolve the equal protection claim. The reason is that the likelihood of a prisoner's suit resulting in relief on an equal protection claim can very well turn on the stringency of the equal protection standard applied by the court. However, in lieu of what's at stake, not only for Burnett but also per se for others to follow if the *Turner v. Safley*, [482 U.S. 78] (1987) standard is applied to quell the equal protection claims, then the nature of the interest at stake, or in this case -in jeopardy than Burnett's claims don't matter.

§ 8.        The invoked equal protection claim is one of first impression -in Alabama under the ruling recently viewed in Four (4) other states, under the guidance -holding through *Wilkinson*, that "the [parole board] retroactive application of new[er], harsher guidelines to pre-guidelines violate the Constitution's Ex Post Facto and Due Process Clauses . . .", *inter alia*; thus Burnett asserts, for the most part -what is in fact occurring at Alabama's parole board -based upon cumulative amended rules, regulations and guidelines being utilized to deny a suspect class of Lifer's parole, is likewise unconstitutional.

For the most part -this Court is more likely to fully grasp and understand a few seminal cases worthy of mentioning (i) in

*Morrisey v. Brewer*, 408 U.S. 471 (1972) "it determined that due process imposed certain minimum procedural requirements which must be satisfied before parole could be revoked, that court defined 'it's minimum requirements'"; similarly that court in 1997 found (ii) in *Young v. Harper*, 520 U.S. 143 (1997) that "pre-parole or parole like programs fall under the same umbrella of creating a 'liberty interest,' that cannot be revoked without proper due process procedures"; then in another vein the Supreme Court came to a completely different conclusion (iii) in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979) -which dealt with "due process issues involving a group of Nebraska prisoners who filed a class action under 42 U.S.C. §1983 claiming, that they had been unconstitutionally denied parole by the Board of Paroles." *Id*.    In like manner Burnett asserts that "If the board determined that the prisoner was not a good risk for release, it denied parole, inform[ing] the prisoner *why release was deferred and made recommendations designed to help correct any deficiencies observed.*" *Id.* In its opinion on the case, the Supreme Court noted, although there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence . . .  There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* It went on to state: "The

14

Nebraska procedure affords an opportunity to be heard, and when parole is denied `it informs the inmate in what respects he falls short in qualifying for parole; this affords the process that is due under these circumstances, the Constitution does not require more." Id. Burnett envisions from this Honorable Court nothing more, nothing less –than adequate Constitutional plenary comity in accord with the Supreme Court's views on true justice. Change for Alabama is a necessity under *Wilkinson*, *supra*.

DEFENDANTS' stated at page 2, §3 that:

>    3). "A copy of the Board's current (2004) Operating Procedures is attached herein. The pertinent parts were quoted in the original Special Report. Section 15-22-24(a), Ala.Code, grants the Board **total discretion** to determine whether and when parole is appropriate. Section 15-22-24(e) authorizes the Board to adopt scheduling guidelines." *Id*.

(Emphasis-added). Plaintiff Burnett's claim at One, in the original COMPLAINT was in fact that the Board Defendants didn't exercise their "discretion at all," they merely went through the political –procedural hoops; the issue is not *whether vel non*-the Board has total discretion, but whether Burnett's issue remains dispositive, in accord with the "relief granted" *Wilkinson*, by the United States Supreme Court, in that the parole board "didn't exercise their discretion at all," therein, as well; all of which remains **novel** under Alabama law.

§ 9.     But for Weatherly's and Longshore's merely referencing §15-22-24(a), as to *whether and when parole is appropriate*," is irrelevant to Burnett's claim(s) before this Court; clearly this Court was able to openly discern "Burnett's claims," clearly stated in it's 4/1/08 ORDER for Defendants to have responded too, absent a[ny] sufficient "*Response*," by Defendants as directed should be cause for Compel.

Irrespective of Defendants superfluous excerpt citing §15-22-24(a), it nevertheless remains extraneous to Burnett's issues presented in the §1983 COMPLAINT -since Burnett made allegations that the parole board agents whom heard his case, in February of 2007 had in fact, at that time "participated in improprieties - respective to his parole consideration under the 640-X regulations, guidelines in effect when Burnett was convicted / sentenced in 1981"; also argued before this Honorable Court was that said parole board agents acted both "*arbitrarily and capriciously*" under the color of state law at the time said "**total discretionary function**" was allegedly to have been preformed -supposedly in a "good faith effort" whilst determining what information was reliable under the premise of "*bearing in mind that Alabama law requires the Board to afford certain individual and entitles the opportunity to express their views.*" *Id, at Weatherly's Affidavit, p. 2 -dated April 22, 2008.*

§ 10.    Burnett alleged in the original complaint, and again in his requested "*Interrogatories, Admissions*" under *DISCOVERY* (Doc. 29, 30)-that those persons "afford[ed] notice remains inapposite to State law doctrine, and those '*persons notified*'" whom actually spoke, objected to Burnett being granted parole, have been erroneously, illegally notified, *inter alia*, as challenged hereinafter, therefore DISCOVERY **must** be accorded said parties to in fact, warrant federal review, and subsequent comity.

In closing the argument on Defendants *boiler-plated defense*, Burnett respectfully points out to this Honorable Court when read in conjunction with, for brevity sake -Burnett "argument above, whereas State statute strictly speaking **absolutely prohibited Defendant S. Williams** from what occurred therein in relations to Burnett 2007 parole hearing, see said legal argument and Exhibit-10 therein, adopted hereto against Defendants unsupported §15-22-24(a) allegation -such defense is moot for Defendants V. Weatherly and R. Longshore they claim they weren't present, but moreover -especially for S. Williams whom has yet to *ANSWER*.

DEFENDANTS' stated at page 2, §4 that:

> 4).  "Copies of two prior Operating procedures are also attached hereto. The 2001 Operating procedures were amended in 2004. The 2001 Operating Procedures completely re-wrote the procedures that had been followed for nearly twenty years. *These Operating procedures were adopted in response to the litigation* leading up to *Ala. Bd. Of Pardons & Paroles vs. Brooks*, 802 So.2d 242 (Ala.Civ.App. 2001). *After the trial court's decision, the*

17

> Board recognized that its procedures needed
> to change in order to comport with the trial
> court's construction of the parole statutes.
> This *interpretation of the statute imposed*
> *significant additional burdens on the Board*
> *to ensure that victims and public officials*
> *had an adequate opportunity to communicate*
> *their views to the Board at any time the*
> *Board reviewed a file.* Most of §640-X-2-.02
> conflicted with the courts' interpretation
> of the statutes. The 2001 and 2004 Operating
> Procedures were drafted to address these
> concerns. *The change from three years to*
> *five years was drafted to specifically take*
> *into account the US Supreme Court's then-*
> *recent decision in **Garner vs. Jones**, 529*
> *U.S. 244 (2000)." Id*.

(Emphasis-added).   Burnett can only say in light of the Boards

defensive submission, as so eloquently stated above, that but for

the Boards sudden exceptional reasoning utilized in *Brooks*, in

2001 which considered "*recogniz[ing] its procedures needed to*

*change in order to comport with [a] **trial court's construction of***

***the parole statutes** . . ." id, at* Defendants Supp.Sp.Rpt. p.2,

¶4; then surely the Board shouldn't mind taking administrative

notice in 2008 under Burnett's utilization of *Wilkinson v.*

*Dotson*, progeny, hereinafter either –whereas the "*interpretation*

*by the U.S. Supreme Court*" therein stated "New York state

prisoners filed a class action §1983 alleging, *inter alia*, that

repeated    denials    of    parole    were    the    results    of

unconstitutionalities, [their denials –permitted their case(s) to

proceed on the prisoners due process, equal protection, and ex

post facto clause claim(s)"] whereas Alabama's parole board

18

guidelines, were summarily drafted primarily upon the same, if not exact guidelines from 1) New York's 2) Ohio's, 3) Pennsylvania's and 4) Michigan's, parole board procedures, thereby granting unto this Circuit a certain plausibility to judicial intervention under the auspice of the **novelty** Burnett presents to Alabama's similar likened "*unconstitutionalities*" composed herein.

§ 11.   Burnett furthermore, respectfully requests that this Circuit "*take judicial notice*" under Article II, Rule 201(d), Fed.R.Evid., of the below-styled cases promoting an application to Burnett's unique, novel first impression claims in light of these additional sister circuit holdings, along the vein of *Wilkinson*, as held: 1) In *Graziano v. Pataki*, 2006 WL 2023 the U.S. District Court case in S.D.N.Y. a §1983 suit challenging New York's *sub rosa* blanket parole denial policy; 2) In *Foster Bey v. Rubitschum*, Case No# 2:05-CV-71318-MOB-VMM October 23, 2007 the U.S. District Court case E.D. Mich., for the Southern Division, held that cumulative changes to parole eligibility regulations for Michigan's Life -sentenced prisoners violated the U.S. Constitution's ban on *ex post facto* laws; 3) In *Penn. Prison Society v. Rendall*, Case No# 1:97-CV-01731-ARC March 13, 2006 the U.S. District Court case M.D. Pa. for the Middle District of Pennsylvania held that its 1997 law created a "*significant risk*" of increasing life-prisoners' punishment in violation of the *ex*

*post facto clause*; and most significant for Burnett to birth forth is the holding of the ruling in 2005 referenced herein as 4) In *William Dotson,* and *Rogerico Johnson*, two Ohio prisoners – challenged state's parole procedures, held permitted to bring actions under 42 USCS §1983 in the U.S. District Court for the Northern District of Ohio –claiming the state's parole procedures violated the Federal Constitution, See 329 F.3d 463 (2003 FED App. 147-P) –then, this Circuit will likely conclude that its time to adjust –correct   Alabama's unwillingness to otherwise provide its citizens a[ny] remedial review of parole board decisions -even under the auspice of common law certiorari -such "current state reasoning" is nothing other than a flagrant abuse of discretion, or per se a manifest injustice towards prisoners as a whole, by the agency itself, but moreover usurpation by State Court reviewing agency decisions which often more than not:

> "1) *results in decisions that [are] contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or 2)
> resulted in decisions that [are] based on an
> unreasonable determination if the facts in light
> of the evidence presented in the State court
> proceeding."*

But for Alabama State Courts flagrant usurpation to refus[ing] to address "Parole Board decisions," along the vein argued herein this Court has both the authority and power under

§1983 to invoke upon this State -the law of the United States Supreme Court holdings, whereas most recently Judge Baschab specifically concurred, at page 2 of *Bostwick v. Ala. Bd. Of Pardon and Paroles*, 865 So.2d 1245 (Ala.Crim.App. 2003) -that: "Because of the majority appears to follow the <u>current state of the law</u>, I am **forced to concur in the result**.    However, **I also concur specifically to urge a change in the law**:

> "The Board argues, "there is no legal basis for a prisoner to seek judicial review of the Board's decision not to parole him." (Board's brief at p. 28.) Specifically, it contends that "the Alabama Legislature has given the Board of pardons and Paroles discretionary authority to decide what prisoners may be paroled, and when, and under what conditions." (Board's brief at pp. 27 -28.) Therefore, it concludes "**the decision to deny parole is not reviewable**." (Board's brief at p. 25.) For the reason set forth below, I agree that such a decision is not reviewable in a state court." **Id**.
>
> . . . .
>
> "Alabama courts have previously held that decisions that are totally discretionary are not reviewable on appeal . . . "The courts have also held that such decisions are not reviewable on appeal." **Id at pp. 2, 3**;

(Emphasis-added).         The Court in *Bostwick*, went on to state, at page four "We recognize that, in *Andrus v. Lambert*, 424

21

So.2d 5, 9 (Ala.Crim.App. 1982), this Court held: "While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz, supra*, a prisoner has the **right to be properly considered for parole**. *Christopher v. Board of Paroles, supra; Wallace v. Turner, supra,* the paroling authority **must comply with constitutional requirements and may not determine parole eligibility on improper ground**." *Id.* (Emphasis-added).

Furthermore, that Court stated at page five "Based upon the Eleventh Circuit's holdings in *Monroe* and *Sellers*, we should overrule *Andrus,* and its progeny, including *Graves v. Alabama Board of Pardons and Paroles*, 845 So.2d 1, (Ala.Crim.App. 2002); *Strong v. Alabama Board of Pardon and Paroles*, 859 So.2d 1201 (Ala.Crim.App. 2001); *Tucker v. Alabama Board of Pardon and Paroles*, 781 So.2d 358 (Ala.Crim.App. 2000); *Tedder v. Alabama Board of Pardon and Paroles*, 677 So.2d 1261 (Ala.Crim.App. 1996) and *Sloan v. Alabama Board of Pardon and Paroles*, 647 So.2d 85 (Ala.Crim.App. 1994).

**B.    Analysis of Burnett's Ex Post Facto Claim:**

**1. Ex Post Facto Standard:**

§ 12.    In respect to Defendants excerpt along the line of reasoning in *Garner v. Jones*, 529 U.S. 244 (2000), Burnett maintains as does this Circuit, that several decisions suggest

22

that challenged parole *"eligibility"* methods, policy, or procedures need not necessarily take the form of law, rule or regulation to implicate the *Ex Post Facto Clause*. *See Garner*, at 529 U.S. at 255 (opining that *ex post facto* plaintiff [need only] show that the rule [i.e., Defendants Exhibits D, E attached to Supp.Sp.Rpt.] have the *effect* of retroactively increasing [Burnett's] punishment); *United States v. Worthy*, 915 F.2d 1514, 1516 n. 7 (11th.Cir.1990)(opining that applying guideline[s] amended after the defendants were sentenced would violate the Ex Post Facto Clause with[in the confines of the holding of] *United States v. Ortiz Barrera*, 922 F.2d 664, 666 n. 4 (11th.Cir.1991)(when guideline is clear on its face *"relevant to the interpretation of preamendment guideline does not violate ex post facto clause."*), cited in *United States v. Adeleke*, 968 F.2d 1159, 1160 (11th.Cir.1992); *but see also Akins v. Snow*, 922 F.2d 1558, 1560, 1563 (11th.Cir. 1991)cert. denied, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991) (opining that the Ex Post Facto Clause "applies to a change in parole eligibility" because "parole eligibility must be considered part of any sentence. . . ."). To prove that a retroactively applicable parole board procedure violates the Ex Post Facto Clause, a prisoner must show that the challenged action "creates a significant risk of prolonging [his] incarceration." *Garner*.

In two recent opinions, one of which originated in this very district, the United States Supreme Court suggested that a retroactive amendment postponing a prisoner's initial parole eligibility date would offend the constitutional ban on ex post facto legislation. See *Garner*, 529 U.S. at 250-51 (2000); *California Dep't of Corrections v. Morales*, 514 U.S. 499, 511, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Additionally, nearly thirty years ago the Supreme Court observed that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the ex post facto clause [citations omitted] of whether it imposed a 'greater or more severe punishment than was prescribed by law at the time of the . . . offense.'" *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 663, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)(emphasis added) (quoting Rooney v. North Dakota, 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494 (1905)). That same Supreme Court cited, with apparent approval, a decision of the United States Court of Appeals for the Ninth Circuit holding that "[u]nder California law, a convicted person's eligibility for parole consideration (as opposed to parole) is part of the 'law annexed to the crime when committed' . . . and any legislative change in such eligibility which would work to a prisoner's disadvantage may not be retroactively applied." *Love v. Fitzharris*, 460 F.2d 382, 383 (9th Cir. 1972), vacated on other

the amendment [at issue] . . . create[s] a significant risk of increased punishment." *Garner*, 529 U.S. at 256. Further, such "policies and practices will indicate the manner in which [the Board] is exercising its discretion." *Id.*

§ 14.   Ex Post Facto Clause analysis also requires courts to gauge the level of discretion actually exercised by the parole board in question. For example, both *Garner*, and *Jones v. Georgia State Board of Pardons & Paroles*, 59 F.3d 1145, involved ex post facto challenges to certain parole eligibility procedures that were retroactively enforced by Georgia's State Board of Pardons & Paroles, the defendant in the instant litigation. The *Garner* court examined a Board rule that retroactively decreased the frequency, from three years to eight years, with which prisoners serving life sentences would be granted parole reconsideration hearings after an initial denial. See *Garner*, 529 U.S. at 247. In *Jones*, a Georgia inmate sought to enjoin the enforcement of a Board rule that retroactively required "Level V" offenders to serve the greater of either (1) the recommended months-to-serve from the Guidelines Grid; or (2) one-third of the court-imposed sentence of incarceration, before being eligible for parole. *59 F.3d at 1148*. Previously, only the more serious "Level VI" and "Level VII" offenders were subject to the one-third time-served requirement; "the TPM of prisoners with [Crime Severity Levels] of I through V was determined,

26

prior to any discretionary departure, solely by reference to the [Guidelines Grid]." *Id. at 1147*.

Finally, several federal decisions suggest that a challenged parole eligibility method, policy, or procedure need not necessarily take the form of a law, rule, or regulation to implicate the Ex Post Facto Clause. See, e.g., *Garner*, 529 U.S. at 255 (opining that ex post facto plaintiff must show that the rule has the effect of retroactively increasing his punishment); *Akins*, 922 F.2d at 1561 (11th.Cir.1991) (opining that the rules and regulations of the Board, a quasi-legislative entity, implicate ex post facto because they have the force and effect of law); United States ex rel. *Graham v. United States Parole Comm'n*, 629 F.2d 1040, 1043 (5th.Cir.1980) (opining that any "official post-sentence action that delays eligibility for supervised release runs afoul of the ex post facto proscription."); *Hamm v. Latessa*, 72 F.3d 947, 957 (1st.Cir.1995) (observing, in dicta, that a retroactively applicable parole policy would constitute a "law" within the meaning of the Ex Post Facto Clause if it "possess[ed] the full force and effect of law. . . ."); *Geraghty v. U.S. Parole Commission*, 579 F.2d 238, 267 (3d.Cir.1978), vacated on other grounds, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (noting that parole "guidelines" would violate ex post facto if applied in a fixed and mechanical way); *Love*, 460

27

F.2d at 385 (9th.Cir.1972) (opining that a parole board's retroactive interpretation of a parole eligibility provision was subject to ex post facto constraints because the interpretation had the effect of law); *Oglesby v. Ray*, 8 F.Supp.2d 1379, 1380 (N.D. Ga. 1998) (Thrash, J.), rev'd. on other grounds, 180 F.3d 272 (11th Cir. 1999) (applying ex post facto analysis to a retroactive parole board "policy"). Rather, as noted, ex post facto considerations apply in the parole eligibility context to any official policy or procedure that has the full force and effect of law, and whose practical implementation produces a "sufficient risk" of retroactively lengthening the inmate's period of incarceration. *Morales*, 514 U.S. at 509.

§ 15.    The Constitution provides that "no State shall . . . pass any . . . ex post facto Law . . . ." U.S. Const. art. I, 10, l. 1. At the time the Constitution was drafted, the phrase "ex post facto law" was a term of art with a well-established meaning. *See Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798). Justice Chase's opinion in *Calder v. Bull,* 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798), identified several legislative acts that clearly implicated the core concerns of the various ex post facto clauses that existed at the time of the Constitution's framing. One such legislative act he noted was: "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed"

*Id. at 390, 1 L. Ed. at 650* (opinion of Chase, J.)(emphasis in original). The Supreme Court's ex post facto rulings have been faithful to the original principle that "every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed," violates the ex post facto provision. *See Miller v. Florida*, 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987); *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Rooney v. North Dakota*, 196 U.S. 319, 324-325, 25 S.Ct. 264, 265-266, 49 L.Ed. 494 (1905); *In re Medley*, 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835 (1890); *Cummings v. Missouri*, 71 U.S. 277, 325-326, 18 L.Ed. 356, 363-364 (1867); *Calder v. Bull*, 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648, 650 (1798).

§ 16.    Before addressing the substantive issue of whether the Board's action violates the ex post facto clause, three preliminary issues must be discussed. First, are the Board's rules "*laws*" within the meaning of the ex post facto clause? Second, are parole "*investigations*" "*interviews*" "*scheduling*" considered a part of parole eligibility? Third, are the ex post facto clause's restrictions applicable to a change in parole eligibility?

Regarding the first preliminary issue, the Alabama legislature has delegated to the Board the authority to enact "rules and regulations" concerning parole §§15-22-24(a)(e), and 36, 37, Code of Alabama, 1975. This delegation mandates that the Board's rules and regulations "contain an eligibility requirement for parole which sets forth the time when the consideration for parole of inmates under the jurisdiction of the Department of Corrections shall take place and also the times at which periodic reconsideration thereafter shall take place." *See* §§15-22-26, 28, and 36.

§ 17.    Because Alabama's Legislature passed laws granting the parole board authority -to adopt, promulgate rules, regulations and guidelines at issue, these rules clearly are laws and the ex post facto clause obviously applies. The inquiry is whether the Board's rule is the equivalent of a law for ex post facto purposes. The effect of the legislature's delegation is to grant the Board quasi-legislative power. The Board's rules and regulations have the force and effect of law. Since the legislature delegated to the Board the power to enact rules and regulations concerning parole "*eligibility" and "consideration"* the rules or regulations enacted by the Board are subject to the ex post facto clause's prohibitions. Decisions in other circuits, involving similar circumstances, support this conclusion. *See Rodriguez v. United States Parole Comm'n*, 594

30

F.2d 170, 174 (7th Cir. 1979) ("This rule must be viewed as tantamount to a statute for the purpose of determining whether its application to Rodriguez runs afoul of the ex post facto clause."); *Love v. Fitzharris*, 460 F.2d 382, 385 (9th Cir. 1972), vacated, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973)(a state parole authority's change in the interpretation of a parole eligibility provision is subject to ex post facto constraints because the agency's interpretation had the effect of law).

The second preliminary issue concerns whether parole proceedings challenged herein remain an essential part of a prisoner's parole "*eligibility*," and if so, to what extent is the Federal Constitution protecting Alabama inmates. Under the Alabama parole system, an inmate serving a sentence for a class A felony becomes "*eligible*" for parole "*consideration*" after serving a third of his sentence or completion of 85% of his / her total sentence or fifteen (15) years of his sentence. This means that the inmate is given a parole "*consideration day, date*" for said parole hearing, and the Board then determines if he is suitable for release based on a number of factors. If the inmate is denied parole at this initial hearing the Board schedules a parole reconsideration hearing at a later date. If the inmate is denied parole at the consideration hearing, the Board schedules the inmate for another reconsideration hearing

at a later date. Since the Board is required to hold, have some type of parole consideration investigation hearing before granting parole, an inmate is effectively ineligible for parole awaiting the parole reconsideration hearing, date. Because an inmate in Alabama cannot be lawfully paroled without the above mentioned parole considerations being fulfilled, the above stated stages must be considered an essential part of parole "*eligibility*" thence parole "*consideration*" can be in fact, lawfully effectuated.

The conclusion that a parole consideration hearing is an essential part of parole eligibility under Alabama's parole system is supported by the language of the statute delegating to the Board the power to enact rules and regulations concerning parole. Alabama's statute §15-22-28(a) provides that "it *shall* be the duty of the Board of Pardon and Paroles, upon its own initiative, to make an investigation of any and all prisoners confined in the jails and prisons of the state with a view of determining the feasibility of releasing the prisoners on parole and effecting reclamation," such rules and regulations promulgating "*eligibility*" requirement for parole which set forth the time when the initial "*consideration*" for parole of inmates . . . take(s) place and also the times at which periodic reconsideration thereafter shall take place, under 640-X-.02(1)(Scheduling Case for Parole); 640-X-2.03(Pre-Parole Inmate

Interviews)-when coupled with for comparative purposes herein 640-X-3.02(Parole Review Worksheet); 640-X-.03(Scale for Parole Calendar Dates); 640-X-3.04(Interview / File Review Worksheet) - provides this Circuit with the "*facts*" sufficient for Burnett's prospective relief requested concerning constitutional parole consideration, and Alabama's lack of exercising said statutory duties.   The language, above indicates that Alabama Legislature considers   a   parolee's   "*eligibility*"   and   subsequent "*consideration*" an essential and important part of the parole process, establishing a colorable claim under the *Wilkinson*, progeny, *inter alia*.

§ 18.   Burnett maintains, and avers in regards to, directly controverting Defendant's Weatherly's and Longshore's mere allegation, at ¶ 2, of the "*Supp.Sp.Rpt.*" that Article I, 10 of the U.S. Constitution prohibits the states from passing any "ex post facto law, so much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found twice in the Constitution." *Kring v. Missouri*, 107 U.S. 221, 227, 27 L.Ed. 506, 2 S.Ct. 443 (1883); which ultimately forbids Congress and States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes   additional   punishment   to   that   then   prescribed." *Cummings v. Missouri*, 4 Wall 277, 325-326, 18 L.Ed. 356 (1867). See *Lindsey v Washington*, 301 U.S. 397, 401, 81 L.Ed. 1182, 57

33

S.Ct. 797 (1937); *Rooney v North Dakota*, 196 U.S. 319, 324-325, 49 L.Ed. 494, 25 S.Ct. 264 (1905); *In re Medley*, 134 U.S. 160, 171, 33 L.Ed. 835, 10 S.Ct. 384 (1980); *Calder v Bull*, 3 Dall 386, 390, 1 L.Ed. 648 (1798)("The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" after the fact. *Calder*, at 397, 1 L.Ed. 648 (Paterson, J.). See also *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810)("An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed")).

Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *Dobbert, supra; Kring v. Missouri*, 107 U.S. 221, 229, 27 L.Ed. 506, 2 S.Ct. 443 (1883); *Calder v. Bull*, supra, at 387, 1 L.Ed. 648.    The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.    *Malloy v. South Carolina*, 237 U.S. 180, 183, 59 L.Ed. 905, 35 S.Ct. 507 (1915); *Kring v. Missouri*, supra, at 229, 27 L.Ed. 506, 2 S.Ct. 443; *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810); *Calder v. Bull*, supra, at 395, 396 1 L.Ed. 648 (Paterson, J.); the Federalist No. 44 (J. Madison), No. 84 (A. Hamilton).

The *Ex Post Facto Clause* is directed at laws that "retroactively alter the definition of crimes or increase the

punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L.Ed.2d 30 (1990). In *California Department of Corrections v. Morales,* the Supreme Court rejected the argument that the *Ex Post Facto Clause* prohibits "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Instead, the Court held that the clause forbids only those retroactively applied laws that "**produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes**." Id. At 509.

Burnett maintains prior to the Defendants amendatory enactment of post 2002 -2004 guidelines, many prisoners sentenced to "*Life,*" under Alabama's guidelines granting unto most, if not all "violent crimes" an incentive to rehabilitate themselves, rewarding with potentiality for discretionary parole, for example as stated in 640-X-2-.02 (Scheduling Cases for Parole Consideration) -inclusive to pre -guidelines section "(3) On cases committed on or after May 19, 1980, as-applied to Burnett," the Board used guidelines established prior to these two challenged amendments 1) 2002 amendment (increasing setting off inmates for parole review from three (3) years to five (5) before next parole consideration); and 2) 2004 amendment (process for re-examination by staff -within eighteen (18) of next eligibility

for parole consideration); for Burnett's initial parole calendar
date. The pre- 2002, 2004 guidelines took into account <u>past</u>
<u>criminal record, pattern and nature (severity) of present</u>
<u>offense, and the community attitude toward the offender</u>.

Retrospectively looking to the effects of the Board's 640-
X's guidelines providing parole eligibility, and considerations
to Lifers after serving one-third of the total term or ten years
whichever is less and only being set-off in three year increments
-unlike the 2002 and 2004 amendments cumulatively setting off
Burnett, now in increments of five years; additionally said
enactments mandate the initial parole eligibility, consideration
date shall be set in conjunction with the inmate's completion of
85 (eighty-five) per cent of his or her total sentence or 15
(fifteen) years, whichever is less, see Defendants' Exhibit-D
page 3 subsection 7 (Article I intake).

Taken as a whole, permitting only paper reviews of files -
instead of in-person hearings and eliminating *written reasons for
denials* by declaring such reviews to not be "decisions" of the
Board to whereas one provides a right to review in hopes of
correcting his problems, wrongs as intended for being imprisoned
after being denied on such information in said files -records,
than no judicial review is necessary. This Court only has to look
to the second prong, under *California Department of Corrections
v. Morales*, [514 U.S. 499] (1995) and *Garner v. Jones*, [529 U.S.

244] (2000) to configure or wiggle sufficient room for discerning Burnett's "*disadvantage*" on a case-by-case basis meeting the threshold requirement for public safety on Alabama's overreaching parole factors exposing Burnett to an ex post facto violation upon these Defendants relying on language in lieu of its prior "factors counseling in favor of discretionary release," standard.

Notwithstanding the *Jones*, and *Morales* determinations, as requested by Burnett challenging the amended "*Articles*," Burnett suggests, requests that this Court look at the "*practical implementations*" of the 2002 and 2004 parole board changes in the aggregate to determine the risks of prolonged incarceration as being "*significant.*"     This Court, can ground its ensuing analysis in the substantive standard(s) governing Alabama's paroles -Alabama's §15-22-26 "No prisoner shall be released on parole as a reward for good conduct . . . but only if the Board of Pardon and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his *release is not incompatible with the welfare of society* . . ." *Id.* Also, §15-22-28(d) "No prisoner shall be released on parole expect by a majority vote of the board . . ." and subsection (e), *supra*, that "The board shall not grant a parole to any prisoner who has not served at least one third or 10 years of his sentence, whichever is the lesser . . ." *Id.*     *See* Burnett's attached *Affidavit*

supporting this Response opposing Defendants overall boiler-
plated defense to a plausible ex post facto violation, given the
fact that the Defendants have "failed to address, or otherwise
'refute Burnett's colorable claim of said violation,'" as so
ORDERED (4/01/08) by this Court on April 1st, 2008; i.e., **"shall
file a supplemental to their special report which**: . . . (1)
Addresses Plaintiff's claims . . . (iii) the parole decision
issued in 2007 violated the Ex Post Facto Clause as it was based
on rules/regulations adopted after Plaintiff's conviction and
sentence; and 2). Contains affidavits and copies of all relevant
rules/regulations relevant to Plaintiff's claims for relief." *Id*.
Defendants have not met that burden, therefore Burnett is duly
entitled to, at best a "waiver to said affirmative defense,"
(relative to the *Ex post facto clause violation)* as so stated,
understood by Burnett, from this Court's ORDER *April 24, 2008* –
that Plaintiff "**shall file a response to the special report as
supplemented**, on or before May 29[th,] 2008. Nowhere in Defendants
"Supp.Sp.Rpt." has the ex post facto claim been lawfully
contested.

DEFENDANTS' stated at page 3 -5 at §§5 -7 that:

> 5). "The only copy counsel has of the earlier
> procedures is the 1986 edition. The
> pertinent provision was adopted at least two
> years earlier. The pertinent provision was
> adopted at least two years earlier.
> *Plaintiff relies on §640-X-2-.02(3) of these*
> *guidelines, which called for further*

38

consideration to be scheduled within three
years after denial." *Id*.

6). "The pertinent difference is that, *from the
early 1980's until adoption of the new
Operating Procedures, the Board scheduled
further consideration within three after
parole was denied; the Board now schedules
further consideration within five years
after parole is denied . . ." Id.*

7). "The Operating Procedures that were adopted
after Burnett's conviction *do not materially
increase the likelihood that he will endure
greater punishment than he would have
endured otherwise. As noted in the Board
members affidavits . . ." Id.*

(Emphasis-added). Burnett maintains, inapposite to the

Defendants "*antiquated reasons*" which to date have been

unconstitutionally "shielding from this Court, it's ability to

purge Alabama parole board's usurpation of Legislatives intent,"

until the recent release of *Wilkinson*, all of which Alabama

strenuously attempted, alongside other States to oppose by

filing an *Amici Curiae* brief before the U.S. Supreme Court at

2004 WL 1636445 (U.S.) pursuant to Supreme Court Rule 37.4

Burnett avers that at the time of the crime, in 1981 -part of

the proscribed punishment for said "conviction to said offense,"

likewise encompassed a prescribed "*sentencing*" stricture

entailing the 640-X guidelines in effect, at that time, granting

unto Burnett the provisional i) *parole eligibility date; ii)*

*parole consideration date* inclusive to, but not limited to iii)

*three year intervals,* for parole consideration(s) in the event

"denials were assigned as part of his prescribed punishment" by the parole board Defendants procedural process; what else could Burnett expect to adhere too? Indisputable to the "*facts*" of this case, which remain indistinguishable from the "*facts*" of *Wilkinson's* progeny as far as the issues at hand, Alabama's parole board process invites juridical intervention –due to inadequacies of the Board's ineptness to uniformly apply the 640-X guidelines to Burnett. However due to the gateway strictures of *Wilkinson*; *Greenholtz*; *Weaver*, *inter alia,* this Circuit now has before it a unique **novel claim** for review.

§ 19.    Burnett requests that this Court "*take judicial notice*" of the above mentioned cases, inclusive to adopting by reference the "*facts*" in the attached "Affidavit," opposing Defendants mere allegations in their Supp.Sp.Rpt, at pp. 3 -4, §§5 -7, *supra*.

DEFENDANTS' stated at page 4 at 8 that:

   8).   "This report addresses the three issues the Court directed defendants to expand upon." *Id*.

§ 20.    Burnett responds that although Defendants have in fact, "styled this instant pleading," as a Supplemental Special Report," Burnett objects to the avoidance in their April 22, 2008 answers, which still fails to address, as ORDERED on April 1st, 2008 "Plaintiff's claims that . . . (ii) the parole board members acted in violation of his *equal protection rights when it denied him parole in 2007;* and *(iii) the parole decision issued in 2007*

40

*violated the Ex Post Facto Clause as it was based on rules /
regulations adopted after Plaintiff's conviction and sentence;"*
*Id.* Absent specifically addressing said evidentiary questions -as
challenged by Burnett, the Defendants continued excuses utilized
above, simply won't suffice this Court's earlier "*directives to
address the above,*" thereby still attempting to avoid bringing
Alabama inmates parole process into the 21$^{st\cdot}$ Century congruent
with other leading States, such as New York, Pennsylvania, Ohio
and even the motor city Michigan has adopted, changed its parole
procedures affording inmates Constitutional protections for both
(i) *eligibility* (ii) *consideration* as keenly articulated in
*Wilkinson*, or traverse a valid, facial defense to Burnett's
claims. The Supp.Sp.Rpt remains inadequate as responded too.

Nowhere in the Supp.Sp.Rpt have the Defendants properly
responded to this Courts order (4/01/08) cause for Compel.

§ 21.    As the plaintiff, Burnett avers contrary to the
allegation herein -"these Defendants have not addressed all three
claims, see subsections "(ii) and (iii) of Court ORDER 4/01/08
are missing; therefore Burnett's "*facts*" remain both uncontested
and unanswered before this Court, in the event that this Circuit
takes into consideration the above-cited **novel** issues in accord
with the U.S. Supreme Court holdings inapposite to the Alabama
Pardon and Paroles current amended "Articles" which at present,

effect Burnett's substantive equal protection and due process rights.

DEFENDANTS' stated at page 5 at 9 that:

> 9). "Defendants assert that there is no
> genuine issue as to any material fact,
> and that they are entitled to judgment
> as a matter of law." Id.

§ 22.    Burnett asserts, as this Court ORDERED on February 11th, 2008 at page 2, §3 in pertinent part: "No motion for summary judgment, motion to dismiss or any other dispositive motions addressed to the complaint be filed by any party without permission of the court. If any pleading . . . is sent to the court, the court shall not file or **otherwise treat the pleading as a dispositive motion until and unless further order of the court**." Id. Thus, this Court aught to deny the relief requested at this juncture, until Burnett receives full DISCOVERY from Defendants, separately, severally as defined in Documents 29, 30, cf. ORDER, dated April 24TH. 2008.

In closing, Burnett requests, and adopts in toto -the attached "Memorandum In Support," of this Response, to oppose Defendants "Answer" dated, filed March 25th. 2008 -which this Court acted sua sponte on April 24, 2008 -stated: "The Magistrate Judge has reviewed the answer, special report, supplemental special report, and supporting evidentiary materials filed by Defendants (Doc.23, 36) and determined that Plaintiff must file a response in opposition to such pleadings."

*Id.* Burnett has attempted too "respond accordingly" as ordered, and does so out of respect to comply, but requests, in the absence of court ordered discovery, that this Court allow Burnett to preserve filing an amendment, supplement to this instant response upon receipt of full discovery, and time to reply to Defendants (i) *Interrogatories* and (ii) *Admissions* before a[ny] adjudications can be properly effectuated by this Court.

WHEREFORE PREMISES SHOWN, above, Burnett request that this Court rule accordingly in accordance with the objections herein, taking into account the absence of DISCOVERY yet received, and replied too, thereby hereinafter affording all parties comity.

Done so this 20 th day of X may , 2008.

Respectfully Submitted,

*Bernies Burnett*
BERNIES BURNETT, # 132146
LIMESTONE      FACILITY
28779 NICK DAVIS ROAD
HARVEST, ALABAMA
35749-7009

*Shirley S Moore*
06-14-09

43

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have served a true and correct copy of the RESPONSE TO THE DEFENDANTS SPECIAL REPORT AS SUPPLEMENTED upon said Defendants, placing said same in the United States Mail, properly addressed, postage prepaid by means of Certified Mail, Receipt Requested, upon delivery, service to invoke the time certain for answering, as follows:

1)    Defendants Williams, Weatherly, Longshore et. al.,
      C/O Chief Counsel Honorable Hugh Davis
      Attorney for Alabama Pardon & Paroles
      301 South Ripley Street
      Post Office Box #302405
      Montgomery, Alabama 36130

Done so this 20th day of May, 2008.

                                    Respectfully Submitted,

                                    Bernies Burnett
                                    BERNIES BURNETT, # 132146
                                    LIMESTONE        FACILITY
                                    28779 NICK DAVIS ROAD
                                    HARVEST, ALABAMA
                                    35749-7009

HERBERT BURNETT, #132116
1273 STATE LEWIS ROAD
HARVEST, ALABAMA 35749

This correspondence is forwarded from
an Alabama State Prision. The contents
have not been evaluated, and the Alabama
Department of Corrections in not
responsible for the substance or content
of the enclosed communication

Re: United V. D.
WKW

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
ALABAMA, NORTHERN DIVISION
Attention: Honorable D. Hackett, Clerk
POST OFFICE BOX# 711
MONTGOMERY, ALABAMA
36101-0711

**LEGAL MAIL
CORRESPONDEN**



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Bernies Burnett, #132146                *

      Plaintiff,                       *

Vs.                                     *         **2:08-CV-22-WKW**

                                       *

Alabama Pardon & Paroles et. al.,      *

      Defendants.                      *

## AFFIDAVIT OF BERNIES BURNETT
## IN SUPPORT OF RESPONSE TO DEFENDANTS
## SPECIAL SUPPLEMENTAL REPORT

**STATE OF ALABAMA**      :

**LIMESTONE COUNTY**      :

Before me, the undersigned authority did appear one Bernies Burnett, #132146 whom did depose and state under the penalty of perjury the foregoing attestations:

1) My name is Bernies Burnett, I am an incarcerated convict at Limestone Correctional Facility, I am over the age of nineteen (19) years and remain competent to execute this affidavit, which is based upon both, personal and first hand knowledge of facts surrounding the §1983 Complaint, and subsequent events thereinafter.

2) I am acting in pro per, and have since the inception of said complaint, and will remain as such at all times relevant

1

hereinafter, until this Court ORDERS otherwise, per se such as representation of, for class certification by Counsel.

3) I sued Defendant's Williams, Weatherly and Longshore in their specific capacities, for both "*declaratory and prospective injunctive relief*" while said parties were acting under color of state law, because of violations of Constitutional rights which a reasonable person would have known not to have subject me to, and now after Defendants limited *ANSWER* coupled with exhibits I'm asserting that "Defendant Mr. Sidney Williams" remains in default or contempt as exposed to me in Defendants exhibited Affidavit.

4. I assert, aver that the specific "*facts enumerated in the attached Response, as well pleaded therein,*" are true and correct to the best of my knowledge, information and belief relating to proving Burnett's claims, elements underlining the three (3) succinct violations of Constitutional rights, subsequently reviewable and under scrutiny by the terms, definition, confines of §1983 strictures.

5. I assert, aver that the specific "*facts enumerated in the attached Memorandum,*" remain relevant to my federally protected constitutional rights -which have been flagrantly usurped by the above named Defendants, and others yet approved to prosecute.

6. I have reviewed the Defendant's Answer, & Special Supplemental Report" in this matter, I have personal, first hand knowledge of the facts surrounding Defendant's unsupported

2

probability of events, and antiquated theories of administrative laws which remain in contradiction to the record proper, transcripts, or tape recordings to which Burnett overall objects but cannot at this juncture specific point this Magistrate too, because Defendants failed to afford both this Court, and Burnett with said specific "documents" in their answer -inapposite to this Courts April 24th, 2008 ORDER otherwise, Burnett will now attempt to secure said documents, records within the strictures of permissible limited DISCOVERY for the most part, due to Defendants limited insolence to disclose timely the answers to Burnett's *Interrogatories,* Admissions which were due before this Court on May 8th, 2008, by Defendants according too, but not limited to *Fed.R.Civ.P., 26(b)(1 -2); 33(b)(2),* cause for COMPEL by the Court *pursuant to Rule 37 et. seq.*

7.    I adopt by specific reference, in toto, the coupled "*Response As Ordered On 4/24/08 To The Defendants Special Report As Supplemented Inapposite To Wynne's, Weatherly's And Longshore's Deficient Answer & Affidavits,*" coupled to, attached hereinafter opposing Defendants boiler-plated Answer.

8.    Absent the Defendant submitting to this Courts January 29th, 2008 ORDER, stating in pertinent part, at page 1, ¶ 2, "A written report be filed with the court and a copy served upon Plaintiff within forty (40) days of the date of this order. **The report must contain the *sworn statements of all person having knowledge of the***

3

**subject matter of the complaint. In these statements, the defendants must address the plaintiffs claims** . . . Where the Plaintiff's claims or defendants' defenses relate to or involve the application of administrative rules, regulations or guidelines the written report **shall** include copies of all such applicable administrative rules, regulations or guidelines. **In addressing the claims presented by Plaintiff, Defendants shall furnish copies of all documents, records and regulations relevant to Plaintiffs claims for relief.**" Id. at this Courts ORDER 2/11/08, thus "Defendants Special Report" remains wholly deficient, denying "evidence," and in response to Defendants deficiency Burnett filed along with DISCOVERY motions, his "Motion To Compel And Or In The Alternative Issue Show Cause Order," which this Court acted upon, by issuing another ORDER April 1st· 2008 directing Defendants to file on or before April 30, 2008 their "Supp.Sp.Rpt." along with "Affidavits" to support their position(s) –to date none of the Defendants affidavits comport with Fed.R.Civ.P., Rule 56(e), cause to be adjudicated as inadmissible for evidentiary purposes.

9.   As maintained, and specifically adopted by the Magistrate in the ORDER (04/01/08) stated: "Upon consideration of Defendants' written report filed March 25, 2008, it is ORDERED that on or before April 30, 2008, the parole defendants shall file a supplemental to their special report which: . . ." Id. [Having Conditions styled therein, relevant to forthcoming objections]

4

absent disclosure from Defendants -Burnett is unable to formulate a legal Reply / Response with Affidavit's to contradict Defendants' 1st Answer (3/25/08) and likewise Defendants' 2nd. Answer styled "Supp.Sp.Rpt." (4/22/08) currently before this Court -absent allowance for Burnett to have had received discovery, as requested, and duly ORDERED by this Court on 4/01/08.

Sworn to and Subscribed heretofore this X $\underline{20th}$ day of X $\underline{May}$, 2008.

[S.E.A.L.]

NOTARY PUBLIC, AT LARGE:

BERNIES BURNETT, #132146
LIMESTONE C.F. * K-Dorm
28779  NICK  DAVIS  ROAD
HARVEST, ALABAMA 35749

Commission Expires: X $\underline{06-14-09}$

5