**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

BERNIES Burnett, #182262

      Plaintiff,

Vs.                              *    **2:08-CV-WKW**

Alabama Pardon & Paroles et. al.,  *

      Defendants.           *

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S COMPLAINT PLACING DEFENDANTS ANSWERS / AFFIDAVIT IN CONTROVERSY

COME NOW Bernies Burnett (hereinafter "BURNETT") moves this Honorable Court to respectfully review as shown upon this Court as follows:

First, Defendants answered collectively, so Burnett more than likely would assume that, above as received by Burnett on or about (i) March 25, 2008, and (ii) April 22, 2008 will necessarily be responded to accordingly, throughout as answered:

§ 1.     Burnett maintains, and replies as does the Eleventh Circuit -that the "*Eleventh Amendment,*" only bars suit(s) directly against a **state** or its **agency**, see *Papasan v. Allian*, 478 U.S. 265 (1986); *Pennhurst State School & Hosp. V. Halderman*, 465 U.S. 89 (1984), thus since Burnett is suing individual defendants, and not the state, or the agency itself under §1983, only those "*persons,*" who Burnett stated in this instant action which "*subjects or*

causes to be subjected," the deprivation of his Constitutional
rights are personally actionable for their individual wrongdoings.

## A.   **Eleventh Amendment Immunity**:

§ 2.       The Eleventh Amendment to the Constitution of the
United States provides that, "[t]he Judicial power of the United
States shall not be construed to extend to any suit in law or
equity, commenced or prosecuted against one of the United States
by Citizens of another State, or by Citizens or Subjects of any
Foreign State."

> While the Amendment by its terms does not bar suits against a
> State by its own citizens, this Court has consistently held
> that an unconsenting State is immune from suits brought in
> federal court by her own citizens as well as by citizens of
> another State. Edelman v. Jordan, 415 U.S. 651, 663-64, 94 S.
> Ct. 1347, 39 L.Ed.2d 662 (1974). "Thus the rule has evolved
> that a suit by private parties seeking to impose a liability
> which must be paid from public funds in a state treasury is
> barred by the Eleventh Amendment." Id. at 664. The immunity
> provided to the states by the Eleventh Amendment also
> attaches to and protects individuals who are sued in their
> official capacities as well as state agencies and entities.
> This is because a suit against a state employee in his
> official capacity or against a state agency is in essence a
> suit against the state, as any monetary judgment obtained
> would be satisfied from state funds. Will v. Michigan Dep't
> of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45
> (1989).

Since Burnett is neither suing the State as a Defendant, nor
is he requesting or asking for any money damages against these
three (3) named specific individual Defendants the State has "no
real interest," see Hoffman v. Connecticut Income Department, 492
U.S. 96, 106 L.Ed.2d 76, 109 S.Ct. 2818 (1989); likewise Burnett
avers that these three (3) Defendants are not being sued as

governmental officials in their official capacity because such would actually be a suit against the governing entity itself. See *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), notwithstanding the Eleventh Amendment interpretation which would then, bar such instant action, absent Defendants S. Williams, V. Weatherly and R. Longshore fitting such criterion -the Eleventh Amendment immunity is herein inapplicable to said remaining defendants -as in artfully raised by Defendants.

"Whether a defendant is an 'arm of the state' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003). In making this determination, the Court considers four factors: (1) how the entity is defined by state law, (2) the State's degree of control over the entity, (3) the source of the entity's funding, and (4) who is responsible for judgments against the entity. Id., absent the Defendants asserting such, said affirmative defense is also deemed "waived."

In the landmark decision *Ex parte Young*, 209 U.S. 123, 52 L.Ed. 714, 28 S.Ct. 441 (1908), the Supreme Court recognized an exception to the general rule that a state official, acting in his official capacity, is immune from suit. The *Young* court held that the Eleventh Amendment does not prevent federal courts from

3

granting prospective injunctive relief to prevent a continuing violation of federal law by a state official. Id. at 155-56, 159. In *Eldeman v. Jordan*, the Supreme Court interpreted *Young* expansively, holding that a federal court may impose an injunction that governs the official's future conduct but not one that awards retroactive monetary relief. 415 U.S. 651, 664-66, 39 L. Ed.2d 662, 94 S.Ct. 1347 (1974).

Simply put, the Eleventh Amendment does not bar claims for equitable relief against the individual Defendants in their official capacities, as long as those claims are only for prospective injunctive relief. *Ex Parte Young*, *supra*. *Young* and its progeny provide for prospective injunctive relief for the ongoing violations of federal law, and Burnett requested for "*prospective declaratory and injunctive relief,*" against further, future discriminatory actions. Therefore, the Eleventh Amendment as to the individual Defendants does not bar these claims in their capacity.    Moreover, the Eleventh Amendment sovereign immunity does not apply to bar relief under 1983 when a state official is sued for prospective injunctive relief to "*end a continuing violation of federal law,*" as herein alleged, requested by Burnett. *See Seminole Tribe of Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Although "*neither a State nor its official acting in their official capacities are 'persons' under 1983,*" *Will v. Michigan Dept. of State*

4

*Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), a state official sued for prospective injunctive relief in his or her official capacity is a person under 1983, *see id.* at 71 n.10, as are state officials sued in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), thus Burnett's named Defendants having not properly plead said immunity doctrine defense under *Will v. Michigan Dept. of State Police*, progeny their application remains insufficient.

Moreover this Court well knows better than I that State officials acting in their individual capacities are not protected by the sovereign immunity conferred by the Eleventh Amendment. *See Harden v. Adams*, 760 F.2d 1158, 1164 (11th Cir. 1985). The Eleventh Amendment also does not bar claims (for monetary or injunctive relief) against the individual Defendants in their individual capacities. *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992). Thus Burnett's specific named Defendants: "1) Sidney Williams, 2) Velinda Weatherly and 3) Robert Longshore as mentioned are not entitled to the "Eleventh Amendment" immunity, as erroneously mentioned in their *ANSWER*, *see Adams*, *supra*.

"Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense "*when asserted by the named Defendants*" in the lawsuit.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting GJR Invs.,

Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998)). "The qualified immunity defense may be raised and addressed on a motion to dismiss, and will be granted if the complaint 'fails to allege the violation of a clearly established constitutional right.'" *Smith v. Siegelman*, 322 F.3d 1290, 1294 (11th Cir. 2003) (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)), however this Court in it's February 11, 2008 ORDER specifically directed, that before parties could primarily file a[ny] summary judgment / or motions to dismiss -this Court directed that said parties were required, first, to seek permission for filing such at the initial stage, the Defendants have "yet" to seek such permission thus Burnett requests that this Court enforce its issued directives against the Defendants for their disobedience to have first sought "for leave, permission for such, in the interests of federal comity."

Burnett maintains that for the Defendants "to [have] received qualified immunity, those official's must first prove [they] were acting within the scope of discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). "[A] government official [must] prove that he [or her] acted within his [or her] discretionary authority by showing [the] 'objective circumstances which would compel the conclusion that his [or her] actions were undertaken pursuant to the performance of his [or her] duties and

6

within the scope of his authority.'" *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). At all times relevant to this issue, Burnett asserts, maintains that said Defendants usurped their performance of duties and acted outside the scope of his [or her] authority and as such acted without his [or her] discretionary authority.

Not only have Defendants S. Williams, V. Weatherly and R. Longshore failed to properly assert such defense, all have failed to place any acceptable attestations in the "record proper" to support their *ANSWER.*

Only when a Defendant "[E]stablishes that he was acting within his [or her] discretionary authority, then and only then would the burden shift to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002), Burnett maintains, although the Defendants have failed to meet that stricture, for the sake of argument Burnett asserts the that such has not been asserted by the remaining named Defendants. In order to decide if the plaintiff is required to meet the shifted burden, it will be necessary for the court to apply a two-part test. First the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003). In the event the court finds that the allegations do state

a constitutional violation, the court must go on to determine "whether the right was clearly established." Id. at 1295.

Since Burnett's "suit" is in fact against specific named defendants and not against the "State" itself, nor did Burnett seek a[ny] monetary relief, but only declaratory and future injunctive relief, thus the Eleventh Amendment proscriptions as applied to this instant case are not applicable to Burnett's distinguishable §1983 claims.

Burnett respectfully asserts, maintains that *Young supra*, and its progeny provide for prospective injunctive relief for ongoing violations of federal law, worthy of this Court's judicial scrutiny under the United Supreme Court's holding in *Wilkinson v. Dotson*, 544 U.S. 74, 161 L.Ed.2d 253, 125 S.Ct. 1242 (2005), *inter alia*.

In the present case, Burnett's Complaint sought a simply declaration that certain acts by specific named Defendants be ruled unconstitutional and unlawful and asked the Court to enjoin such practices and take remedial action to ensure that Defendants 1) S. Williams, 2) V. Weatherly and 3) R. Longshore comply with all such laws in the future. As such, the *Young* exception applies therefore no rational basis remains for dismissal of said Defendants. Accordingly, any relief afforded these three (3) Defendants based on the Eleventh Amendment should be denied. *See Ex Parte Young*, 209 U.S. at 159-160; *Sandoval v. Hagan*, 197 F.3d.

8

484, 492 (11th Cir. 1999); *Ocean v. Kearney*, 123 F. Supp.2d 618, 621 (S.D. Fla. 2000).

## B.   **Defendants**:

§ 3.        With  respects  to  the  remaining  Defendants  1)  S. Williams,  2)  V.  Weatherly  and  3)  R.  Longshore  as  specifically named  in  this  Federal  action  -the  Supreme  Court  has  expressly recognized  that  the  Eleventh  Amendment  is  not  limited  in  its application  to  suits  against  a  state,  as  allegedly  asserted  by Defendants  documented  *ANSWER*  -but  rather  that  its  application  is to  be  determined  by  the  essential  nature  and  effect  of  the  suit  in question, thus Burnett maintains:

Although  an  earlier  Supreme  Court  case  took  an  opposite view,  the  following  Supreme  Court  decisions  have  expressly recognized  that  the  Federal  Constitution's  Eleventh  Amendment  is not  limited  in  its  application  to  suits  against  a  state  as  a  named defendant,  but  rather that its application should be determined by the  essential  nature  and  effect  of  the  suit  in  question:  "1) *Poindexter v. Greenhow* (1884) 114 U.S. 270, 29 L.Ed. 185, S.Ct. 903; 2) *Pennoyer v. McConnaughy* (1891) 140 U.S. 1, 35 L.Ed. 363, 11  S.Ct.  699;  3)  *Scheuer  v.   Rhodes*  (1974)  416  U.S.  232,  40 L.Ed.2d 90, 94 S.Ct. 1683, 71 Ohio Ops 2d 474; and 4) *Ex parte Young*, (1908) 209 U.S. 123, 52 L.Ed. 714, 29 S.Ct. 441 as follows:

## 1.   **Suit(s) held not precluded by Eleventh Amendment**:

9

1).        "It was observed by the Supreme Court in *Poindexter v. Greenhow* [114 U.S. 270] -that the question whether a suit is within the prohibition of the Eleventh Amendment is not always determined by reference to the nominal parties on the record -the prohibition must be determined by a consideration of the nature of the case as presented on the record and that the Eleventh Amendment is to be substantially applied in furtherance of its intention, and not evaded by technical and trivial subtleties -as attempted by these Defendants hereinafter, Burnett requests that this Court apply the forgoing reasoning under the holdings of this Circuit's progenies.

The Supreme Court held, under the circumstances of the following cases, that the Federal Constitution's Eleventh Amendment did not preclude a federal action against state officials, in that the state was not a real or substantial party in interest in the action:

Also announced by the Supreme Court in *Poindexter*, *supra.*, was an additional case which arose in a state court as-applied in the companion cases of *White v. Greenhow* (1885) 114 U.S. 307, 29 L.Ed. 199, 5 S.Ct. 923; and *Allen v. Baltimore & O. R. Co.* (1885) 114 U.S. 311, 29 L.Ed. 200, 5 S.Ct. 925 - both of which arose in the federal courts -it was held that actions against state officials who had acted pursuant to a state statute which violated the Federal Constitution were not precluded by the Eleventh Amendment. (Emphasis-added).        In all three cases, it was alleged that the statute, which provided that certain bond coupons would not be accepted by the

state as a means of paying taxes, violated the Federal Constitution's contract clause (Art I, 10, cl. 1). Addressing the contention that the Eleventh Amendment barred such suits, the court noted that the suits (1) had not named the state as a party; (2) were not directly upon a contract between bondholders and the state; (3) had not been brought for the purpose of controlling the discretion of executive officers or administering funds actually in the public treasury; (4) were not attempts to compel officers of the state to do the acts which constituted the performance of a contract by the state; and (5) were not cases in which the state was a necessary party. The Supreme Court further stated that suits between individuals, unless the state was a party in a substantial sense, were untouched by the Eleventh Amendment, no matter how much the determination of such suits might accidentally and consequentially affect the interests of a state or the operation of its government. " *Id.*;

2). "In *Pennoyer v. McConnaughy* [140 U.S. 1] -a case in which a citizen of one state brought an action in Federal Circuit Court against another state's board of land commissioners, which board had as members the state's governor, secretary of state, and treasurer, the Supreme Court, affirming the Circuit Court's judgment, held that such action was not a suit against the state within the meaning of the Eleventh Amendment. The state in which the citizen's land was located had enacted a statute, which authorized the board of land commissioners to cancel its certificates of sale with respect to parcels of land owned by the state. One of the canceled certificates had been

11

issued to a prior owner of the land held by the
citizen at the time of the statute's enactment. In
filing his Circuit Court action against the board of
land commissioners, the citizen contended that such
cancellation violated the Federal Constitution's
contracts clause. Holding that the Eleventh Amendment
did not bar such action, the court stated that it had
to be borne in mind that the suit was not against the
governor, secretary of state, and treasurer as such
officers, but against them collectively as the board
of land commissioners. Furthermore, continued the
court, the citizen did not seek any affirmative relief
against the state or any of its officers, nor did he
seek to compel the state officers to do and perform
any acts in connection with the subject matter of the
controversy requisite to complete his title to the
land.

Denying a county sheriff's petition for a writ of
habeas corpus where the sheriff had been held in
contempt by a Federal Circuit Court for refusing to
turn over to a railroad company's receiver, who had
been appointed by the Circuit Court, property upon
which the sheriff had levied while it was in the hands
of the receiver, the Supreme Court stated in *Re Tyler*
(1893) 149 U.S. 164, 37 L.Ed. 689, 13 S.Ct. 785, that,
even if the receiver's action to enjoin the sheriff
from interfering with the property were regarded as a
plenary bill in equity properly brought for the
purpose of testing the legality of state tax which the
sheriff was attempting to enforce when he levied upon
the property, such action would not constitute a suit
against the state in contravention of the Eleventh

12

Amendment. A suit was not an action against the state within the meaning of the Eleventh Amendment, said the court, where the suit-whether it sought damages, injunctive relief, or the issuance of a writ of mandamus to enforce the performance of a purely ministerial legal duty-was brought against defendants who claimed to act as officers of the state and who, under color of an unconstitutional statute, injured or wrongfully held money or property unlawfully taken on behalf of the state." *Id.*;

3). "In *Scheuer v. Rhodes* [416 U.S.232] -which involved a federal civil rights action against a state governor and other state officials, the Supreme Court stated that it was well established that the Eleventh Amendment barred suits against the state only when it was the named party, when it was the party in fact. Because the Eleventh Amendment did not in all instances bar actions for damages against state officials charged with depriving a person of a federal right under color of state law, the Federal District Court below had acted prematurely in dismissing complaints, which had been brought by personal representatives of students who had been killed on the campus of a state-controlled university, in which damages were sought under 42 U.S.C.S. §1983 against the state governor, other state officials, and members of the state National Guard, where the personal representatives alleged facts that demonstrated that they were seeking to impose individual and personal liability on the named defendants for their alleged deprivation of the students' rights under color of state law. The court observed that (1) the Eleventh

Amendment provided no shield for a state officer
confronted by a claim that the officer had deprived
another of a federal right under the color of state
law, and (2) such an officer could thus be subjected
in his person to the consequences of his individual
conduct when he acted under a state law in a manner
violative of the Federal Constitution." *Id.*;

a.  **Prospective payment or expenditure**:

i).       "The        Federal       Constitution's
Eleventh Amendment does not preclude a federal
court's imposition of monetary liability on a
state in the form of a "prospective" payment or
expenditure from state treasury funds for future
or continuing conduct in violation of federal law,
the Supreme Court has recognized." *Id.*;

ii).       "In *Milliken v. Bradley* (1977) 433 U.S.
267, 53 L.Ed.2d 745, 97 S.Ct. 2749, the Supreme
Court,   noting   that   it   had   previously
recognized that a suit for money damages against a
state was proper under the Eleventh Amendment to
the extent that such action sought the payment of
state   funds   as   a   necessary   consequence   of
prospective compliance with a substantive federal-
question   determination,   held   that   a   Federal
District   Court's   order   in   a   school   district
desegregation case, which order mandated that the
state pay one-half of the additional future costs
attributable to remedial programs directed to the
educational   components   of   reading,   teacher
training, testing, and counseling, did not violate
the Eleventh Amendment. The court said that such
order fit squarely with the prospective-compliance

14

exception to a state's Eleventh Amendment
immunity, which exception permitted federal courts
to enjoin state officials to conform their conduct
to requirements of federal law, notwithstanding a
direct and substantial impact on the state
treasury. The fact that the programs were
compensatory in nature did not change the fact
that such programs were part of a plan that
operated prospectively to bring about the delayed
benefits of a unitary school system, the court
concluded." *Id.*;

iii). "The court stated in *Hutto v. Finney*
(1978) 437 U.S. 678, 57 L.Ed.2d 522, 98 S.Ct.
2565, reh. den. 439 U.S. 1122, 59 L.Ed.2d 83, 99
S.Ct. 1035, that the line between retroactive
monetary relief against the states-which was
prohibited by the Eleventh Amendment-and
prospective relief-which the Eleventh Amendment
did not prohibit-should not be so rigid as to
defeat the effective enforcement of prospective
relief," (Emphasis-added), citing *Edelman v.
Jordan*, [415 U.S. 651] as stated in *Kentucky v.
Graham:* "that monetary relief is ancillary to
injunctive relief is not barred by the Eleventh
Amendment," and *Papasan v. Allain*, [478 U.S. 265]
"the court stated that relief that serves directly
to bring an end to a present violation of federal
law is not barred by the Eleventh Amendment, even
though accompanied by a substantial ancillary
effect on the state treasury." *Id.*;

iv). "Vacating a Federal Court of Appeals
judgment insofar as such judgment had affirmed a

Federal District Court's dismissal of claims that a state had deprived some counties of the use and benefits of certain lands purportedly set aside for school use when granted to the state by the Federal Government, in violation of the equal protection clause of the Federal Constitution's Fourteenth Amendment, the Supreme Court ruled in *Papasan v. Allain* (1986) 478 U.S. 265, 92 L.Ed.2d 209, 106 S.Ct. 2932, that such an alleged violation was precisely the type of continuing violation for which a remedy permissibly could be fashioned, notwithstanding the Eleventh Amendment. It was stated by the court that a remedy to eliminate a current disparity in the distribution of benefits of state-held assets–even where such remedy might require the expenditure of state funds–would not violate the Eleventh Amendment, since such a remedy would insure compliance in the future with a substantive federal-question determination, rather than bestow an award for accrued monetary liability." *Id.*;

4).          "In Ex parte Young [209 U.S. 123] -it was held that the Eleventh Amendment did not prohibit the prosecution of an action in Federal Circuit Court against a state attorney general, in which action stockholders of several railroad companies sought to enjoin the attorney general from enforcing certain orders and acts of the state railroad commission which allegedly violated the stockholders' rights under the Federal Constitution. The court said that the state was not a party to the action simply because the state railroad commission was a party," (Emphasis -added),

citing as sufficient authority for, not only the above, and Burnett's current proposition are 1) *Smyth v. Ames*, [169 U.S. 466] "enjoining state officials from enforcing a state statute which violated the Federal Constitution, that a suit against individuals for the purpose of preventing them as officers of the state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff was not a suit against the state within the meaning of the Eleventh Amendment," and 2) *Prout v. Starr*, [188 U.S. 537] "granting injunctive relief -an action against the members of the state board of transportation, which action had been brought for the purpose of preventing the enforcement of the a state statute was invalid under the Federal Constitution -was not a suit against the state within the meaning of the Eleventh Amendment." *Id.*

§ 4.      Notwithstanding the Federal Constitutional's Eleventh Amendment, corporations or *agencies* that have been created by a state could be sued in federal court. Therefore Burnett maintains and assert that the state is not the "entire party" in the action, the Supreme Court ruled in *Bank of United States v Planters' Bank of Georgia* (1824) 22 U.S. 904, 6 L.Ed. 244, that:

"The Eleventh Amendment did not preclude a Federal Circuit Court from asserting jurisdiction over an action brought by a federally chartered bank against a state bank, with respect to which action the state itself held a partial interest as a corporator. The court, noting that a suit against the state bank was no more a suit against the state than against any other

17

individual corporator of the bank, said that the state, by giving the bank the capacity to sue and be sued, had voluntarily stripped itself of its sovereign character and waived all its sovereign privileges. It was a sound principle, observed the court, that when a government became a partner in any trading company, that government divested itself-so far as concerned the transactions of such company-of its sovereign character and took the character of a private citizen.

Reversing a Federal Court of Appeals judgment, insofar as it had held that an agency created pursuant to a compact between two states was protected by sovereign immunity under the Eleventh Amendment, the Supreme Court held in *Lake Country Estates, Inc. v Tahoe Regional Planning Agency* (1979) 440 U.S. 391, 59 L.Ed.2d 401, 99 S.Ct. 1171, that the agency could not claim Eleventh Amendment immunity. The court pointed out that the protection afforded by the Eleventh Amendment was available only to "one of the United States." Although it was true, said the court, that agencies exercising state power could invoke the Eleventh Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself, the Eleventh Amendment did not afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice" of state power. If an interstate compact disclosed that the compacting states created an agency comparable to a county or municipality, which had no Eleventh Amendment immunity, the court continued, the Amendment should not be construed to immunize such an

18

entity. According to the court, unless there is good reason to believe that the states structured the agency to enable it to enjoy the special constitutional protection of the states themselves, and that Congress concurred in that purpose, there appeared to be no justification for reading additional meaning into the limited language of the Eleventh Amendment. In the case at hand, the court emphasized, both of the states involved had disclaimed any intent to confer immunity on the agency." *Id.*

Although the Alabama Board of Pardon & Paroles remains in fact an agency created by state statute, nevertheless, in accordance with the cases cited above these individual named Defendants are not entitled to immunity under said asserted doctrine.

## 2.  **State Officers or Agents**:

1). In viewing, the Supreme Court further held "that the State must be the real or substantial party interest: citing the following Supreme Court cases explicitly, that support -in order for the state's immunity under the Federal Constitution's Eleventh Amendment to be invoked in a suit against a[ny] state official, the state must be the real or substantial parting in interest in the suit. In *Pennoyer v. McConnaughy* [140 U.S. 1] -the court observed that such principle application stated, two classes of cases existed, the first class, said the court, consisted of cases against a state within the meaning of the Eleventh Amendment, in which cases suit was brought against the officers of a state as representing

19

the state's action and liability, thus making the
state, although not a party to the record, the real
party against which the judgment would operate so as to
compel it specifically to perform its contracts. The
other class of cases, the court continued, were those
in which suit was brought against defendants who, while
claiming to act as officers of the state and under
color of an unconstitutional statute, committed acts of
wrong and injury to the rights and property of the
plaintiff which had been acquired under a contract with
the state. As to this class, the court said that such a
suit was not within the meaning of the Eleventh
Amendment as an action against a state, where the suit
was brought either (1) to recover money or property in
the hands of such defendants which they had unlawfully
taken in behalf of the state, (2) for compensation in
damages or, in a case where the remedy at law was
inadequate, for an injunction to prevent wrong and
injury, or (3) for mandamus to enforce the performance
of legal duties which are purely ministerial." *Id.*

Thus Burnett asserts for the most part Defendants S. Williams
Wynne), V. Weatherly and R. Longshore are not duly entitled to the
immunity, as it was held in *Hopkins v. Clemson Agricultural
College* (1911) 221 U.S. 636, 55 L.Ed. 890, 31 S.Ct. 654, that, the
court recognized that the Eleventh Amendment was not intended to
afford freedom from liability in any case, as herein, where an
officer, under color of office, injures one of the state's
citizens.

In *Smyth v. Ames* (1898) 169 U.S. 466, 42 L.Ed. 819, 18 S.Ct. 418, modified on other grounds 171 U.S. 361, 43 L.Ed. 197, 18 S.Ct. 888, the Supreme Court, affirming Federal Circuit Court decrees enjoining state officials from enforcing a state statute which violated the Federal Constitution, stated that a suit against individuals for the purpose of preventing them as officers of the state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff was not a suit against the state within the meaning of the Eleventh Amendment. Citing *Smyth*, *supra*, as sufficient authority for the proposition, the court held in *Prout v Starr* (1903) 188 U.S. 537, 47 L.Ed. 584, 23 S.Ct. 398, in affirming a Federal Circuit Court decree granting injunctive relief, that an action against the members of a state board of transportation, which action had been brought for the purpose of preventing the enforcement of a state statute which fixed minimum railroad rates on the ground that the statute was invalid under the Federal Constitution and federal statutes, was not a suit against the state within the meaning of the Eleventh Amendment.

In Young, [209 U.S. 123] the Supreme Court stated that there was ample justification in its Eleventh Amendment jurisprudence for the assertion that individuals who, as officers of the state, were clothed with some duty in regard to the enforcement of the laws of the state, and who threatened to commence either civil or

2i

violating the Circuit Court's injunction order. Immunity is not absolute in this instant action.

§ 5.      Pursuant to 42 U.S.C. 1985(3), a 1985(3) claim requires proof of: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997)(Emphasis-added)). "In order to prove a private conspiracy in violation of the first clause of 1985(3), a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action(s),' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 122 L.Ed.2d 34, 113 S. Ct. 753 (1993)(Emphasis-added).

§ 6.      With respects to Burnett's First Ground in the §1983 Complaint -Burnett continues to maintain that post 2002 and 2004 amended *"procedural parole consideration guidelines,"* affected Burnett's January 2007 parole review violating the Federal Constitution -whereas Burnett sought both *"prospective declaratory*

and *injunctive relief*," challenging both the Defendant's retroactive and constitutionality of Alabama's unfair and discriminatory parole "*eligibility*" and "*considerations*" resulting in rendering invalid Alabama's procedures as held unconstitutional in *Wilkinson v. Dotson*, [544 U.S. 74] 2005; whereas Burnett requests that this Court "take judicial notice of:"

> First, (The U.S. District Court case S.D.N.Y. a §1983 suit challenging New York's *sub rosa* blanket parole denial policy. *See Graziano v. Pataki*, 2006 WL 2023082) -citing *Wilkinson v. Dotson*, progeny;
>
> Second, (The U.S. District Court case E.D.Mich., for the Southern Division, held that cumulative changes to parole eligibility regulations for Michigan's Life -sentenced prisoners violated the U.S. Constitution's ban on *ex post facto* laws. See *Foster Bey v. Rubitschum*, Case No# 2:05-CV-71318-MOB-VMM October 23, 2007) -citing *Wilkinson v. Dotson*, progeny;
>
> Third, (The U.S. District Court case M.D. Pa. for the Middle District of Pennsylvania held that its 1997 law created a "*significant risk*" of increasing life-prisoners' punishment in violation of the *ex post facto clause*. See *Penn. Prison Society v. Rendall*, Case No# 1:97-CV-01731-ARC March 13, 2006);
>
> Fourth, (Two Ohio prisoners -challenged state's parole procedures, held permitted to bring actions under 42 USCS §1983 in the U.S. District Court for the Northern District of Ohio -claiming

the state's parole procedures violated the
Federal Constitution. See 329 F.3d 463 (2003 FED
App. 147P) remanded by United States Supreme
Court in *Wilkinson v. Dotson*, 544 U.S. 74 (2005).

When Burnett was convicted / sentenced in 1981 Alabama's
guidelines in effect, then, referred to hereinafter, marked and
exhibited heretofore in the record proper, entitled as Alabama's
Administrative Codes 1) 640-X-2.01; -2.15 (Board Action in
Granting, Denial and Supervision of Parole . . . Rights,
Remissions of Fines and Forfeitures, and Investigations and
Supervision of Probationers;" and 2) 640-X-3-01-3-.11 (Forms and
Instructions used by the Board of Pardon and Paroles in Granting,
Denial and Supervision of Paroles, Pardons, . . . and
Investigations and Supervision . . . applicable to the Public) -
which were both requested by Burnett's Doc. # 29, 30 under *Rule 26*
et. seq., and likewise ORDERED by this Court first on February 11,
(Doc. ?) then again, secondly on April 24, 2008 (Doc# []) to date
said Defendants have **"failed to produce"** specific limited
documents, records -guidelines to which Burnett must utilize to
compare to the subsequent twice amendatory "Articles" now
challenged herein to be in violation of the Federal Constitutional
*ex post facto* laws governing States -as partially admitted by
Defendants Operating Procedures of the Alabama Board of Pardon &
Paroles.

25

Burnett maintains that said named Defendants were acting, in some sense, in concert when they circumstantially agreed to deny him parole, prior to the actual January 2007 hearing, day -date based upon the 'class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)(quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)), *see also Burrell v. Bd. of Tr. of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992), cert. denied, 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993); *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)

§ 7.      Burnett maintains that Defendants S. Williams, V. Weatherly and R. Longshore did on, or before February 20th, 2007 through a continuous series of discriminatory acts "collectively, separately and or individually while acting under color of State law under §15-22-20 (Board's creation); §15-22-24 (Duties); §15-22-25 (Investigations); §15-22-26 (Standards for release on parole); §15-22-28 (Investigation for parole); §15-22-29 (Conditions of parole); §15-22-38 (Duties of Board members - mandatory, powers, strictly enforced); §15-22-39 (Penalty for neglecting or failing to perform), *inter alia,* Code of Alabama, 1975 -conspire denying Burnett Federal protected rights enjoined through the Fourteenth Amendment violating both §1983 and §1985(3) strictures, in that said Defendants conspired for the purpose of

26

depriving Burnett of equal protection of the laws while said Defendants engaged in active communications during the investigation of considering Burnett's parole consideration with 1) Governor B. Riley's office, 2) General T. King's office and 3) director M. Shehane at VOCAL -said individual's did arbitrarily, capriciously usurp Legislative intendments, cited above, in denying Burnett parole, under the newly intrusive amendatory enactments of 2002, and 2004 parole board guidelines, known as the Board's "Articles," inapposite to Alabama Administrative Code 640's in effect at the time Burnett was in fact, convicted / sentenced.

Additionally Burnett maintains that the associated press in Montgomery on March of 2006 released, exposed to the public -which Burnett requests that this Court "take judicial notice of, under Rule 201, Fed.R.Evid.," whereas the State was investigating Alabama's two-year college system when General King had asked, requested that Chancellor Roy Johnson help in obtaining grant money for the executive director Miriam Shehane of Victims of Crime and Leniency (VOCAL) where King himself accompanied Shehane to a meeting with Johnson -requesting money for VOCAL.

The newspaper article brought out, that King and Shehane "had talked about VOCAL's losing some funding and the possibility that law enforcement grants could be available from the two-year college system," as odd as that may otherwise seem to some, but

not so especially to this Court's learned eye, that is "the very system that Troy King's office was already in fact 'investigating, for almost two consecutive years'" was the same persons, parties Troy King sought after to assist in financing VOCAL's troubled future -as was alleged in Burnett §1983 Complaint claim one.

Worthy of particular interest is that it was not until November of 2006 that Defendant King had "removed himself from the college system probe," well enough after Burnett was likewise also erroneously denied parole in January 2007.

Burnett avers that post -2002 and 2004 Board rules, guidelines when applied to Burnett's pre -2002 and 2004 sentence as a Lifer, acted to effectively *increase* his punishment in violation of *Ex Post Facto* and *Due process Clause of the United States Constitution*, see Burnett's **Ground Three** at §1983 COMPLAINT page 3, December 26, 2007.

The challenged rules, regulations and or classified "guidelines now in effect," i.e., "Articles" affect Burnett's former rights of:

> "1)   Parole review of every three (3) years under Alabama's Administrative Code 640-X-2-.02 (Scheduling Cases for Parole Consideration) at subsection (8) -whereas, said pre -2002 and 2004 guideline stated: "A parole calendar date may be changed by order of Board . . . When an inmate is denied parole, the Board will determine when his case is to be reset but **in no event shall it be**

**reset for more than three (3) years from the date of denial**." *Id;*

"2). Pre-parole **personal interview with prisoners** being considered for parole will be conducted by an agent of the Board who will then submit a **written report to the Board of his [her] findings and evaluations**," cited in 640-X-2-.03. *Id;*

"3) A Parole review worksheet **shall** be completed in each case by the parole officer, immediately after he /she completes the investigation of a case. This worksheet is reviewed by a senior staff officer in the Central Office for consistency and appropriateness and for a final evaluation." See Parole Review Worksheet (PBF 118 rev. 4-86), cited in 640-X-3-.02. *Id.;*

"4) Basic criteria for pre -parole inmates interviews [under Alabama's Administrative Code 640-X-2-.03 at Burnett's Exhibit-1] -inclusive to a subsequent written reason for the Board's subsequent denial under Alabama's Administrative Code 640-X-3-.04 (Interview / File Review Worksheet) which should suffice a Federal mandated protective stricture, granting either:

  "(a) **Reason Favoring Parole** or

  "(b) **Reasons Favoring Denial**." *Id.*

(Emphasis-added). Absent this form, first being produced either to Burnett or in fact this Court by ORDER *sua sponte* for an in camera hearing (review) according to 640-X-3-.04 strictures the Defendants commingled efforts will continue predicating -depriving Burnett of right to know, whereas the language utilized therein,

29

states "This form is used by the board when it is considering an inmate for parole. It has a checklist showing the reasons for favoring parole and the reasons for denial of parole and the reasons for not resetting for parole consideration." *Id.* No comparison can ever effectuate federal comity of Burnett's claim against said named -specific Defendants, absent the above anomaly being adequately resolved by this Court's learned eye reviewing said Parole documents.

Burnett maintains this §1983 action remains his sole remedy to right Defendants wrong(s) under Federal standards yet to be clearly addressed under the auspice invoked above, herein; thus Burnett requests for an in toto review to appropriately determine if in fact the Defendants post -enactments of said "Articles," remain an *ex post facto* violation when compared to pre -2002 and 2004 guidelines provided Burnett, and others similarly situated – under juridical measures of the protective umbrella envisioned beneath the Due Process Clause as well as an Equal Protection vein within our Federal Constitution, see pre-guidelines and forms, attached thereinafter in Defendants exhibits, supporting a direct contradiction to Defendants' unsupported *ANSWERS.*

Additionally Burnett avers lost through the *ex post facto* amendments, as challenged, preserving for plenary review a prime juridical cause-federal intervention, as follows:

> "4) the victim(s) request for a thirty (30) day notice or a waiver of notice to be given to them

by the Board before considering a prisoner for .
. . parole . . ." under Alabama's Administrative
Code 640-X-3-.05 (Victim Request or Waiver
Notice);

"5)   the Board's action(s) to grant, deny, or to
continue to a future date, inmate being
considered for parole under Alabama's
Administrative Code 640-X-3-.06 (Action by
Board).

Under the current legislative authority -the Board is
statutorily mandated to "Notify" the Attorney General's Office
pursuant to §15-22-36(d)(The Board) "[S]hall have no power to
grant . . . a parole . . . until 30 days' notice that the
prisoner is being considered therefore has been given by the board
to the Attorney General . . ." Id.   Then again, under
subsection (e)(1)(i) "[A] statement that all persons required be
notified under the provisions of this section will be allowed, at
their option, to either appear before or give their **views** in
writing." Id.    Burnett maintains that during said specific
bureaucratic procedure, said Defendants acted in concert -engaged
in conduct constituting a tortuous act, actions or shortly
thereinafter upon receipt of such -said Attorney General took a
position to adamantly protest Burnett's then upcoming parole
consideration -scheduled for January 2007; worthy of particular
note, is that Burnett attempted to retrieve admissible evidence
but said Counsel likewise thwarted the DISCOVERY process denying
"documents, records, communications," to prove Defendants'

31

collusion, whereas Burnett requested an ORDER "for Defendants to forward any and all copies of memoranda between 1) Williams, 2) Weatherly, 3) Longshore or its agents, employees involved in, prior too, and including the January 2007 hearing; inclusive to disclosing those mysterious four special members the Defendants are attempting to shift blame upon; moreover important was Burnett's § 8 discovery request under subsections (a) through (u) at pp. 5 -11 which to date have not been produced nor objected by party Defendants to which Burnett will in fact, lawfully address - fully -correctly during his "REPLY to Defendants answers to said Interrogatories / Admissions still deficient [?].

Additionally for this Courts learned juridical eye remains Burnett's Doc. # 30, at page 12, @ Section III to-wit: Interrogatories: starting at § 4 "*Identify by document* . . . b) the type of work performed; c) your discretionary functions, duties and responsibilities;" Id; then at page 10: "*produce by document* any and all other Complaints . . . along the same, similar vein of the allegations as-applied and challenged in this civil tortfeasor, additionally answer, respond and disclose the foregoing:

> "a). Disclose any and all contacts *relating to* the following: "1) the Governor's Office, moreover Governor Riley, 2) the Attorney's Generals Office, moreover Tory King, 3) Vocal, moreover M. Shehane, there agents, employees, officers, whether direct, and / or indirectly as to each, every and any

representative(s) primarily associated with, dealing, concerning the Board's *review —relating to* protesting paroles, specifically Burnett, but not limited thereto, *identify by specific document*." Id.

(Originally —emphasized).        It still remains within the parameters of both DISCOVERY for Burnett to bring forth significant —sufficient proof necessitating the "wheel" as often referenced, and narrowly pinpoint which "spoke" did what —where and how to this Honorable Court for the conspiracy claim —this Circuit holds that "*circumstantial evidence*," is sufficient to sustain a colorable claim to further investigate Burnett's claim; only because Counsel "*failed to disclose evidentiary materials*," is Burnett unable to articulate a sufficient response by Affidavit or otherwise —but Burnett will in fact *OBJECT* accordingly and effectuate the proper motion henceforth.

The seminal case of *Kotteakos v. U.S.*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), is still the guidepost of connecting a "wheel" conspiracy. Thus prior to the Defendants amendatory enactment of pre 2002 —2004 guidelines, many prisoners sentenced to "*Life*," under Alabama's guidelines of being "hard on violent crimes" granting unto most, if not all an incentive to rehabilitate themselves, rewarding them with potentiality for discretionary parole, for example 640-X-2-.02 (Scheduling Cases for Parole Consideration), said guideline stated at section: "(1) As soon as practical after a prisoner is sentenced to prison, the

33

Board causes a file to be prepared on the case. When complete, the Board members or their designee study the file and set a parole calendar date. This parole date is for initial parole consideration . . ."; inclusive to section: "(2) On cases involving crimes committed before May 19, 1980, the parole calendar date is set at one-third of the person term or ten years [1] whichever is less. In cases involving multiple convictions, the parole calendar date is set at one-third of the total term, whichever is less, or at one-third or ten years, whichever is less, of an individual sentence or combination of sentences whichever results in the latest parole calendar date. This calculation also determines the time at which majority vote parole may issue. Further said pre -guidelines state: "(3) On cases committed on or after May 19, 1980, as-applied to Burnett, the Board uses the guidelines in establishing the initial parole calendar date. The guidelines take into account past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender. Unless the Board determines that the guidelines should not apply, calendar dates will be as follows:

"a)  If sentence is of ten years or more -and the offense is of a particular heinous nature or the

---

[1]   Alabama statute provides that earned incentive good time apply to time calculations for determining the time at which majority vote parole may issue. The Board also applies this credit in establishing a parole calendar date.

present offense is of a violent nature and his previous
behavior indicates a high risk potential for future
violence -case shall be set on the maximum scale.

. . . .

"c) All cases will be set in accordance with the
guidelines rating in Section III of the parole review
worksheet and the scale for parole calendar dates. A
copy of each document is included in Chapter 640-X-3 of
this Administrative Code; *see* Burnett's attached
Exhibits 1; inclusive too, correspondingly (640-X-3-.02
Parole review Worksheet), (640-X-3-.04 Interview / File
Worksheet), *infra*.

. . . ." *Id.*

DEFENDANTS' stated at page 2, §6 that:

> 6) "Defendants further aver that Plaintiff
> does not **enjoy a liberty** interest . .
> ."*Id.* (Emphasis-added).

§ 8.    Burnett can only reply, as this Court well knows, as
does Burnett that under Alabama law, "the right to parole is a
privilege granted by the people of Alabama to those committed to
[y]our penal institutions as punishment for crimes." *Andrus v.
Lambert*, 424 So.2d 5, 9 (Ala.Cr.App. 1982); *Holley v. State*, 397
So.2d 211, 216 (Ala.Crim.App.), cert. Denied, 397 So.2d 217 (Ala.
1981).    Thus obtaining release through parole, like obtaining a
pardon, is wholly contingent upon either the grace of the
detaining authority or some affirmative statutory entitlement.
*United States v. Chagra*, 669 F.2d 241, 264 (5th 1982), and
although while "no constitutional or inherent right of a convicted
person to be conditionally released prior to the expiration of a

35

valid sentence exists, *Greenholtz v. Nebraska*, [442 U.S. 1], a prisoner, even like Burnett "has the right to be properly considered for parole." *Christopher v. U.S. Board of Parole*, 589 F.2d 924 (7th Cir. 1978); *Wallace v. Turner*, 525 F.Supp. 1072 (S.D. Fla. 1981).

Paroling authorities **must** comply with constitutional requirements and may not determine parole eligibility [or consideration] on improper grounds. *Wallace v. Turner*, *supra*., parole cannot be denied on false, insufficient, or capricious reasons. *Christopher*, *supra*. Tedder v. Alabama Bd. of Pardon & Paroles, 677 So.2d 1261 (Ala.Crim.App. 1996), see also *Tucker v. Alabama Bd. of Pardon & Paroles*, 781 So.2d 358 (Ala.Crim.App. 2000).

Counsel for Defendants is wholly wrong, as previously made mention of by Burnett in DISCOVERY Documents to-wit: "Burnett never once argued, nor attempted to present to this Court as an inmate under Alabama law, that he was **deprived of liberty without due process** . . ." Id. Such defense by Counsel remains a sham, should be stricken.

Nowhere can this Court, as mentioned by counsel "find in Burnett's three (3) succinct claims," that Burnett -complained of, ensuing, a denial of parole down a *liberty interest* vein whether under the due process clause or the equal protection clause -to the extent that *liberty* is challenged, Counsel is simply being

disingenuous to this Court and attempting to steer Burnett's dispositive first impression issue to lead said parties down a well beaten trail Burnett can't win if he were to argue the liberty interest vein.

Secondly, Counsel partially admitted, openly to this Court, Plaintiff, as understood by Burnett that the Constitution does not require that discretionary parole consideration process be fair . . ." Id. at State's Answer p. 3 ¶12. If such a statement is true that the Board's process does not have to be fair then not only has Counsel openly admitted albeit partially one of Burnett's elements for relief sought, –this Court too can likewise juridically speaking "*take judicial notice of said* fact" and sufficiently move towards taking a closer look at the Board's process of being at least "*fair*" when, how it reviews Alabama inmates as-applied to Burnett's parole *eligibility* or *consideration* needing to be brought into the 21st. Century –which Burnett strenuously challenges the Boards flagrant process, however given Counsel assertion that "fairness has no place in Alabama's Constitutional parole consideration process," the same likened deprivation was most recently overturned in *Wilkinson v. Dotson*, 544 U.S. at 74 (2005) (challenging "*prospectively, the unfair parole policies*" ) –the due process complaint was quite unique, because as herein –it too, did not challenge the way the Board exercised its discretion; rather it alleged as Burnett, that

37

the Board was actually not exercising its discretion at all. This instant case follows the same line of reasoning, that the United States Supreme Court found interesting enough to consider and changed Ohio's Parole Board procedures indistinguishable to the facts and circumstances as a whole which arguably demonstrate Alabama's Parole Board procedures are illegal at best -the statistical trends, and recurring pretextual "*reasons*" for denials and common threads of reliance solely upon the crime [versus Alabama's 640-X guidelines inclusive to title §15-22-20 through §15-22-40] are not in accord with statutory criteria, a single denial "*does not a policy make*," it takes a group attack as requested herein your Honor to gain the juridical eye of Federal Court comity in road with *Wilkinson v. Dotson*, supra.

The basic tenet established above now graciously admitted by the Defendants has a fundamental substantive underpinning to Burnett's three colorable claims, grounds for immediate intervention and plenary review by this Court under *Wilkinson*, *supra.*

Burnett respectfully requests that this Court give no attention to Defendants *ANSWER* at page two (2) § 8 -based upon it being a moot defense -because their currently remains "NO-CLAIM for a[ny] liberty interest issue before this Court by Burnett. DEFENDANTS' stated at page 2, § 5 that:

> 5) "Defendants assert that the Complaint
> fails to state any claim upon which relief
> may be granted . . . ." *Id.*

§ 9.    Burnett maintains that "erroneous -false information was spoken, asserted by a person contacted by the Defendants outside Alabama's State law notification(s) ("640-X-2-.06 [notices of pending parole consideration, Act #83-750]; 640-X-2-.07 [protests]; 640-X-3-.05 [Victim Request of Waiver of Notice]"), whom worked in concert -collusion with either VOCAL or the Attorney Generals Office -at the 2007 parole hearing, whereas said parties absent any first hand knowledge, either through contacts, such as (i) visits, (ii) phone conversation, or (iii) letters collectively stated that "*Although Burnett's eighth time up for parole still ineligible due to protests not from victims,*" id. at Burnett §1983 Complaint Claim 2. In *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th. Cir. 1991) -the Court of Appeals for the Eleventh Circuit stated:

> "It is true that the Alabama parole statute
> is framed in discretionary terms and therefore
> does not confer a liberty interest in parole.
> Ala.Code §15-22-26 (1975); *Thomas*, 691 F.2d at
> 489.    Nevertheless, this discretion is not
> unlimited. A parole board may not engage in
> 'flagrant or unauthorized action.' *Thomas*, 691
> F.2d at 489. Section §15-22-26 cannot be read as
> granting the Board the discretion to **rely on the
> false information in determining whether to grant
> parole**.    Therefore, by relying on the false

information in Monroe's file the Board exceeded
its authority under §15-22-26 and treated Monroe
arbitrarily and capriciously in violation of due
process. *Thomas*, 691 F.2d at 489." *Id*.

(Emphasis-added).                    Burnett relies on the progeny of
*Thomas v. Sellers*, 691 F.2d [487], 489 (11th Cir. 1982),
*Monroe*, 932 F.2d at 1442, and other cases along said same holding,
Burnett made a colorable claim, that "*false information*," was
used, considered by the Board in 2007, thus confirming he was
effectively deprived of due process based upon said, specific
false information by M. Shehane (VOCAL) which caused the injury –
denial for fair consideration of parole –therefore the Parole
Board Defendants relying on such "*false information*," exceeded
their lawful authority under §15-22-26, Ala.Code, 1975 and treated
Burnett both arbitrarily and capriciously in violation of due
process. *See Monroe*, *supra*, see Burnett's attached Affidavit –
supporting said "*false information*," above.

To analyze Burnett's procedural due process claim,
effectively, under the vein asserted under the plenary review of
*Wilkinson*, *supra,* this Court must first determine whether a
constitutional interest exists in the content of which the United
States Supreme Court holds that "retroactive procedural changes in
the parole board process is prohibited as-applied to [one's]
sentence, whereas it creates a significant risk of increasing his
punishment," *see Harris v. Hammonds*, 217 F.3d 1346, 1347 (11th

Cir. 2000)(per curiam)(quoting *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Simply put, Burnett asserts, that "[a] person suffering legal wrong because of a an agency actions, or is adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review." *See, e.g., St. Cyr,* 121 S.Ct. at 2285 -86.

Burnett was entitled too, under the Constitution -for the Board Defendants to "have not relied on the false information - statement made by -to have denied him a fair parole consideration in 2007." *See Tefel,* 180 F.3d at 1229 ("the necessary first step in evaluating any procedural due-process claim is determining whether a constitutionally protected interest has been implicated.") Following such a finding, the Court must access the extent of process due. *See Haitian Refugee Center,* 676 F.2d at 1037 ("once we find that a protected interest is implicated, the question remains what process is due.")(quoting Morrissey v. Brewer, 408 U.S. 471, 481, 33 L.Ed.2d 484, 92 S.Ct. 2593 (1972).

The procedural component of the Due Process Clause of the Fifth Amendment protects against the deprivation Burnett suffered, i.e., *"false information relied upon,"* during, the special board's parole consideration in January 2007. Thus, Burnett is protected by the Constitution -forbidding said Defendants from relying on such. The Due Process Clause: (1) the right to petition the government and have that petition fairly adjudged "at a meaningful

41

time and in a meaningful manner." *Haitian*, (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L.Ed.2d 62, 85 S.Ct. 1187 (1965)).

As explained by Judge Friendly, among the most attributes of a fair hearing are: (1) notice of the proposed action and grounds on which it is asserted; (2) the right to know the evidence presented against the individual; (3) a decision based solely on the evidence presented; (4) a proceeding open to the public. *See Henry J. Friendly*, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1275 (1975), *see also Mathews v. Eldridge*, 424 U.S. at 348 ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.")(quoting Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 171-72, 95 L.Ed. 817, 71 S.Ct. 624 (1951)(Frankfurter, J., concurring)).

Further evidence for this Court's plenary review -remain the uncontroverted assertions by at least two (2) Board Defendants, inapposite to Defendants two (2) exhibited Affidavits hereinafter as by Defendants Velinda Weatherly at page one (1) to-wit: "**I heard the views of various officials and individuals expressed in an open public. . ." id.**, (i.e., Burnett's January 20, 2007 parole hearing) -thus Defendant Weatherly "could be" more specific one who, whom actual spoke what, at said hearing; Burnett therefore moves to strike her testimony as moot -inclusive to her subjective opinion. This Court ORDERED the Defendants on February

42

2008 to ANSWER and file WRITTEN REPORT with "*sworn statements of all persons having personal knowledge of the subject matter of the Complaint*," id., since Defendants V. Weatherly alleges to possess first hand knowledge, then under *Rule 56(e)*, Fed.R.Civ.P. it should have been therein stated such, Burnett moves to either quash, or strike said Affidavit upon "subjective allegations not comporting with this Circuits holdings.

Likewise secondly, is Defendant R. Longshore's Affidavit by his own averment at page two (2) in his first paragraph, that "**I did not rely on any information that I knew to be false** . . ."id., thus Defendant Longshore "could likewise have been more candid"; Burnett therefore moves to strike his testimony too, as moot - inclusive to any subjective second hand information -opinion. This Court ORDERED the Defendants on January 20, 2007 to ANSWER and file WRITTEN REPORT with "*sworn statements of all persons having personal knowledge of the subject matter of the Complaint*," id., since Defendant R. Longshore has not asserted his allegations are premised upon first hand knowledge of the "subject matter," said should be stricken, or cause for compliance with DISCOVERY.

*Rule 56(e)* makes it plain that affidavits submitted in support of or opposition to a motion for summary judgment shall be made **on personal knowledge**, shall set forth such facts as would be **admissible in evidence**, and shall **affirmatively show that the affiant is competent to testify to the matters stated**

43

**therein**. *Fed.R.Civ.P.* 56(e) (emphasis added). It is clear that the Federal Rules of Civil Procedure also provide for the submission of deposition testimony in support of or in opposition to motions for summary judgment. Such testimony is also required to be made on personal knowledge from a witness competent to testify on the matters stated and to set forth facts as would be admissible in evidence. *See, e.g., Rowell v. Bellsouth Corp.*, 433 F.3d 794, 799-800 (11th Cir. 2005)(affirming a decision granting an employer's motion for summary judgment and explaining that deposition testimony from plaintiff could only be considered if it could "be reduced to an admissible form" at trial); *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 570 n.4 (7th Cir. 1989); *Home Oil Co. v. Sam's East, Inc.*, 252 F. Supp. 2d 1302, 1308 (M.D. Ala. 2003)(Thompson, J.).

The requirements of *Rule* 56 make it plain that "affidavits or depositions which set forth conclusory arguments **rather than statements of fact based on personal knowledge are improper**." (Emphasis-added) *See, e.g., Thomas v. Ala. Council on Human Relations, Inc.,* 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003)(Fuller, J.); *Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). *Accord, Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Testimony that fails to meet the standards set forth in *Rule* 56(e) is subject to a motion to strike. *See, e.g., Thomas,* 248 F. Supp. 2d at 1112;

*Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M.D. Ala.1998)(DeMent, J.), see Burnett's attached 1) Motion to Strike and 2) Supporting Affidavit fully adopted and incorporated hereinafter as evidentiary materials opposing Defendants inadmissible affidavits.

See *Macuba v. Deboer,* 193 F.3d 1316 (11th Cir. 1999) (inadmissible hearsay cannot be considered on a motion for summary judgment). To that extent, in addition to Defendants failure to have first requested leave, permission to have filed for summary judgment, as previously court ordered, therefore, the Defendants' exhibited affidavits and statement of facts contain inadmissible, unsupported, or irrelevant statements -under the rule of hearsay, thereby prejudicing Burnett; those statements as well as their Affidavits should be disregarded, for purposes of this next stage. *See Rule 56(e),* Fed.R.Civ.P.

DEFENDANTS' stated at pages 2, 3 §10, 12 that:

10) **"The allegations regarding "equal protection of the law,"** are insufficient, as a matter of law, to state a claim upon which relief may be granted . . ." *Id;*

12) "The claims regarding due process of law and a "fair" parole hearing procedure are insufficient, as a matter of law, to state a claim upon which relief may be granted . . ." *Id.*

(Emphasis-in-bold).    First and foremost -Burnett points out to this Court, once again Counsel is twisting or attempting to

conjoin the Second (2nd) Claim (a Denial of [an] **Equal Protection** [violation]-based upon *false and erroneous information*) into Burnett's First (1st) Claim (Denial of Effective Due Process of Article 1, U.S.C. 14th. Amendment [violation]-the *political predisposed parole denial effectuated through conspiracy*) -two entirely different claims respectively not to be intertwined for the sake of argument, and relief -Burnett thus moves to strike said "defensive entanglement to Burnett real issue."

For the sake of preserving an Objection or Reply Burnett will attempt to respond accordingly to Defendants misapplied *ANSWER*, as follows:

## A.    The Theory of Equal Protection and And Equal Protection:

The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner. U.S. Const. Amend. XIV, 1; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As a general rule, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 440. When "social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude." *Id.* This general rule gives way, however, "when the statute classifies by [gender, race, alienage, or national origin," and because such factors "are seldom relevant to the

achievement of any legitimate state interest," such laws are subject "to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.* Thus, if legislation classifies people in such a way that they receive different treatment under the law, the degree of scrutiny the court applies to the legislation depends on the basis for the classification. *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1337 (11th· Cir. 2002). Where a fundamental right or a suspect class is involved, the court reviews the classification with strict scrutiny. *Id.* On the other hand, "[A]f an ordinance does not infringe upon a fundamental right or target a protected class, equal protection claims relating to it are judged under the rational basis test; specifically, the [regulation / guideline] must be rationally related to the achievement of a legitimate government purpose." *Id.* (quoting **Joel v. City of Orlando**, 232 F.3d 1353, 1357 (11th· Cir. 2000)).

Viewing the limited evidence in the light most favorable to Burnett, said evidentiary assertions between suspect class treatment disparities challenged herein, offer sufficient facts for a legal argument to support the assertion that the newly amended regulations are facially unconstitutional under the Equal Protection Clause -in light of the first impression issue for Alabama under the *Wilkinson v. Dotson*, progeny -that Burnett has been in fact treated fundamentally dissimilar as a definable

47

group -suspect class with respects to the laws concerning non-violent offenders, and at times some violent offenders too - inapposite to Federal standards, accommodated others. Simply put, these Defendants cannot predicate any lawful standing to uphold these post amendatory Board "Articles" under the current challenge, therefore said post-guidelines remain both "*irrational and arbitrary*," under *Wilkinson*, when viewed cumulatively to the 640-X's in effect at the time Burnett was both convicted / sentenced in 1981.

Strictly speaking, the Equal Protection Clause prohibits these Defendants from unfairly discriminating between equivalent groups. The Defendants may not act in an invidious or arbitrary manner, the key to determining whether these Defendants, in treating one group differently from another, has stepped over the line is to ascertain the level of justification that these Defendants provided to explain their actions. No "single" standard defines the level of justification that is required; instead the Supreme Court has articulated three (3) distinct standards, the **first** and most lenient standard from the standpoint of prison administration, is the rational basis standard. It requires only that the classification be drawn for the purpose of serving a legitimate governmental interest and that the means chosen actually serve that interest. *See, e.g., San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 93

S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed 369 (1911); *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); *Gregory v. Ashcroft*, 501 U.S. 452, 11 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Nordlinger v. Hann*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *F.C.C v. Beach Communications, Inc.,* 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

However, in a stark, marked contrast, the **second** standard, the strict scrutiny standard, commands a close connection between the legislation or practice under examination and a compelling state interest. *See, e.g., Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (9174); *Miller v. Johnson*, 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995).    In between these two (2) positions lies the **third** standard, the intermediate standard of review; under it, there must be a substantial relationship to an important (although not compelling) state interest. *See, e.g., Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Plyer v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786, 4 Ed. Law Rep. 953 (1982); *I.N.S. v. Nam Nguyen*, 533 U.S. 944, 121 S.Ct. 2582, 150 L.Ed.2d 743 (2001).

Under traditional equal protection theories, the "*rational*

*basis test,"* is most commonly applied to regulations in the social and economic field when nonfundamental rights are at issue, and when the regulations do not exclude *"suspect groups,"* such as racial or religious minorities. *See, e.g., Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855, 109 Ed. Law Rep. 539 (1996); *Rodriguez; Lindsley*, *supra.*

Burnett maintains, as does the United States Supreme Court, that the *"strict scrutiny,"* will be the appropriate test when fundamental rights are at stake or a suspect classification is involved. *See, e.g., Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)(free speech); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1996); *Edelman*, *supra.*

Under current law, the intermediate standard applies to gender-based classifications. *See Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Califano*, *supra.* This Circuit, as well as others *"suggest,"* that the intermediate standard may also apply in cases involving important, but not fundamental, rights. *See, e.g., L. Tribe, American Constitutional Law,* 1591 -92 (2d.ed. 1988)(contending that the intermediate standard should apply to cases involving children or childhood). Whether to raise an equal protection claim-rather than one focusing solely on violation of a substantive right-depends in

part, therefore, on an assessment of the standard of review used to resolve the equal protection claim. The reason is that the likelihood of a prisoner's suit resulting in relief on an equal protection claim can very well turn on the stringency of the equal protection standard applied by the court. However, in lieu of what's at stake, not only for Burnett but also per se for others to follow if the *Turner v. Safley*, [482 U.S. 78] (1987) standard is applied to quell the equal protection claims, then the nature of the interest at stake, or in this case - in jeopardy than Burnett's claims don't matter.

The invoked equal protection claim is one of first impression -in Alabama under the ruling recently viewed in Four (4) other states, under the guidance -holding through *Wilkinson v. Dotson*, that "the [parole board] retroactive application of new[er], harsher guidelines to pre-guidelines violate the Constitution's Ex Post Facto and Due Process Clauses . . .", *inter alia*; thus Burnett asserts, for the most part -what is in fact occurring at Alabama's parole board -based upon cumulative amended rules, regulations and guidelines being utilized to deny a suspect class of Lifer's parole, is likewise unconstitutional.

For the most part -this Court is more likely to fully grasp and understand a few seminal cases worthy of mentioning (i) in *Morrisey v. Brewer*, 408 U.S. 471 (1972) "it determined that due process imposed certain minimum procedural requirements which

must be satisfied before parole could be revoked, that court defined 'it's minimum requirements'"; similarly that court in 1997 found (ii) in *Young v. Harper*, 520 U.S. 143 (1997) that "pre-parole or parole like programs fall under the same umbrella of creating a 'liberty interest,' that cannot be revoked without proper due process procedures"; then in another vein the Supreme Court came to a completely different conclusion (iii) in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979) -which dealt with "due process issues involving a group of Nebraska prisoners who filed a class action under 42 U.S.C. §1983 claiming, that they had been unconstitutionally denied parole by the Board of Paroles." *Id.*    In like manner Burnett asserts that "If the board determined that the prisoner was not a good risk for release, it denied parole, inform[ing] the prisoner *why release was deferred and made recommendations designed to help correct any deficiencies observed.*" *Id.* In its opinion on the case, the Supreme Court noted, although there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence . . . There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* It went on to state: "The Nebraska procedure affords an opportunity to be heard, and when parole is denied '*it informs the inmate in what respects he falls short in*

52

*qualifying for parole; this affords the process that is due under these circumstances, the Constitution does not require more." Id.* Burnett envisions from this Honorable Court nothing more, nothing less -than adequate Constitutional plenary comity in accord with the Supreme Court's views on true justice. Change for Alabama is a necessity under *Wilkinson, supra*.

Burnett maintains that he is similarly situated with other prisoners who received more favorable treatment and that he was treated differently based on some constitutionally protected interest, as follows:

§ 10.    Burnett's parole denial came on January 20, 2007 - and it was not until after said denial under the amendatory parole board "Articles" giving rise for a §1983 claim in view of the released decision in Wilkinson (2005) towards redressing injuries sustained whereupon Burnett asserts broke new ground under §1983 actions, as challenged herein. *See Ashcroft v. Randel*, 391 F.Supp.2d 1214, 1219 (N.D. Ga. 2005)(Story, J.)(noting that the federal "discovery rule" governing the accrual of a §1983 action provides that "a claim accrues when the injured party knew (1) he **suffered the injury that form[ed] the basis of his complaint** and (2) who **inflicted that injury**"). *Id.*

Burnett argues that he is entitled to have his requests for parole considered under the statutory guidelines / regulations in effect at the time of his 1981 convictions. Specifically, Burnett

maintains that at the time of said convictions he was entitled
to: 1) be personally interviewed before the parole consideration
-hearing; 2) be heard by the parole board; 3) question evidence
against him before the parole board, prior to adverse ruling; 4)
present evidence on his fundamental behalf; and 5) be free from
protests, by Miriam Shehane (VOCAL) and per se the Attorney
General's Office, absent full statutory compliance with the above
substantive predicates.          Consequently for certain inmates
respective to the Board's 640-X's -such as Burnett who committed
crimes before the cumulative amendments were enacted by the
"Articles" which substantially altered the consequences to said
previous crimes already configured into previous "eligibility"
criteria Burnett maintains retroactively "changed the quantum of
[his] punishment." *Dobbert v. Florida*, 432 U.S. 282, 298, 53
L.Ed.2d 344, 97 S.Ct. 2290 (1977).          Inclusive    to    the
above   detriments   applied   to   Burnett's   2007   denial   were
subversions of Alabama's Code §15-22-36 and Alabama's Code §15-
23-79, "creating further sufficient risks that time in prison
will [be] increased because of Burnett's inability to present
evidence on his behalf, pointing out erroneous information, stop
unnecessary protests from people who know neither the victim nor
Plaintiff, [and] enabling Burnett to protect himself from false
witnesses before the Parole Board." See *Weaver v. Graham*, 450
U.S. 24, 67 L.Ed.2d 17, 101 S.Ct. 960 (1981) -setting grounds for

54

analysis -inquiry by this Court into whether an ex post facto violation occurred cause for applying the two (2) prong test: first, has a change in the law been given a retrospective effect; and second, has the change [challenged herein] disadvantaged Burnett.

Because §1983 does not contain a statute of limitations, reference must be made to the limitation periods prescribed by the state in which the litigation arose. *Burnett v. Grattan*, 468 U.S. 42, 49, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36, 44 (1984). In an attempt to avoid uncertainty and to provide a workable analysis for determining the applicable statute of limitations in section 1983 claims, the Supreme Court recently held that the most appropriate statute of limitations for all §1983 actions is the personal injury statute of limitations of the state whose law is to be applied. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Majette v. O'Connor*, 811 F.2d 1416, 1419 (11th Cir. 1987) -thus inapposite to Defendants mere conclusory allegations that Burnett's 2007 parole denial is barred is injudicious at best under Alabama's two (2) year holding from the time of the injury in fact sustained.

§ 11.        Burnett maintains, and avers in regards Article I, 10 of the U.S. Constitution prohibits the states from passing any "ex post facto law, so much importance did the [C]onvention attach to [the ex post facto prohibition], that it is found twice

in the Constitution." *Kring v. Missouri*, 107 U.S. 221, 227, 27 L.Ed. 506, 2 S.Ct. 443 (1883); which ultimately forbids Congress and States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri*, 4 Wall 277, 325-326, 18 L.Ed. 356 (1867).   See *Lindsey v Washington*, 301 U.S. 397, 401, 81 L.Ed. 1182, 57 S.Ct. 797 (1937); *Rooney v North Dakota*, 196 U.S. 319, 324-325, 49 L.Ed. 494, 25 S.Ct. 264 (1905); *In re Medley*, 134 U.S. 160, 171, 33 L.Ed. 835, 10 S.Ct. 384 (1980); *Calder v Bull*, 3 Dall 386, 390, 1 L.Ed. 648 (1798)("The enhancement of a crime, or penalty, seems to come within the same mischief as the creation of a crime or penalty" after the fact.   *Calder*, at 397, 1 L.Ed. 648 (Paterson, J.).   See also *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810)("An ex post facto law is one which renders an act punishable in a manner in which it was not punishable when it was committed")).

Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *Dobbert, supra; Kring v. Missouri*, 107 U.S. 221, 228, 27 L.Ed. 506, 2 S.Ct. 443 (1883); *Calder v. Bull, supra*, at 387, 1 L.Ed. 648.   The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation.   *Malloy v.*

*South Carolina*, 237 U.S. 180, 183, 59 L.Ed. 905, 35 S.Ct. 507 (1915); *Kring v. Missouri*, supra, at 229, 27 L.Ed. 506, 2 S.Ct. 443; *Fletcher v Peck*, 6 Cranch 87, 138, 3 L.Ed. 162 (1810); *Calder v. Bull*, supra, at 395, 396 1 L.Ed. 648 (Paterson, J.); the Federalist No. 44 (J. Madison), No. 84 (A. Hamilton).

The **Ex Post Facto** Clause is directed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L.Ed.2d 30 (1990). In *California Department of Corrections v. Morales,* the Supreme Court rejected the argument that the **Ex Post Facto** Clause prohibits "any legislative change that has any conceivable risk of affecting a prisoner's punishment." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Instead, the Court held that the clause forbids only those retroactively applied laws that "**produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes**." Id. at 509.

Burnett maintains prior to the Defendants amendatory enactment of post 2002 -2004 guidelines, many prisoners sentenced to "*Life,*" under Alabama's guidelines granting unto most, if not all "violent crimes" an incentive to rehabilitate themselves, rewarding with potentiality for discretionary parole, for example as stated in 640-X-2-.02 (Scheduling Cases for Parole

Consideration) -inclusive to pre -guidelines section "(3) On cases committed on or after May 19, 1980, as-applied to Burnett," the Board used guidelines established prior to these two challenged amendments 1) 2002 amendment (increasing setting off inmates for parole review from three (3) years to five (5) before next parole consideration); and 2) 2004 amendment (process for re-examination by staff -within eighteen (18) of next eligibility for parole consideration); for Burnett's initial parole calendar date. The pre- 2002, 2004 guidelines took into account past criminal record, pattern and nature (severity) of present offense, and the community attitude toward the offender.

Retrospectively looking to the effects of the Board's 640-X's guidelines providing parole eligibility, and considerations to Lifers after serving one-third of the total term or ten years whichever is less and only being set-off in three year increments -unlike the 2002 and 2004 amendments cumulatively setting off Burnett, now in increments of five years; additionally said enactments mandate the initial parole eligibility, consideration date shall be set in conjunction with the inmate's completion of 85 (eighty-five) per cent of his or her total sentence or 15 (fifteen) years, whichever is less, see Defendants exhibits (Article I intake).

Taken as a whole, permitting only paper reviews of files - instead of in-person hearings and eliminating *written reasons for*

58

*denials* by declaring such reviews to not be "decisions" of the Board to whereas one provides a right to review in hopes of correcting his problems, wrongs as intended for being imprisoned after being denied on such information in said files -records, than no judicial review is necessary. This Court only has to look to the second prong, under *California Department of Corrections v. Morales*, [514 U.S. 499] (1995) and *Garner v. Jones*, [529 U.S. 244] (2000) to configure or wiggle sufficient room for discerning Burnett's "*disadvantage*" on a case-by-case basis meeting the threshold requirement for public safety on Alabama's overreaching parole factors exposing Burnett to an ex post facto violation upon these Defendants relying on language in lieu of its prior "factors counseling in favor of discretionary release," standard.

   Notwithstanding the *Jones*, and *Morales* determinations, as requested by Burnett challenging the amended "*Articles*," Burnett suggests, requests that this Court look at the "*practical implementations*" of the 2002 and 2004 parole board changes in the aggregate to determine the risks of prolonged incarceration as being "*significant*."    This Court, can ground its ensuing analysis in the substantive standard(s) governing Alabama's paroles - Alabama's §15-22-26 "No prisoner shall be released on parole as a reward for good conduct . . . but only if the Board of Pardon and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at

liberty without violating the law and that his release is not incompatible with the welfare of society . . ." *Id.* Also, §15-22-28(d) "No prisoner shall be released on parole expect by a majority vote of the board . . ." and subsection (e), *supra*, that "The board shall not grant a parole to any prisoner who has not served at least one third or 10 years of his sentence, whichever is the lesser . . ." *Id.*  *See* Burnett's attached *Affidavit* supporting this Reply to both standing, and day, date of accrual and ex post facto violation.

§ 12.       Burnett asserts, maintains for brevity sake that for the most part the Defendants *ANSWER* is quite misleading under the recent holdings of other cases dealing with same, similar claims as raised -challenged herein, in that under the holdings of the United States Supreme Court rulings, in *Wilkinson v. Dotson; Monroe v. Thigpen; Thomas v. Sellers; Harris v. Hammonds, Garner v. Jones; City of Cleburne v. Cleburne Living Center, Inc.; Thigpen v. Bibb County, Weaver v. Graham, California Dep't. of Correction v. Morales; inter alia,* therefore these Defendants couldn't be more wrong in the following boiler-plated "Defense."

§ 13.       Burnett maintains, that upon plenary review of the above-styled cases under their current application to Burnett's unique, novel first impression claims in light of these additional sister circuit holdings: 1) In *Graziano v. Pataki,* 2006 WL 3023 the U.S. District Court case in S.D.N.Y. a §1983 suit challenging

New York's *sub rosa* blanket parole denial policy; 2) In *Foster Bey v. Rubitschum*, Case No# 2:05-CV-71318-MOB-VMM October 23, 2007 the U.S. District Court case E.D. Mich., for the Southern Division, held that cumulative changes to parole eligibility regulations for Michigan's Life -sentenced prisoners violated the U.S. Constitution's ban on *ex post facto* laws; 3) In *Penn. Prison Society v. Rendall*, Case No# 1:97-CV-01731-ARC March 13, 2006 the U.S. District Court case M.D. Pa. for the Middle District of Pennsylvania held that its 1997 law created a "*significant risk*" of increasing life-prisoners' punishment in violation of the *ex post facto clause*; and most significant for Burnett to birth forth is the holding of the ruling in 2005 referenced herein as 4) In *William Dotson,* and *Rogerico Johnson*, two Ohio prisoners – challenged state's parole procedures, held permitted to bring actions under 42 USCS §1983 in the U.S. District Court for the Northern District of Ohio -claiming the state's parole procedures violated the Federal Constitution, See 329 F.3d 463 (2003 FED App. 147-P) -that this Court will likely conclude that its time to adjust -correct  Alabama's unwillingness to otherwise provide its citizens a[ny] remedial review of parole board decisions -even under the auspice of common law certiorari -such "current state reasoning" is nothing other than a flagrant abuse of discretion, or per se a manifest injustice towards prisoners as a whole, by

the agency, but moreover usurpation by State Court reviewing
agency decisions which often more than not:

> "1) *results in decisions that [are] contrary to,*
> *or involved an unreasonable application of,*
> *clearly established Federal law, as determined by*
> *the Supreme Court of the United States; or 2)*
> *resulted in decisions that [are] based on an*
> *unreasonable determination if the facts in light*
> *of the evidence presented in the State court*
> *proceeding."*

But for Alabama State Courts to flat outright refuse to address
"Board decisions," along the vein argued herein this Court has
both the authority and power under §1983 to invoke upon this
State -the law of the United States Supreme Court holdings,
whereas most recently Judge Baschab specifically concurred, at
page 2 of *Bostwick v. Ala. Bd. Of Pardon and Paroles,* 865 So.2d
1245 (Ala.Crim.App. 2003) -that: "Because of the majority appears
to follow the current state of the law, I am **forced to concur in
the result**.    However, **I also concur specifically to urge a
change in the law**:

> "The Board argues, "there is no legal basis for a
> prisoner to seek judicial review of the Board's
> decision not to parole him." (Board's brief at p. 28.)
> Specifically, it contends that "the Alabama Legislature
> has given the Board of pardons and Paroles
> discretionary authority to decide what prisoners may be
> paroled, and when, and under what conditions." (Board's
> brief at pp. 27 -28.) Therefore, it concludes "**the**

**decision to deny parole is not reviewable**." (Board's brief at p. 25.) For the reason set forth below, I agree that such a decision is not reviewable in a state court." *Id.*

. . .

"Alabama courts have previously held that decisions that are totally discretionary are not reviewable on appeal . . . "The courts have also held that such decisions are not reviewable on appeal." **Id at pp. 2, 3**;

The Court in *Bostwick*, *supra*, went on to state, at page four "We recognize that, in *Andrus v. Lambert*, 424 So.2d 5, 9 (Ala.Crim.App. 1982), this Court held: "While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, *Greenholtz, supra*, a prisoner has the **right to be properly considered for parole**. *Christopher v. Board of Paroles, supra; Wallace v. Turner, supra,* the paroling authority **must comply with constitutional requirements and may not determine parole eligibility on improper ground**." *Id*. Furthermore, that Court stated at page five "Based upon the Eleventh Circuit's holdings in *Monroe* and *Sellers*, we should overrule *Andrus,* and its progeny, including *Graves v. Alabama Board of Pardons and Paroles*, 845 So.2d 1, (Ala.Crim.App. 2002); *Strong v. Alabama Board of Pardon and Paroles*, 859 So.2d 1201 (Ala.Crim.App. 2001); *Tucker v. Alabama Board of Pardon and Paroles*, 781 So.2d 358 (Ala.Crim.App.

2000); *Tedder v. Alabama Board of Pardon and Paroles*, 677 So.2d
1261 (Ala.Crim.App. 1996) and *Sloan v. Alabama Board of Pardon and
Paroles*, 647 So.2d 85 (Ala.Crim.App. 1994).

§ 14.          Burnett maintains, as did the United States Supreme
Court in *California Department of Corrections v. Morales*, [497
U.S. 37] (1990) -that, "The *ex post facto clause* forbids those
retroactive applied laws that 'produce [] a sufficient risk of
increasing the measure of punishment attached to the covered
crimes.'" *Id.* Based upon said -such progeny which Burnett relies
upon for this Court's plenary review, requires this Court to apply
the two-part test: (1) whether vel non "**the change** -[as in this
instant case from the Boards 640-X regulations in effect at the
time of Burnett's conviction / sentence to the Boards post 2002,
and 2004 amendments known as the "Articles"] -**are retroactive?**";
and (2) if so, whether vel non "**it created a sufficient risk of
increasing punishment?**" Therefore according to *Garner v. Jones*,
[529 U.S. 244] (2000) progeny -this Court **must determine whether
vel non** "the rule change violates the Ex Post Facto Clause either
facially or as applied in *Garner*, 529 U.S. at 255." *Id.*     Hence,
Burnett maintains that the amendatory increments have in fact
"*retroactively*," increased the times between being reviewed for
said discretionary parole review, and Burnett's lengthier
eligibility set off dates are in fact, causing a sufficient risk
of increasing the punishment for said previous crimes under the

64

640-X regulations, because the changed or in this instant action the amended "*guidelines*" alter the standards for both 1) *parole eligibility*, and 2) *parole consideration* thus severely burdening in violation of the *ex post facto clause* of the Federal Constitution's Article I, § 10 whereas "the presumption against the retroactive application of the new "*guidelines*" are an essential thread in the mantle of protection that the law affords the individual citizen. It's that presumption that remains "deeply rooted in [y]our jurisprudence, and embodies a legal doctrine centuries older that our Republic." *See Landgraf v. USI Film Products*, 511 U.S. 244, 265, 128 L.Ed.2d 229, 114 S.Ct. 1483 (1994). The specific prohibition on *ex post facto* laws is only one aspect of the broader constitutional protection(s) against arbitrary changes in the law.

The bulk of [y]our *ex post facto* jurisprudence has involved claims that the law has inflicted "a greater punishment, than the law annexed to the crime [when it was committed." *See Calder v. Bull*, 3 Dall 386, 390, 1 L.Ed 648 (1798). The United States Supreme Court utilized the progeny of *Weaver v. Graham*, 450 U.S. 24 (1981) in ("Foster Bey v. Rubitschum at 2:05-CV-71318-MOB-VMM citing *Wilkinson v. Dotson,* progeny"), as presented by Burnett in § 6, pages 18 -19 *supra*, under Rule 201, Fed.R.Evid. It was also, likewise explained that such laws implicate the central concerns of the *Ex Post Facto Clause: "the lack of fair notice and*

*governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was committed."* **Id, at Weaver,** supra.

To fall within the *ex post facto* prohibition -a law must be retroactive -that is, "it must apply to events occurring before its enactment" -and it "must disadvantage the offender affected by it," *id.,* at 29, 67 L.Ed.2d 17, 101 S.Ct. 960, <u>by altering the definition of conduct</u> or increasing the punishment for the crime, *see Collins v. Youngblood*, 497 U.S. 37, 50, 111 L.Ed.2d 30, 110 S.Ct. 2715 (1990), in Burnett instant case the primarily loss of certain specific protective measures articulated succinctly above when ran in conjunction with Burnett's original §1983 COMPLAINT at ground three -predicates Burnett's uncontested factual assertions against the Defendants act, actions or in this specific instance outright failure to adhere to State law those "running afoul of the prohibition against *ex post facto* laws." *See Weaver, supra,* as held in *Wilkinson v. Dotson*, supra.

§ 15.    In respect to the Defendants superfluous excerpt under §15-22-24(a), Codified in 1975 remains irrelevant to Burnett's issues presented in the §1983 -since Burnett made allegations that the parole board agents whom heard his case, in January of 2007 had in fact, at that time "participated in improprieties - respective to his parole consideration under the 640-X regulations, guidelines in effect when Burnett was convicted /

sentenced in 1981; also, argued presented to this Honorable Court, was that said parole board agents acted both "*arbitrary –* *capricious*" under color of state law at the time said "**discretionary function**," was acted upon.

DEFENDANTS' stated at page 2 § 4 that:

> 4). "Defendant expressly deny conspiring with any person or entity." *Id.*

§ 16.          As nice as such denial may "*sound*" to some –such mere assertion absent said Defendants providing, furnishing or otherwise producing the evidentiary materials Burnett requested during *DISCOVERY* remains wholly deficient in Federal Court –when, as made herein by Burnett under "*Affidavit that such conspiracy took place during the investigation and pre -parole hearing with Parole Board agents, employees and one specific Miriam Shehane (VOCAL) others not statutorily entitled to Notice, Appearance and specifically under 640-X guidelines to have protested Burnett's parole -with false information*," to date all of which has "**yet**" by these Defendants "**been lawfully or legally contravened**" pursuant to *Rule 26(a)-(b)(1), Fed.R.Civ.P.,* "disclosure" nor have said specific named Defendants fully complied with Burnett's motion styled 1) Production of Documents; 2) Interrogatories and 3) Admissions as filed by Burnett which this Court ordered (on 4/24/08) that said Defendants otherwise respond, on or before May 8, 2008, said discovery insufficiencies are prejudicing Burnett's therefore absent said Defendants fully complying with the

67

discovery requests for "requested documents --requested under *Rules 26, 33* and *34, Fed.R.Civ.P.*," this Court will remain blinded and Burnett will remain prejudiced --which Burnett will sufficiently address through a forthcoming traverse styled *"Compel Reply,"* to Defendants boiler—plated "Response to Plaintiff's Discovery Requests / Answers to Interrogatories / Admissions," *Id*, birthing the necessitating "*documents*," needed to prove this claim.

§ 17.       Such global tactic remains likewise conclusory at best, and totally insufficient under the progeny of two (2) leading United States Supreme Court holdings: 1) *Anderson v. Liberty Lobby,* [477 U.S. 242](1986); and 2) *Celotex v. Catrett,* [477 U.S. 317](1986), nevertheless as so eloquently requested by Defendants "above" Burnett will forthwith graciously accommodate their invitation to bring forth his "*strict proof,*" towards enhancing his limited issues before this Honorable Court -in his subsequent traverse to Defendants "Response to Plaintiff's Discovery Requests / Answers to Interrogatories / Admissions," received March 21, 2008.

Even if this Court desired to apply Defendants above referenced "allegation" under a §15-2?-26 interpretation, Defendants V. Weatherly and R. Longshore cannot merely state: "*we try to take into account the circumstances of the crime, the prior criminal history, the personal and social history, and the prisoner's adjustments in prison in order to make a reasonable*

**prediction** as to whether he is likely to be suitable candidate for parole." *Id, at both Weatherly's and Longshore's affidavits.* Burnett's factors were configured into his "eligibility" under the 640-X standards in effect, when all the above strictures came into existence; absent them first performing a sufficient statutory "*investigation under §15-22-28(a)(b) and (e), Code of Alabama, 1975,*" as promulgated by Legislation, Burnett's second reason to strike Defendants global defensive tactic.

Alabama's *Standard for release of prisoners on parole (§15-22-26)*: "No prisoner shall be released on parole merely as a reward for good conduct . . . but only if the board of pardons and paroles is of the opinion that there is reasonable probability that, **if such prisoner is released, he will live and remain at liberty without violating the law** and that his release is not incompatible with the welfare of society. . . ." *Id*. As ironic as it may otherwise seem to this Honorable Court ["the defendants, stated: "No Member of the Board was satisfied that he was ready for release."] *Id*. Burnett avers as unashamedly as it appears in their own affidavits their political prejudice supersedes State law, remains inapposite to §15-22-26 standard of release) and that's just what Burnett alleged in claim one: "parole denial was the direct result of Alabama's unconstitutional political policy orchestrated by Pardon & Paroles . . . politically predisposing me of any proper discretionary review rendering the (12/06/05)

hearing process fundamentally unfair . . ." *Id.* Is there really, necessarily a[ny] other reason why this Court should not now grant Burnett relief for another parole board hearing –invoking the declaratory and injunctive relief requested.

DEFENDANTS' stated at page 4 § 15 that:

> 15). "The Complaint avers not facts to support the conclusion that the Board's Operating Procedures are unconstitutional. The Complaint contains no facts illustrating how the Operating Procedures applied to his perceived detriment." *Id.*

§ 18. Without either being verbose, or inconsiderate for this Court's time, efforts this early on Burnett will be brief, primarily due to the above having no relevancy, to the issues at hand, Burnett has already stated that during the time of conviction / sentenc[ing] the Board's pre-guideline 640-X's were in effect –creating three (3) term set-off –inapposite to Defendants post-guideline "Articles which have created the *ex post facto violation* setting off Burnett in cumulative five (5) year increments." See Defendants exhibits.

As amusing as it was stated in both Weatherly's and Longshore's affidavits, at least for Burnett "*If Plaintiff's circumstances change, we have a mechanism in place to allow his case to be reviewed again in less than three years . . .*" however §15-22-26 holds otherwise: "*No prisoner shall be released on parole merely as a* **reward for good conduct or efficient**

*performance of duties assigned in prison*. . ." **Id.** Its quite

obvious to Burnett, that, at least in an Alabama prison

"circumstantial changes" cannot bring about less time to which one

would be rewarded for being considered for earlier parole -as

patently asserted to this Court, simply put it DOES NOT EXIST

under the current unconstitutional polices enacted.

DEFENDANTS' stated at pages 4 § 16 that:

> 16). "These Defendants reserve the right to
> assert sovereign immunity and qualified
> immunity as defenses to any claims for
> monetary relief. Even under the liberal
> construction afforded *pro se* litigants,
> Plaintiff has failed to plead
> sufficient facts to state any claim
> whatsoever under 42 U.S.C. §1983." *Id.*

§ 19.        Defendants have again, attempted to twist the

truthfulness of the issue before the Court -Burnett's colorable

claim, as reiterated by Plaintiff "*challenges the policies and*

*procedures associated with parole eligibility, parole suitability,*

*and parole consideration,*" (Emphasis-underlined) -the specific

reference to which Defendants make above, Burnett again states,

during the Boards *investigation process* Burnett maintains that

these Defendants are in fact "*Notifying persons,*" not duly

entitled to notification, by statute, and thus usurping

Legislative intent -its during that notification process that

Burnett maintains that the Defendants illegally notified Mrs.

Miriam Shehane (VOCAL) -whom possess "no Statutory right, or

otherwise" to have made a[ny] admissible statements, unless

otherwise granted said permission from the victim themselves concerning protesting Burnett -concerning his present condition, mentally, emotionally or his physical well being, nor could they in the near future; State law clearly articulates in §15-22-26 "Alabama's Standard for release of prisoner on parole, that is: "*if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society .. . ." Id.* Burnett's claim two in the §1983 COMPLAINT remains, for the most part -factually unchallenged, but for the Defendants: "*overt procedures used by the Pardon & Parole Board in January 2007* [which] *-arbitrarily and capriciously denied him of the discretionary review for proper consideration based upon* **false information [*"Although Burnett's eighth time up for parole still ineligible due to protest not from victims"]** *absent* 1st *hand knowledge, visits, letters to authenticate, verify said assertions made by adverse parties commingling with VOCAL . . ." Id.* (Emphasis-added).

Therefore the so called information received by the Board from many sources for them to assess, or give credence too remains "questionable at best," given that said Defendants are one whom are first, violating State law, thereby birthing the effect causing Burnett to have suffered egregious harm. damage behind said schemes which Burnett alleges bolstered the parole board denial, from said parties at his parole board hearing.

§ 20.        Contrary to such global defense, first Burnett honorable points out to this Court, that §15-22-24(e), Code of Alabama, 1975 states: "*The board may adopt policy and procedural guidelines for establishing parole consideration and edibility based on its evaluation of a prisoner's prior record, nature and severity of the present offense, potential for future violence, and community attitude toward the offender.*" *Id.*  Did   not    the Board adopt and promulgate on or about September 29[th.] 1982 "640-X-2.01 through 640-X-2.15 and 640-X-3-.01 through 640-X-3-.11 Exhibited-1, *infra*, for instance 640-X-2-.02(8) (Scheduling Cases For Parole Consideration) –states: "*A parole calendar date may be changed by order of the Board. No calendar date will be scheduled* **prior to service of one-third of the term or ten years for total terms of ten years** *or more except by unanimous action of the Board.* **When an inmate is denied parole, the Board will determine when his case is to be reset but in no event shall it be reset for more than three years from the date of the denial**." Defendants have already openly admitted in their "*ANSWER* that Burnett "*has served more than ten years on his indeterminate sentence, and that a majority could grant parole . . .*" *id.* Contrary to Defendants conclusory allegation, Burnett has in fact, presented by both State statute and the Boards adoption of said pre-guidelines "a right to be considered for parole at particular time"; also instructive for this Court's plenary

73

review on said allegation by Defendants is §15-22-28(a) holds,
otherwise: "*Minimum sentence to be served prior to eligibility
for parole: (a) It* **shall** *be the duty of the Board of Pardons &
Paroles, upon its own initiative, to make an investigation of any
and all prisoners confined in the jails and prisons of the state
with* **a view of determining the feasibility of releasing the
prisoners on parole and effecting their reclamation**. *Id.* The
linchpin failure of the Honorable Attorney General's denial @ 17,
p.4, is quite simple. He couches his language in just the manner
that is dispositive inherit in this suit. He denies that the
plaintiff has a right to be "considered". At no point has this
petitioner plaintiff said that he has a right to parole…. ONLY
that he must be considered in order for the State to comport with
their own due process requirements.

§ 21.     Then maybe perhaps upon this Court's ORDER reversing
Burnett's previous parole board denial for another statutory
parole   consideration   absent   the   inflammatory   extraneous
influences that corrupted the two (2) special parole board
members "consideration" of Burnett being "*able to live and remain
at liberty without violating the law*" -not to mention, that
"Defendant S. Williams statutorily failed to partake at Burnett's
previous parole board as mandated by State statutes §§15-22-20(j)
-(k) strictures ordering said Defendants to only notify the

74

statutory parties privy to said pre-parole [re]consideration for parole [?]."

§ 22.    Taking into account Defendants exhibits, the boards post-guideline "Article Six form," when viewed in comparison to the post "Articles" remain -inapposite to State laws in effect breeched Burnett's parole consideration during the parole process currently challenged herein. Burnett's record proper inclusive to Defendants exhibits when viewed in light of Legislations intent, and strictures prove the usurpation Burnett suffered, thus prospective relief is quite imminent.

        WHEREFORE, premises considered Plaintiff Burnett prays that this Court would graciously view the above "Memorandum" coupled to Burnett's Response / Affidavit" in a light most favorable to the issue at hand, granting unto Burnett, affording him a constitutional parole board determination in accord with State law -granting albeit limited relief to another parole hearing.

Done so this X20th day of X may 2008.

Shirley D Moore
06-14-09

                                        Respectfully submitted,

                                        Bernies Burnett
                                        Bernies Burnett
                                        Pro-se' #132146
                                        Limestone Correctional Facility
                                        28779 Nick Davis Road
                                        Harvest, Alabama 35749-7009


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have served a true and correct copy of the Memorandum upon the Defendants by placing said same in the United States mail, properly addressed, postage prepaid as follows:

1.    Defendants Williams (Wynn), Weatherly, Longshore et. al.,
      C/O Chief Counsel Honorable Hugh Davis
      Attorney for Alabama Pardon & Paroles
      301 South Ripley Street
      Post Office Box #302405
      Montgomery, Alabama 36130

Done so this 20th day of May 2008.

Respectfully submitted,

*Bernies Burnett*
Bernies Burnett #132146