IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

BERNIES BURNETT, #132 146,                *

     Plaintiff,                                          *

     v.                                                       *           2:08-CV-22-WKW
                                             (WO)

SIDNEY WILLIAMS, *et al.*,                    *

     Defendants.                                       *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate currently incarcerated at the

Limestone Correctional Facility in Harvest, Alabama, challenges the constitutionality of the

decision to deny him parole issued by the Alabama Board of Pardons and Paroles on

February 20, 2007.  Plaintiff names as defendants Sidney Williams, Velinda Weatherly, and

Robert Longshore who are or were  members of the Alabama Board of Pardons and Paroles

at the time the actions about which Plaintiff complains occurred.[1]  Plaintiff requests

imposition of "prospective declaratory and injunctive relief" regarding the constitutionality

of Alabama's parole procedures "that would render invalid Alabama's procedures used to

deny (1) parole eligibility, and/or (2) parole suitability in accord with *Wilkinson v. Dotson*,

_____

[1]The court previously dismissed Plaintiff's claims against the Alabama Board of Pardons and
Paroles, VOCAL (Victims of Crime and Leniency), Governor Bob Riley, and Alabama Attorney General
Troy King as well as his claim of conspiracy against all the named defendants.  (*See Doc. Nos. 16, 25.*)
Sidney Williams  retired from the Alabama Board of Pardons and Paroles prior to Plaintiff filing the
instant action. *Available at http://legacy.decaturdaily.com/decaturdaily/news/070615/parole.shtml.*  Bill
Wynne succeeded him as Chairman of the Parole Board  (*See Doc. No. 23, 36.*)

544 U.S. 74 (2005) holdings....”[2]   (*Doc. No. 1 at pgs. 3-4.*)  Plaintiff also seeks “an immediate parole hearing” using the parole statutes and regulations in place at the time he committed his crime in 1981.[3]

In accordance with the  orders of the court, Defendants filed a special report, supplemental special report, and supporting evidentiary material in response to the allegations contained in the complaint.  The court then informed Plaintiff that Defendants’ special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. (*Doc. No. 38.*)  Plaintiff took advantage of the opportunity granted to file a response to the  special report filed by Defendants.  This case is now pending on Defendants’ motion for summary judgment.  Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff’s opposition to the motion, the court concludes that Defendants’ motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

“Summary judgment is appropriate ‘if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

---

[2]In *Wilkinson*, two state prisoners brought claims seeking relief that would “render invalid the state procedures used to deny parole eligibility ... and parole suitability....”  544 U.S. at 82.  The Court held that these claims were “cognizable under § 1983, *i.e.*, they do not fall within the implicit habeas exception[]” because neither of the claims for relief “would necessarily spell speedier release....”  *Id.* Thus, the relief sought by Plaintiff in his complaint is properly before this court in a 42 U.S.C. § 1983 action.

[3]Plaintiff is serving a life sentence for murder. (*Doc. No. 23.*)

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or

---

[4]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578 (2006) (citation omitted). Consequently, to survive the properly supported motion for summary judgment filed in this case, Plaintiff is required to produce "sufficient evidence" which would be admissible at trial supporting his claims of various constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id.* at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment..."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude

entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts...  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 529, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this

-6-

court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff has failed to demonstrate requisite genuine issues of material fact in order to preclude summary judgment.  *Matsushita*, 475 U.S. 574.

## II.  DISCUSSION

Plaintiff asserts that Defendants violated his constitutional rights during the parole consideration process related to his February 2007 parole hearing and that the resulting decision to deny parole arose from arbitrary and capricious actions.  In support of his claim, Plaintiff alleges that:

> 1. Defendants denied him due process during the parole review process  due to unconstitutional policies of the Board which denied him proper discretionary review and caused him to be treated differently as compared to non-violent offenders.

> 2.  Defendants violated his right to equal protection because their decision to deny him parole was arbitrary and capricious and denied him proper consideration for parole where it was based on false information.

> 3.  Defendants violated the *Ex Post Facto* Clause of the Constitution by retroactively applying relevant administrative rules to alter the frequency of his future parole consideration dates from every three years to every five years.

(*Doc. No. 1 at pgs. 2-3.*)[5]

---

[5] To the extent Plaintiff presents new claims for relief and/or additional theories of liability in his opposition to Defendants' dispositive motion, such claims are not properly before the court. *See Chavis v. Clayton County Sch. Dist*., 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) ("Chavis advanced this contention in his brief to the district court in response to the defendants' motion for summary judgment. Chavis did not seek to amend his complaint to add a claim based on the asserted conduct, and the district court did not specifically address this contention . . . We do not regard this kind of claim as properly before us . . ."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (cited with approval in *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("As a final matter, Shanahan's attempt to amend his complaint by way of a footnote in his response to defendants' motion for summary judgment was

**A.  The Due Process Claim**

Plaintiff maintains that he was denied fair consideration for parole in February 2007 in violation of his right to due process. That is, Plaintiff argues that changes/amendments made to the parole guidelines in 2002[6] and 2004 and used to review his eligibility for parole in 2007 violate the Constitution because they effected his former parole "rights" which included: 1) having a parole review every three years instead of every five years; 2) being personally heard and interviewed by a parole board member before the parole consideration hearing who then submits his or her written findings/evaluations to the Board; 3) having a parole officer prepare a parole review worksheet after his/her investigation of an inmate up for parole and having such worksheet reviewed by a senior parole official; 4) being provided with written reasons for the Board's decision to deny parole; 5) being able to question evidence against him that was before the Board and prior to an adverse ruling; 6) presenting evidence on his behalf; and 7) being free from protests. (*Doc. No. 40 at pgs. 28, 29, 54.*) Plaintiff has not demonstrated a due process violation with regard to his arguments concerning the amendments/changes to the parole guidelines. Plaintiff's claims arising from an alleged lack of due process in either the parole consideration process or in the procedural

---

properly denied by the district court. A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Further, although Plaintiff argues in his opposition, as he did in his complaint, that Defendants engaged in a conspiracy to violate his constitutional rights, as noted, Plaintiff's conspiracy allegation against Defendants was dismissed by order entered March 27, 2008. (*See Doc. No. 25.*)

[6]Changes to the rules and procedures of the Board of Pardons and Paroles were made in 2001 and 2004. (*See Doc. No. 36.*)

parole guidelines and/or statutes used to determine his eligibility for parole in 2007 entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the parole board. The law directs the parole board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole.... When the statute is framed in discretionary terms there is not a liberty interest created." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). This court's exhaustive review of the history of the Alabama parole statute establishes that from its inception the statute has been framed in discretionary terms.[7] The law is well settled that "[t]he mere possibility of parole provides simply 'a hope that is not protected by due process….' *Greenholtz [v. Inmates of the Nebraska Penal and Correctional Complex]*, 442 U.S. [1] at 11, 12, 96 S.Ct. [2100] at 2105, 2106 (1979)…. [Moreover], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987). "A liberty interest

---

[7]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates. The pertinent portion of this statute reads as follows:

No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.

inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that 'the loss of liberty entailed [by its revocation] is a serious deprivation requiring that the [prisoner] be accorded due process.' " *Whitehorn v. Harrelson,* 758 F.2d 1416, 1420 (11th Cir. 1985) ( quoting *Gagnon v. Scarpelli*, 411 U.S. 718, 781 (1973).

Plaintiff's request for a new parole hearing based on the parole law, rules, and/or regulations in effect at the time he committed his offense does not state a claim entitling him to relief.   Plaintiff concedes that he has no protected liberty interest in the grant of parole. His contention, however, that the parole consideration process must comport with due process because he has  a protectable expectancy, and therefore,  a protected liberty interest, in being considered for parole based on the parole board's regulations which existed at the time of his conviction, is foreclosed by *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982):

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration.   Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court,

therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date." Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Id*.  at 941-42.

 "Liberty interests protected by the Fourteenth Amendment may arise from two sources, the Due Process Clause itself and the laws of the States." *Hewitt v. Helms,* 459 U.S. 460, 366 (1983). The existence of a parole system does not itself create a liberty interest protected by the Due Process Clause, *Greenholtz ,* 442 U.S. at 4, and Alabama  parole statutes create no protected liberty interest in being paroled prior to completion of a prisoner's sentence, *Ellard,* 824 F.2d. 942. State created liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 481 (1995). As explained, absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to

parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process challenged by Plaintiff.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process). To the extent Plaintiff argues otherwise, he misconstrues due process.  "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983). "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 251 n. 12.

Because there is nothing to suggest Plaintiff has a liberty interest law in being released on parole which arises from either the Due Process Clause itself or via state law, the procedures employed by the Board do not trigger due process protections.  Furthermore, because the Constitution does not guarantee parole nor does the Alabama parole statute create for Alabama prisoners a protected liberty interest in the expectation of parole, *Ellard*, 824 F.2d at 941-942, there is also no constitutional requirement that written reasons for denying parole be given, that an inmate and/or his supporters be afforded the opportunity to speak at the inmate's parole hearing,  that an inmate  be furnished with reasons as to why the parole board decided to deny parole, or  that the inmate be provided with the information relied on by the parole board during parole hearings.  *See, e.g., Irving v. Thigpen*, 732 F.2d 1215 (5th Cir. 1984); *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001).  *See also O'Kelley*, 53 F.3d

at 322.

To the extent Plaintiff's complaint asserts a challenge to the constitutionality of matters associated with the parole process as mandated by governing administrative regulations, such action likewise does not run afoul of the Constitution. Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Here, Plaintiff has failed to allege a constitutionally-derived or a state-created liberty or property interest in parole, pre-parole status, or the parole guidelines and/or procedures

under which he believes he is entitled to be considered for parole.  Further, Plaintiff has failed to present any evidence tending to demonstrate  arbitrary or capricious actions on the part of Defendants,  the Alabama Board of Pardons and Paroles, or any of its board members with regard to Plaintiff's 2007 parole hearing.   The pleadings and documents before the court reflect that members of the Board make parole decisions designed to ensure that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Plaintiff has produced no evidence to show that Defendants' decision with respect to his 2007 parole hearing amounted to unreasonable and/or inappropriate action. *See Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986). Consequently,  summary judgment is due to be granted in favor of Defendants with respect to each of Plaintiff's due process claims.

## B. The Equal Protection Claim

Plaintiff asserts that Defendants' decision to deny him parole violated his right to equal protection where their decision was "infected by *deceit, bias, prejudice*"  (*Doc. No. 1 at pg. 3*) (emphasis in original).  He claims that he was treated "dissimilar with respect[] to the laws compared to non-violent offenders," and alleges that his equal protection claim implicates a "class-of-one."[8]  (*Doc. No. 1 at pg. 3; Doc. No. 39 at pg. 5.*)  Defendants  state

---

[8]*See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (*quotations omitted*)).

that  inmates are considered for parole by assessing them individually inasmuch as each crime as well as each offender is unique. (*Doc. No. 36, Longshore and Weatherly Affidavits.*) They maintain that the decision to deny Plaintiff parole resulted from their inability to be reasonably satisfied that Plaintiff could remain at liberty without violating the law and their opinion that Plaintiff's release was not compatible with the welfare of society.  (*Id.*)

In order to present a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)." *Jones v. Ray*, 279 F.3d at 946-947.  Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination.  *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 265-266 (1977).  "Mere error or mistake in judgment ... does not violate the equal protection clause.  There must be intentional discrimination [by the defendants]....  Even arbitrary administration of [parole regulations], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) (simple disparity of treatment between individuals of different races is  insufficient to establish discrimination).  "The requirement

of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state [rule and regulations] into equal protection claims.  'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception.  But the Constitution does not demand perfection.'"  *E & T Realty*, 830 F.2d at 1114 (citations omitted).  Consequently,

> "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555.  Indeed, it is well established that proving intent to discriminate is the essential element of an equal protection claim.  *See, e.g.*,; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact....  Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (omission in original) (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington v. Davis*, 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson v. Bush*, 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our Children v. Sch. Bd.*, 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-1349 (11th Cir. 2005).

"'Discriminatory purpose[]' ... implies more than intent as volition or intent as awareness of consequences....  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).   In a case such as this one, where Plaintiff challenges actions of state parole officials, exceptionally clear proof of discriminatory intent is required.  *Fuller v. Georgia Bd.*

-16-

*of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendants.  *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on  properly supported motions for summary judgment from Defendants, Plaintiff bears the burden of producing some evidence to show that he was the victim of intentional discrimination.  *See Celotex Corp. v. Catrett*, 477 U.S. 317.  Purposeful discrimination can be shown either by direct evidence, *i.e.*, admissions of the defendant, or indirectly by way of substantially probative circumstantial evidence.  *Arlington Heights*, 429 U.S. at 265-266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. at 252.  Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendants.  *Id*. at 249.

Plaintiff alleges that Defendants denied him fair parole consideration while affording such to other similarly situated inmates.  Defendants deny that they undertook any action in Plaintiff's parole consideration process based on a constitutionally impermissible reason. (*Doc. No. 23, Exhs. A, B, Doc. No. 36, Longshore and Weatherly Affidavits*.)  They  further argue that denial of parole was based on the determination that Plaintiff's release on parole was not compatible with the welfare of society and that they were not satisfied that Plaintiff could be released from prison without violating the law.  (*Id*.)  *See e.g. Fuller*, 851 F.2d at

1310  ("The decision to grant or deny parole is based on many factors such as criminal history, nature of the offense, disciplinary records, employment and educational history, *etc*."). Plaintiff has utterly and completely failed to present evidence, significantly probative or otherwise, that any constitutionally impermissible factor constituted a motivating factor in the actions of Defendants about which he complains.  The allegations presented by Plaintiff do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation.  *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994).  Additionally, the arbitrary application of administrative rules does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114.

Inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment. Here, Plaintiff alleges the Defendants subject him to discriminatory treatment due to the disparity between the amount of time he has served in prison compared to the amount of time served by other inmates serving sentences for violent crimes.  (*Doc. No. 39 at pgs. 5-6, 9-10.*)   Plaintiff regards this conduct as actionable unequal treatment.  Nevertheless,  Plaintiff does not allege that he has been subjected to any tangible unequal treatment by Defendants' conduct such as their decision being based upon a constitutionally protected interest.  Plaintiff simply makes the conclusory legal assertion that the actions undertaken by Defendants in their parole consideration process resulted from discrimination in comparison to other allegedly similarly incarcerated inmates who Plaintiff  perceives to have received more favorable treatment.

Plaintiff fails to meet his evidentiary burden as he has offered no evidence identifying any other similarly situated inmate who received more favorable treatment from Defendants, *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005), or that Defendants subjected him to adverse treatment based on some constitutionally impermissible reason.  In light of the foregoing, summary judgment is due to be granted in favor of Defendants as a matter of law on Plaintiff's equal protection claim.

## C.  False Information

To the extent Plaintiff alleges that Defendants relied on false information to deny him parole, he is likewise entitled to no relief.  Defendants  do not admit that the information utilized in their decision-making process is false and deny any knowing reliance on false information with respect to Plaintiff's February 2007 parole hearing.  (*Doc. No. 36, Longshore and Weatherly Affidavits.*)

In *Monroe*, 932 F.2d 1437, the Court held that reliance on *admittedly false information* to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum*, 678 F.2d 940:

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process

-19-

claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

Defendants maintain that the information on which they relied to deny parole is correct and that any reliance on this information, therefore, did not violate Plaintiff's constitutional rights. Specifically, there is no admission by Defendants Longshore or Weatherly that the information utilized in denying Plaintiff parole is false, incorrect or erroneous. Plaintiff conclusorily asserts that Defendants relied on false information provided by a VOCAL member at his 2007 parole hearing to deny him fair consideration for parole. (*Doc. No. 40 at pg. 40.*) Plaintiff has failed, however, to come forward with any evidence which indicates Defendants knowingly used false information during the parole consideration process. Moreover, Plaintiff's conclusory assertion regarding the asserted false information does nothing more than raise the possibility that information presented at the hearing and/or contained in his records may be false and this mere possibility fails to provide a basis for

-20-

relief.[9]   *Monroe*, 932 F.2d at 1142; *Jones*, 279 F.3d at 946 ("[P]risoners cannot make a

conclusory allegation regarding the use of [false] information as the basis of a due process

claim.").   Consequently,  summary judgment is due to be entered in favor of Defendants on

this claim.

## D.  The *Ex Post Facto* Claim

 Plaintiff complains that set-off of his parole consideration date for a potential of five

years upon retroactive application of amended administrative regulations is unconstitutional

because prior regulations allowed parole consideration at more frequent intervals.  (*Doc. No.

1 at pg. 3.*)   This allegation implicates the protections guaranteed by the *Ex Post Facto*

Clause and the court, therefore, considers the claim as one arising under this provision of the

Constitution.

 The *Ex Post Facto* Clause bars "enactments which, by retroactive operation, increase

the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249

(2000).   An amended law or regulation must create a significant risk of increasing the

punishment imposed upon an inmate in order for the amendment to run afoul of this

constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a

parole regulation violates the *Ex Post Facto* Clause when applied to inmates entitled to more

frequent parole consideration at the time they committed their crimes must be made on a

_____

 [9]As explained by Defendants, they did not rely on any information they knew to be false when
assessing Plaintiff's eligibility for parole and they made a "good faith effort to determine what
information was reliable, bearing in mind that Alabama law requires the Board to afford certain
individuals and entities the opportunity to express their views."  (*Doc. No. 36, Longshore and Weatherly
Affidavits.*)

case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Id.* at 1350 (quoting *Garner,* 529 U.S. 244, 255); *Jones v. Ray*, 279 F.3d at 947.

The *Garner* Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the *Ex Post Facto* Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstance or new information. *Id.* 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of *ex post facto* legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Garner*, 529 U.S. at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* § 15-22-26*, Ala.Code 1975*, "and when and under what conditions" parole will be granted, *see* § 15-22-24(a). Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26. This unconditional discretion, however, does not displace the protections of the *Ex Post Facto* Clause. *Garner*, 529 U.S. at 253. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crime." *Id.* (internal quotations marks and citations omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles. (*Doc. No. 36, 2004 Procedures*.)[10] In 2001 the parole board adopted the rules and regulations currently in effect. (*Id. 2001 Procedures*.) In 2004 the parole board amended its rules and regulations. (*Id. 2004 Order*) Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five years."[11] (*Id. 2004 Procedures*.) Article 2, § 7,

---

[10]*Also available at* http*://www.pardons.state.al.us.*

[11]The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial." (*Doc. No. 36, Ala. Adm. Code § 640-X-2*.) The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11. (*Id. 2001 Procedures*.) The

provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] . . ., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."[12] (*Id.*) The opportunity for an expedited parole review is likewise available to qualified inmates. Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on his probability to succeed on parole, not merely because the prisoner is following the rules in prison." (*Id.*) Thus, the rule changes are designed to facilitate better exercise of the parole board's discretion. *See Garner*, 529 U.S. at 254-255.

A change that simply alters the Board's considerations for parole suitability is not violative of the *Ex Post Facto* Clause because it neither works to an inmate's detriment nor constitutes "a criminal or penal law." *Kelly v. Southerland,* 967 F.2d 1531, 1532 (11th Cir. 1992), citing *Dufresne v. Baer,* 744 F.2d 1543, 1547 (11th Cir. 1984). Here, it is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Plaintiff nor increase the level of risk that he will serve a longer term of imprisonment. Specifically, prior to this change, the parole board never guaranteed Plaintiff that he would be unconditionally released before completion of his life sentence. Additionally, eighteen months after a denial of parole

---

parole board retained the five-year set off in its 2004 amendments. (*Id. 2004 Procedures.*)

[12]The 2001 amendment to the regulation in Article 2, § 8 allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole. (*Doc. No. 36, 2001 Procedures.*)

Plaintiff has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date. Thus, even if risk of an increased term of incarceration develops in Plaintiff's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires. (*See Doc. No. 36,Longshore and Weatherly Affidavits, 2004 Procedures - Article 2, § 1, Rules, Regulations and Procedures of the Board of Pardons and Paroles.*)

Plaintiff has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Plaintiff. Moreover, Plaintiff possesses the ability to petition the parole board for an earlier parole consideration date. Based on the foregoing, the court concludes that the change about which Plaintiff complains did not lengthen his actual term of imprisonment. Thus, Plaintiff's challenge to the increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, 529 U.S. at 253-56; *Olstad v. Collier*, 326 Fed.Appx. 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural.... The Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel*

*v. Kyle*, 42 F.3d 955, 957 (5th Cir. 1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by parole board not violative of the *Ex Post Facto* Clause).  Defendants are, therefore, entitled to summary judgment on this claim.

## E.  State Law Claims

To the extent Plaintiff asserts that the actions of Defendants violated state law with respect to his 2007 parole hearing, review of such claims is appropriate only upon the court's exercise of supplemental jurisdiction.  In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented in the complaint, Plaintiff's pendent state claims are due to be dismissed.[13]  *Gibbs,* 383 U.S.

---

[13]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted.  § 15-22-24(a), *Alabama Code*.  The law further gives the parole board total discretion in determining whether an inmate should be granted parole.  § 15-22-26, *Ala.Code* (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable

-26-

at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motions for summary judgment (*Doc. Nos. 23, 36*) be GRANTED.

2.  Judgment be entered in favor of Defendants and against Plaintiff.

3.  Plaintiff's state law claims be DISMISSED without prejudice;

4.  The costs of this proceeding be taxed against Plaintiff.

5.  This case be DISMISSED with prejudice.

It is further

ORDERED that  on or before **October 18, 2010** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

---

probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....").  The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489.

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

      Done, this 4th day of October 2010.


               /s/Terry F. Moorer
              TERRY F. MOORER
              UNITED STATES MAGISTRATE JUDGE